United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES WANG,<br><br>               Plaintiff,<br><br>    v.<br><br>OCZ TECHNOLOGY GROUP, INC.,<br><br>               Defendant. | Case No.: C 11-1415 PSG<br><br>**ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>**(Re: Docket No. 16)** |

Plaintiff James Wang ("Wang") brings the instant putative class action on behalf of himself and purchasers of OCZ Technology Agility 2 and Vertex 2 solid state drives ("SSDs") during the relevant class period, beginning sometime after January 1, 2011.[1] Wang alleges that Defendant OCZ Technology Group, Inc. ("OCZ") made material misrepresentations as to the capacity and performance of the Agility 2 and Vertex 2 SSD products, and that Wang relied upon these misrepresentations in purchasing an inferior product of less value than what was advertised. Wang alleges deceptive advertising practices, unfair business practices, negligent misrepresentation, breach of warranty, unjust enrichment, and violation of California Consumers Legal Remedy Act ("CLRA").

---

[1] Wang states that the exact date in which OCZ began marketing the SSDs at issue remains unknown, because OCZ did not publicly disclose the change in components. Wang pledges to amend the pleading and conform the Class Period identified in the complaint to reflect evidence obtained through discovery. *See* Docket No. 1 n.5.

1

Defendant OCZ Technology Group, Inc. ("OCZ") moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) and also moves to strike certain allegations pursuant to Fed. R. Civ. P. 12(f). Wang opposes both motions. On August 2, 2011, the parties appeared for hearing. Having reviewed the parties' briefs and considered the arguments of counsel, Defendant's motion to dismiss is GRANTED, with leave to amend, and Defendant's motion to strike is DENIED.

## I. BACKGROUND

OCZ is a Delaware corporation that maintains its principal place of business in San Jose, California.[2] It markets, distributes, and sells SSDs throughout California and the United States.[3] SSDs are a type of digital data storage device, similar to the commonly known hard disk drive, but functionally distinguished by the use of flash memory chips for the storage of information.[4] SSDs are comprised of three basic components – flash memory, controller, and circuit board – which OCZ sources from various vendors and assembles by way of a third party.[5] Storage capacity and performance are two key specifications considered by consumers who are looking to purchase SSD products.[6] Due to the high cost per gigabyte of storage capacity, the storage capacity specification is especially important to the consumer purchase decision.[7]

Sometime prior to January 1, 2011, OCZ marketed a predecessor line of "Agility 2" and "Vertex 2" SSDs.[8] Both the predecessor and next generation (currently-at-issue) line of products

---

[2] Docket No. 1 ¶ 12.

[3] *Id.*

[4] *Id.* ¶ 14.

[5] *Id.* ¶¶ 14, 17.

[6] *Id.* ¶¶ 22, 33.

[7] *Id.* ¶¶ 24-25.

[8] *Id.* ¶¶ 24-25.

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE

use a controller that interacts with the flash memory in such a way that one or more modules of memory are rendered inaccessible to the user.[9]  In marketing the predecessor SSDs, OCZ took this memory capacity reduction into account, consistent with industry standards,[10] and advertised, for example, 60GB for an OCZ Vertex 2 device with 64GB of raw capacity, whereby one memory (4GB) was reserved to the controller.[11] Wang alleges that sometime before releasing the next generation Agility 2 and Vertex 2 SSDs, OCZ made material alterations to the drives using a different quantity of flash memory chips and different type of flash memory than the predecessor units.[12] This change allegedly resulted in substantially decreased performance, and increased the amount of flash memory reserved to the controller.[13] For example, the capacity available to the user in a drive advertised as a 60GB Vertex 2 or Agility 2 allegedly dropped to 55GB with an average 25 percent drop in performance.[14]

Wang alleges that in contravention of the industry standard and OCZ's own marketing practice for the predecessor SSDs, OCZ failed to disclose the material changes in capacity and performance of the Agility 2 and Vertex 2 SSDs.[15] Instead, OCZ allegedly continued to use the same advertising, marketing materials, and packaging it had used for the predecessor units, and maintained the same model number scheme and specifications on the OCZ products website.[16]

---

[9] *Id.* ¶ 28.

[10] Plaintiff references the standards of the International Disk Drive Equipment and Materials Association (IDEMA) used in marketing disk drives. Docket No. 1 ¶¶ 27, 36.

[11] *Id.* ¶ 28.

[12] *Id.* ¶¶ 34, 42-44.

[13] *Id.* ¶¶ 42-45, 49-53.

[14] *Id.* ¶¶ 45, 49-50.

[15] *Id.* ¶¶ 29, 34.

[16] *Id.* ¶¶ 35-41, 47, 55-57.

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER
DENYING DEFENDANT'S MOTION TO STRIKE

United States District Court
For the Northern District of California

Wang alleges that OCZ was fully aware of the material nature of the changes and their effect on user accessible capacity, and chose to retain the marketing scheme and advertising materials notwithstanding the inability of consumers to discover the differences prior to purchasing a SSD unit.[17] Wang allegedly relied upon the misleading advertising and marketing materials when he purchased a 120GB OCZ Agility 2 SSD during the relevant period; the purchased product had a lower user accessible capacity and inferior performance than advertised by OCZ.[18]

On March 24, 2011, Wang filed the instant action. He asserts six causes of action: (1) deceptive advertising under the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (2) unfair business practices under the California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.*; (3) negligent misrepresentation; (4) breach of express warranty in violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* and Cal. Comm. Code § 2313; (5) unjust enrichment; and (6) violation of the California Consumers Legal Remedy Act ("CLRA"), Civ. Code § 1750, *et seq.*

OCZ moves to dismiss on the grounds of constitutional standing, failure to meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements for the applicable causes of action, and failure to allege facts that sustain any causes of action under California law. OCZ also moves to strike certain allegations, including class allegations and references to third-party review of OCZ SSD products.

## II. LEGAL STANDARDS

**A.    Motion to Dismiss Pursuant to Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[19] If a plaintiff fails to proffer "enough facts to state a claim to relief that is

---

[17] *Id.* ¶¶ 58-63.

[18] *Id.* ¶¶ 66-67.

[19] Fed. R. Civ. P. 8(a)(2).

4

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER
DENYING DEFENDANT'S MOTION TO STRIKE

plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[20] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[22]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[23] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[24] However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[25] "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment."[26]

**B.      Motion to Dismiss Pursuant to Rule 9(b)**

Federal Rule of Civil Procedure 9(b) requires that a pleading alleging fraud or mistake state "with particularity the circumstances constituting fraud or mistake." This requires the plaintiff to

---

[20] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[21] *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009).

[22] *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

[23] *See Metzler Inv. GMBH v. Corinthian Colls, Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).

[24] *See id.* at 1061.

[25] *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); se*e also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[26] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F. 3d 1048, 1052 (9th Cir. 2003).

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE

allege the details of the underlying transaction – the "who, what, when, where, and how" of the conduct averred – in a manner sufficient to provide defendants with adequate notice to defend against the charge.[27] The heightened pleading requirement applies to state law causes of action where fraud is a necessary element of the claim, as well as where plaintiff alleges a "unified course of fraudulent conduct," such that the entire claim "sounds in fraud."[28] A court treats a motion to dismiss a claim based on failure to allege fraudulent conduct with sufficient particularity "as the functional equivalent of a motion to dismiss under [Fed. R. Civ. P.] 12(b)(6)."[29] Where plaintiff alleges additional claims not sounding in fraud, the court reviews those claims on a motion to dismiss under the ordinary notice pleading standards of Fed. R. Civ. P. 8(a).[30]

**C.      Motion to Strike Pursuant to Rule 12(f)**

Under Fed. R. Civ. P. 12(f), a party may move to strike "any redundant, immaterial, impertinent, or scandalous matter."[31] The essential function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."[32] A motion to strike "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."[33]

---

[27] *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *Vess v, Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

[28] *Kearns* at 1103.

[29] *Id.* at 1107.

[30] *Id.* at 1105.

[31] Fed. R. Civ. P. 12(f).

[32] *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).

[33] *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (citing *Naton v. Bank of California*, 72 F.R.D. 550, 551 n. 4 (N.D. Cal. 1976)).

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE

## III. DISCUSSION

**A.     Motion to Dismiss**

**1.     Article III Standing and Dismissal under 12(b)(1) or 12(b)(6)[34]**

Wang must meet the jurisdictional threshold for standing under Article III of the Constitution by establishing (1) injury-in-fact, (2) causation, and (3) redressability. As set forth by the Supreme Court in *Lujan v. Defenders of Wildlife*, this requires Wang to have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," and for which there is "a causal connection between the injury and the conduct complained of" and a likelihood that the injury "will be redressed by a favorable decision."[35]

OCZ argues that Wang's allegations of injury are conclusory and speculative, and fail to establish the necessary "causal connection" between the alleged injury and OCZ's conduct. Specifically, OCZ contends that Wang's general allegations of economic harm are insufficient to establish concrete and particularized injury: "Plaintiff does not allege that he overpaid for the OCZ SSD; he does not allege how much he paid for the drive, or how that price was in error. For all we know, Plaintiff could have paid one-cent – or nothing – for the SSD."[36] OCZ further contends that Wang fails to allege actual injury under a "benefit of the bargain" theory, because the materials submitted by Wang in his request for judicial notice – revealing OCZ's disclaimer regarding potential variations in SSD speed and discrepancies between reported and actual capacity –

---

[34] Due to purportedly conflicting decisions in the Ninth Circuit regarding the proper form for a challenge to constitutional standing, OCZ seeks to dismiss Wang's claim for lack of standing under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See* Docket No. 16 at 5 n.2 (comparing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) with *Vaughn v. Bay Envtl. Mgmt.*, 567 F.3d 1021, 1024 (9th Cir. 2009)).

[35] 504 U.S. 555, 560-61 (1992) (citations omitted).

[36] Docket No. 36 at 2.

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

confirm that Wang "got exactly what he paid for."[37] In addition, OCZ argues that Wang does not properly plead reliance upon OCZ's alleged misrepresentations, and thus lacks fails to satisfy the causation element of standing.[38]

Wang does allege that he purchased the Agility 2 SSD based upon OCZ's representations as to its performance and capacity, and that as a result of the alterations to the product made by OCZ, he "did not receive the full value of the product as marketed by OCZ."[39] Moreover, he alleges not only that he paid more for the product than he would have, but that he, and other putative class members, would not have purchased their SSDs had they been marketed truthfully.[40] For the purpose of establishing injury-in-fact at the pleading stage, these allegations are sufficient. At this stage, the court "'presume[s] that general allegations embrace those specific facts that are necessary to support the claim.'"[41] The fact that Wang does not state the purchase price of his Agility 2 SSD, allege an exact dollar amount in lost value, or point to the specific advertisements relied upon in his purchase is not determinative. The "precise dollar value of [] losses" is not required at pleading, so long as the plaintiff "allege[s] a tangible loss that can be proved or disproved upon discovery."[42] It is therefore sufficient that Wang has alleged that OCZ

---

[37] *Id.* at 8:9-22 (quoting Docket No. 35-2 at 1). Wang has submitted a request for judicial notice covering a range of documents and images, including screenshots of OCZ's SSD product packaging, OCZ webpages with product specs & webpages posting third-party reviews, and OCZ website source code. The court GRANTS Wang's request for judicial review.

[38] Docket No. 16 at 7 (quoting *Lujan* at 560).

[39] *See, e.g.,* Docket No. 1 ¶¶ 11, 66-68.

[40] *See i.d.* ¶ 82 (alleging that OCZ's misrepresentations harmed Wang and the class members by causing them to "pay[] more money for the Product than they would have" and/or to "purchase the Product which they would not have purchased"). *See also, i.d.* ¶ 93 ("Had Plaintiff and the Class members known of the true facts about the Products, they would either have not purchased them, or would have not purchased the Products at inflated prices.").

[41] *Lujan* at 561 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

[42] *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*, 754 F. Supp. 2d 1145, 1166 (C.D. Cal. 2010).

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE

1    misrepresented SSD performance and capacity characteristics through its product packaging,

2    marketing materials, and website, and that this conduct caused him either to buy a product that he

3    would not have bought, or to buy a product that was inferior, of lower quality and less value, than

4    that offered.[43]

5         Those cases cited by OCZ are readily distinguishable. In *Degelmann v. Advanced Medical*

6    *Optics, Inc.*, the court granted summary judgment for defendants, because plaintiffs' claim that

7    they would not have purchased a certain contact lens solution had they been apprised of the

8    solution's defect was insufficient to establish actual injury.[44] But in *Degelmann,* the plaintiffs did

9    not claim any harm from the later-recalled lens solution, whereas Wang alleges actual injury to

10   based on the SSD's failure to perform with the speed or capacity marketed.[45] OCZ also cites the

11   conclusion in *Loreto v. The Proctor & Gamble Co.* that "[a]scertainable loss is insufficiently plead

12   where a plaintiff simply contends that the price charged" was higher than it would have been due to

13   the defendant's misrepresentations.[46] This conclusion, however, was based on an analysis of New

14   Jersey statutory and common law unjust enrichment claims, not Article III standing.[47] Moreover,

15   the court in *Loreto* found that the plaintiffs had received the benefit of their bargain because the

---

[43] *See* Docket No. 1 ¶¶ 11, 89-91. Other courts have found similarly general allegations of economic harm and reliance to be sufficient for the purpose Article III standing. For example, in *Toyota Motor Corp.*, the court found allegations of economic injury, based on actual or perceived reduction in value to plaintiffs' vehicles due to the prevalence of sudden, unintended acceleration problems in a significant percentage of those vehicles, to constitute a redressable injury fairly traceable to Toyota's conduct. *See* 754 F. Supp. 2d 1145, 1161-62. The same court affirmed a "benefit of the bargain" theory, whereby plaintiffs contracted to purchase their vehicles to perform in one manner, and those vehicles sometimes performed in another, substandard manner. *See id.* at 1162, 1165-66. The losses resulting from the alleged overpayment or loss in value because of the later-discovered defect conferred standing. *See id.* at 1166.

[44] *Degelmann v. Advanced Medical Optics, Inc.*, C 07-31707 PJH, 2010 WL 55874, at *3-4 (N.D. Cal. Jan. 4, 2010).

[45] *See id.* at *4.

[46] 737 F. Supp. 2d 909, 922 (S.D. Ohio 2010).

[47] *See id.*

9

ingredients found in the multi-symptom cold medicine purchased were those same ingredients advertised, and thus, plaintiff got what he paid for.[48] In contrast, Wang alleges that he bargained to purchase a product with a certain advertised capacity and performance, but received a product with inferior capabilities and of less value.[49]

The disclaimers on OCZ's website product pages alerting consumers to potential discrepancies in capacity and variations in rated speeds may ultimately discredit Wang's claims that OCZ's marketing materials misled him and that he did not receive the benefit of the bargain. However, for the purpose of establishing standing, Wang has sufficiently pled injury in fact on the basis of reduced product value and usefulness, and reliance on a wide range of marketing material and product information, including the SSD product packaging, making the alleged loss of value fairly traceable to OCZ's alleged conduct.

### 2.    Standing for Injunctive Relief and Dismissal of Equitable Claims

OCZ also argues that Wang does not have standing to sue for injunctive relief because he has not demonstrated a likelihood of future injury. In addition to the minimum threshold requirements for Article III standing when seeking damages, a plaintiff seeking equitable relief must further demonstrate a likelihood of future injury.[50] This requires a showing that plaintiff is "'realistically threatened by a *repetition* of the violation.'"[51] Allegations that a defendant's

---

[48] *Id.* at 922-23.

[49] Wang's "benefit of the bargain" claim bears a substantial resemblance to the claim in *Toyota Motor Corp.* As noted earlier, there the plaintiffs alleged that they had bargained for vehicles with certain safety features, but due to the propensity of some cars to suffer from the sudden acceleration problem, the value of their vehicles had dropped. *See Toyota Motor Corp.*, 754 F. Supp. 2d 1145 at 1162.

[50] *See Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999).

[51] *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir, 1999) (quoting *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) (emphasis in original)).

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE

continuing conduct subjects unnamed class members to the alleged harm is insufficient if the named plaintiffs are themselves unable to demonstrate a likelihood of future injury.[52]

Wang has not shown that he faces any future harm. To be sure, Wang alleges that notwithstanding the alterations to the Agility 2 and Vertex 2 SSD drives, OCZ maintains the same marketing materials and website pages and thereby continues to violate the false advertising laws, creating a likelihood of ongoing and future injury. But any loss of value to Wang's Agility 2 SSD has already occurred. If Wang paid an inflated price for the product based on OCZ's alleged misrepresentations, he is in no danger of doing so again. Wang also alleges that there is a likelihood of future harm based on the competitive advantage gained by OCZ from its alleged misrepresentations, as well as the increased risk of harm to Wang and consumers like him who cannot know of the misrepresentations before purchasing the product and are denied "the ability to ably select competitive products in the marketplace."[53] Yet any competitive advantage obtained by OCZ does not qualify as actual or concrete harm that is threatened or imminent because Wang has not alleged even a likelihood that he would once again purchase a SSD at issue from OCZ.[54] The possibility of future harm to Wang based on an inability to select competitive products is thus speculative at best, and certainly insufficient to warrant injunctive relief.[55]

---

[52] *See Hodgers-Durgin*, 199 F.3d at 1044-45.

[53] *See* Docket No. 34 at 8.

[54] Wang cites *Meyer v. Sprint Spectrum L.P.*, 45 Cal 4th 634 (2009) for the proposition that the CLRA allows plaintiffs to enjoin deceptive practices on behalf of the general public. But *Meyer* is inapposite to this inquiry. Only if Wang succeeds in amending his CLRA claims to survive a motion to dismiss might *Meyer*'s analysis assist Wang in seeking injunctive relief under the statute. Even then, the court in *Meyer* limited the ability of plaintiffs to allege a cause of action for injunctive relief under the CLRA unless a low damage "threshold" could be met. *See* 45 Cal. 4th at 645-46.

[55] *See Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 997 (N.D. Cal. 2007) (finding former subscribers to a satellite telephone service failed to allege a likelihood of future harm); *Deitz v. Comcast Corp.*, C 06-6352 WHA, 2006 WL 3782902, at *3 (N.D. Cal. Dec. 21, 2006) (finding claims of "possible future injury" to be too speculative and attenuated unless former cable service

11

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE

### 3.   Heightened Pleading Requirement

According to OCZ, five of Wang's six asserted causes of action sound in fraud and are subject to the more stringent pleading standards imposed by Fed. R. Civ. P. 9(b). These are: false advertising under the FAL; unfair competition under the UCL; violations of the CLRA; negligent misrepresentation, and unjust enrichment. OCZ argues that Wang's allegations underlying these claims lack sufficient detail and specificity, particularly with respect to the details surrounding Wang's purchase of his Agility 2 SSD. OCZ further argues that the materials appended in Wang's request for judicial notice are inadequate to repair the deficiencies.

Wang does not dispute that these claims must satisfy Rule 9, but contends that the complaint more than adequately answers the "who, what, when, where and how" of OCZ's conduct. Wang relies specifically on his allegations identifying (1) OCZ as the source of the alleged misrepresentations, (2) an approximate time period during which the alleged misrepresentations began, (3) the location and content of deceptive and misleading statements, including on product packaging, in the model numbers, and on OCZ's product webpages, and (4) the substance of the misrepresentations. Additionally, Wang also argues that the web screenshots and product packaging images included with the request for judicial notice the Rule 9 requirements by depicting a representative sample of the misrepresentation claimed and its location.

Wang's allegations do provide OCZ with notice of a general nature, but they do not provide the level of detail needed to satisfy Rule 9(b). For example, Wang provides a time frame in which OCZ allegedly engaged in deceptive conduct, but fails to allege when in that period he viewed, read, or otherwise came to rely upon OCZ's representations. Similarly, he refers to a wide range of marketing materials and provides representative examples in the appended request for judicial

---

subscriber could demonstrate "a definitive likelihood that he [would] once again become a subscriber of defendants' cable services).

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE

notice, but does not specify the material that caused him to rely on OCZ's representations. On this same basis, in *Kearns v. Ford Motor Co.*, the Ninth Circuit dismissed plaintiffs' UCL and CLRA claims relating to Ford's promotion of its Certified Pre-Owned vehicle program after concluding that

> Kearns fails to allege in any of his complaints the particular circumstances surrounding such representations. Nowhere … does Kearns specify what the television advertisements or other sales material specifically stated. Nor did Kearns specify when he was exposed to them or which ones he found material. Kearns also failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle. Kearns does allege that he was specifically told "CPO vehicles … were individually hand-picked and rigorously inspected used vehicles with a Ford-backed extended warranty." Kearns does not, however, specify who made this statement or when this statement was made. Kearns failed to articulate the who, what, when, where, and how of the misconduct alleged. The pleading of these neutral facts fails to give Ford the opportunity to respond to the alleged misconduct.[56]

As in *Kearns*, Wang does not allege these key details that would allow OCZ to respond to the allegations of falsity upon which Wang himself relied. In addition, the complaint lacks any indication of the specific ways in Wang's purchase falls short of its advertised qualities, e.g., actual versus expected capacity of his drive and actual versus expected performance speed. These general assertions of capacity and performance gaps as to the next generation SSD products[57] is insufficient to meet plaintiff's burden of alleging how he was harmed by the alleged false advertising and misrepresentations.[58]

The decisions cited by Wang are not persuasive. In *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, the court upheld the sufficiency of the complaint under Rule 9(b) where the

---

[56] 567 F.3d at 1126.

[57] *See* Docket No. 1 ¶¶ 3, 34-57.

[58] *See Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1001 (N.D. Cal. 2009) (finding plaintiff's allegations of a falsely advertised "either/ or" choice between two software products fell short of Rule 9 standard where plaintiff did not describe the exact language used or the location of the misrepresentation (e.g., online, company website, email message, bundled software application)).

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

complaint included a picture of the beverage label stating "Cranberry and Pomegranate" for a juice that contained little or no pomegranate juice, the month and year in which the defendant introduced the misleading label, and the URL website address where the defendant marketed the beverage.[59] Unlike the instant action, however, *Pom Wonderful* involved one company suing another company for false advertising and unfair competition based on the effect of the misrepresentation on consumers generally[60] – a claim markedly different from that of an individual consumer who must plead his own exposure to and reliance upon the alleged misrepresentation. Similarly, in *Germain v. J.C. Penny Co.*, the court upheld the sufficiency of generalized allegations relating to the role of the various defendants in perpetrating a fraudulent marketing scheme, because "[i]t would be unreasonable for the Court to require plaintiffs to plead the specific involvement of each defendant in the scheme prior to discovery."[61] Wang has not alleged conduct for which it is unreasonable to require specificity. In contrast to the plaintiff in *Germain*, Wang does not lack information on the nature of the misrepresentation as it affected him. Only by identifying the particular circumstances in which Wang viewed and relied upon OCZ marketing materials does Wang meet the threshold pleading standard wherein the defendant "can prepare an adequate answer from the allegations."[62] Nor do the materials submitted for judicial

---

[59] *Pom Wonderful LLC  v. Ocean Spray Cranberries, Inc.*, 642 F. Supp 2d 1112, 1124 (C.D. Cal. 2009).

[60] *See id.* (citing plaintiff's complaint which alleged that Ocean Spray's drink labeling had "the result of deceiving consumers").

[61] *Germain v. J.C. Penny Co.*, CV 09-28472009 CAS, 2009 WL 1971336, at *5 (C.D. Cal. July 6, 2009).

[62] *Id.* at *4 (quoting *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973)). *See also Vess* at 1108.

14

notice fill the heightened pleading gap because Wang has not indicated in the pleadings which

materials contain the relied-upon misrepresentations or omissions or when he relied upon them.[63]

### 4.    Application of California Law

OCZ contends that Wang improperly seeks to apply California law to a transaction that

presumably took place out-of-state, in violation of these well-established constitutional

principles.[64] "California law embodies a presumption against the extraterritorial application of its

statutes."[65] Moreover, the application of state law to a non-resident's claims that lack a sufficient

nexus to the forum state raises due process problems under the 14th Amendment.[66] State remedies

may extend to out-of-state parties, however, when the parties are harmed by wrongful conduct

occurring in California.[67]

Because Wang is a Washington resident, and the complaint does not allege where he

purchased his Agility 2 drive, OCZ argues that it is reasonable to assume Wang also purchased the

device in Washington. OCZ relies on numerous court decisions dismissing out-of-state plaintiffs'

---

[63] *See Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1305, n. 19 (S.D. Cal. 2003) (directing plaintiff to "specifically identify which [judicially noticed] exhibits he is relying on containing the alleged misrepresentations or omissions" in his next amended complaint); *Marolda* at 1001 (finding inadequate plaintiff's reference to the falsity of the choice between two products, because "it remains a matter of conjecture when exactly plaintiff faced this choice or where the representation was displayed"); *Von Koenig v. Snapple Beverage Corp.*, 09-cv-606 FCD, 2011 WL 43577 at *2-3 (E.D. Cal., Jan. 26, 2011) (dismissing allegations regarding "unspecified 'commercial advertisements' and 'other promotional materials'" based on plaintiffs' failure to identify the specific advertisements and materials and when plaintiffs were exposed, but upholding previous finding that example beverage labels were sufficient to support heightened pleading standard for allegations arising out of defendants' labeling practice).

[64] Docket No. 34 at 14-16 (citing *Philips Petroleum* at 817-21; *John Hancock Mut. Life Ins. Co. v. Yates*, 299 U.S. 178, 182 (1936)).

[65] *Churchill Village, L.L.C. v. General Electric Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000) (citing *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1060 n.20 (1999)).

[66] *See id.* (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-11 (1985)).

[67] *See Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1063-64 (1999); *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 224 (1999); *Morgan, et al. v. Harmonix Music Sys., Inc.*, C 08-5211 BZ, 2009 WL 2031765, at *2 (N.D. Cal. July 30, 2009).

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER
DENYING DEFENDANT'S MOTION TO STRIKE

state law claims under California's UCL, FAL, and CLRA for out-of-state conduct or injuries.[68] Particularly in the context of unfair competition claims under California's UCL, OCZ argues that the requisite jurisdictional nexus is best assessed by where the injury took place, based on the local nature of the individual consumer transaction at issue.[69]

The court agrees, and Wang has not disputed, that it is reasonable to presume the purchase of Wang's OCZ SSD product – and thus Wang's alleged injury – took place in Washington.[70] However, whether the injury occurred in California is not solely determinative in evaluating the application of California law, if the alleged misrepresentations by OCZ took place in California.[71] Similarly, the constitutional bar against application of state law to extraterritorial transactions and occurrences may not be an issue where there are significant allegations of the defendant's conduct having taken place in the forum state. This analysis is distinct and apart from the analysis of sufficient contacts for the purpose of establishing personal jurisdiction over the defendant.[72]

Courts evaluating the sufficiency of a state's contacts with the individual class plaintiffs' claims look to the offending activity alleged to have taken place in the state, not solely whether a

---

[68] *Id.* at 15-16 (citing *Doe v. Nestle, S.A.*, 748 F. Supp. 2d 1057, 1122 (C.D. Cal. 2010); *Morgan* at *6 & n.4; *Tidenberg v. Bidz.com, Inc.*, CV 08-5553 PSG, 2009 WL 605249 (C.D. Cal. March 4, 2009); *Standfacts Credit Servs., Inc. v. Experian Info. Solutions, Inc.*, 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005)).

[69] *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1022, 1028 (N.D. Cal. 2007).

[70] *See Tidenberg v. Bidz.com, Inc.*, CV 08-5553 PSG, 2009 WL 605249, at *11 (C.D. Cal. March 4, 2009) (determining the "more reasonable inference" regarding location of plaintiff's alleged injury – incurred from an online purchase – to be in the state in which she resides).

[71] *See Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1063-64 (1999); *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 224 (1999); *Morgan, et al. v. Harmonix Music Sys., Inc.*, C 08-5211 BZ, 2009 WL 2031765, at *2 (N.D. Cal. July 30, 2009).

[72] *See In re Hitachi Television Optical Block Cases*, No. 08cv1746 DMS, 2011 WL 9403, at *10 (S.D. Cal. Jan. 3, 2011) ("Unlike the contacts analysis for purposes of personal jurisdiction, which measures the defendant's contacts with the forum state, the contacts analysis here measures the forum state's contacts with the individual claims."). *See also Tidenberg*, 2009 WL 605249, at *4 ("[t]he existence of personal jurisdiction over a defendant does not alone permit application of the forum law to the claims of non-resident plaintiffs.").

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE

defendant is incorporated or headquartered there. In cases upholding the application of California

law to claims of nationwide or out-of-state class members, courts have found the consumers'

claims to have significant contacts with the state.[73] For example, in *In re Mattel*, the court held that

non-California plaintiffs may assert California state law causes of action against the defendant toy

companies where plaintiffs' allegations of misrepresentations made in reports, company

statements, and advertising were "reasonably likely to have come from or been approved by Mattel

corporate headquarters in California."[74] The court similarly found that the connections between

Fisher-Price and California were "weaker," but sufficient at the motion to dismiss stage based on

the location of the defendant company's executives and VP of Consumer Products in California.[75]

Similarly in *Chavez v. Blue Sky Natural Beverage Co.*, the court concluded that the fact of

defendants were headquartered in California and "their misconduct allegedly originated in

California" constituted "significant contacts" between California and the state law claims asserted

by the class sufficient to maintain those class claims.[76]

　　　　In contrast, the court in *Jones-Boyle v. Washington Mutual Bank* determined that dismissal

with leave to amend plaintiff's claims under the UCL was warranted because she had failed to

allege any activity of defendant bank JPMorgan in California during the relevant time period.[77] In

*In re Hitachi Television*, the court found it insufficient that Hitachi's marketing efforts for the

products at issue allegedly originated at their headquarters in California, because the employee

responsible for coordinating the marketing efforts had testified that Hitachi itself did not promote

---

[73] *See, e.g., Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010).

[74] 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008).

[75] *Id.*

[76] *See* 268 F.R.D. 365, 379 (N.D. Cal. 2010).

[77] No. CV 08-2142 JF, 2010 WL 2724287, at *11 (N.D. Cal. July 8, 2010).

17

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER
DENYING DEFENDANT'S MOTION TO STRIKE

United States District Court
For the Northern District of California

the products directly to consumers, but encouraged its retail dealers to do so.[78] The fact that the marketing coordinator's office was in California was "of little significance" because "any representations about the quality of the products would have originated with the individual retailers, not Hitachi employees in California."[79] Other courts similarly have dismissed UCL and other state law claims on like grounds.[80]

Though Wang's allegations of OCZ's California-based conduct are general, they provide a sufficient basis at the pleading stage for the invocation of California law. Similar to *In re Mattel*, the facts alleged are that the misleading marketing, advertising, and product information are "conceived, reviewed, approved or otherwise controlled from [OCZ's] headquarters in California."[81] These allegations find support in Wang's further allegations that OCZ's executive offices are in California and that the company itself selects California law as its forum to address website-based complaints. Taken as true for the purpose of a motion to dismiss, these allegations are more than sufficient to sustain Wang's California-based claims.[82]

---

[78] *See* 2011 WL 9403, at *7-8.

[79] *Id.* at 9.

[80] *See, e.g., Doe I v. Nestle S.A.*, 748 F. Supp. 2d 1057, 1122-23 (C.D. Cal. 2010) (pleading failed to allege harm to plaintiffs caused by California-based conduct); *Morgan*, 2009 WL 2031765, at *2 & n.5 (dismissing CLRA and UCL claims in part because plaintiff alleged only that one defendant was headquartered in California, but did not allege what conduct in California, if any, violated those laws).

[81] *See* Docket No. 1 ¶¶ 12.

[82] The court is not persuaded by OCZ's assertion that in the context of unfair competition claims, the requisite jurisdictional nexus is best assessed where the injury took place. OCZ's reliance on *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007) (rejecting allegations that "conduct in furtherance of the [antitrust and unfair competition] conspiracy," including meetings between the defendant companies, took place in California, were insufficient to apply California law to "transactions that, for individual consumers, are local in nature") and *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 266-67 (D. Mass. 2004) (concluding the "primary aim of antitrust and consumer protection laws generally … is compensating consumers, not policing corporate conduct" such that applying Pennsylvania law to "wholly out-of-state transactions" most often involving purchases from wholesale distributers would be "at best a 'novelty,' and at worst a violation of constitutional limitations") in support of this proposition overlooks the fact that in the context of consumer purchase transactions that are "local in nature,"

18

**B.      Motion to Strike**

OCZ moves to strike two sets of allegations pursuant to Fed. R. Civ. P. 12(f) as "immaterial matter [] which has no essential or important relationship to the claim for relief or the defenses being pleaded."[83] Rule 12(f) provides that a court may strike from the pleading "any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike are generally disfavored and rarely granted "unless it is clear that the material to be stricken "has no possible bearing on the subject matter of the litigation."[84]

**1.      Third-Party Online Reviews**

Wang alleges that OCZ maintained website pages that marketed and advertised the SSD products by quoting third-party reviews and testimonials and by linking directly to these outside sources.[85] He further alleges that these reviews, testimonials, and listed awards were based on the older versions of the Agility2 and Vertex2 SSD drives, and therefore were false and misleading as to the next generation products because they failed to disclose the changes affecting performance and capacity.[86] OCZ urges the court to strike these allegations as immaterial because the third party reviews and testimonials are not statements made by OCZ and therefore do not give rise to any of Wang's claims of misrepresentations by OCZ. OCZ further argues that the references may be stricken because the federal Communications Decency Act ("CDA"), 47 U.S.C. § 230, "immunizes providers of interactive computer services against liability arising from content created by third

there is wide-ranging precedent and a statutory basis for at least equal consideration of defendant's misconduct, and whether such alleged misconduct is linked closely to the alleged injury, e.g., development and execution in California of a misleading marketing campaign that causes injury to consumers in other states.

[83] *See* Docket No. 16 at 19.

[84] *See Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *Smith v. Levine Leichtman Capital Partners, Inc.*, 723 F. Supp. 2d 1205, 1212 (N.D. Cal. 2010).

[85] *See* Docket No. 1 ¶ 55.

[86] *See id.* ¶¶ 56, 57, 80.

19

parties."[87] OCZ points to various cases in which courts have found mere linking to third party websites to be an insufficient basis for establishing liability.[88]

Wang responds that the allegations of third-party content are material to the claims of misrepresentation and unfair business practices, and any determination by the court regarding immunity under the CDA would be premature at this time and would improperly effect a dismissal of part of Wang's complaint.[89] Wang also argues that OCZ's contention of non-liability under the CDA is essentially an affirmative defense, around which he is not required to plead.

Under the CDA, "[n]o provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."[90] The crux of the parties' dispute is whether OCZ's website qualifies for immunity as an "interactive computer service" or is subject to liability as an "information content provider."  OCZ argues that precedent in this circuit establishes websites as interactive computer services, especially considering the Ninth Circuit's determination that "courts have treated § 230(c) immunity as quite robust, adopting a relatively expansive definition of 'interactive computer service' and a relatively restrictive definition of 'information content provider.'" [91] OCZ asserts that this includes websites that selectively edit or choose the content published from a third party source.[92]

---

[87] *See* Docket No. 16 at 19 (quoting *Fair Hous. Council v. Roomates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)).

[88] *See, e.g, Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1161 (9th Cir. 2007) (holding that Google's act of directing a user's browser to a website with infringing photographic content "does not constitute direct infringement").

[89] *See* Docket No. 34 at 18.

[90] 47 U.S.C. § 230(c)(1).

[91] *See* Docket No. 36 at 12 (quoting *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003)).

[92] *See id.* at 12-13 (citing *Batzel v. Smith*, 333 F.3d 1018, 1031 n. 18 (9th Cir. 2003)). *See also Carafano*, 339 F.3d at 1124 ("[S]o long as a third party willingly provides the essential published

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE

United States District Court
For the Northern District of California

Whether OCZ falls within the CDA's definition of "interactive computer service," and whether the third-party content allegedly displayed on OCZ's website was reproduced by OCZ in a manner potentially subjecting it to liability, raise factual questions unfit for disposition pursuant to a motion to strike.[93] Material should not be stricken from the pleadings, particularly before discovery has afforded the parties the opportunity to determine the material's relevance to claims or defenses, if there is a possibility that it may have bearing on the litigation.[94] Based on the arguments of the parties and evidence provided, the court at this point is unable to determine that the alleged third party content has no bearing on Wang's claims of misrepresentation. On this basis, the court finds OCZ's motion to strike those allegations to be premature.

### 2.    Models Not Purchased

OCZ also moves to strike allegations about Vertex drives and all Agility drive models that Wang did not purchase, arguing that "Wang does not allege that he suffered any injury, or experienced any loss of money or value, in connection with products that he did not purchase."[95] Wang contends that the factual allegations concerning the Vertex and Agility 2 drives add detail and context to Wang's claim that OCZ uniformly designed, constructed, and advertised its SSD products in such as way as to mislead consumers. Short of showing that these allegations are immaterial or impertinent under Rule 12(f), Wang argues that this motion actually seeks to strike class allegations at the pleading stage, which would constitute an improper application of the

---

content, the interactive service provider receives full immunity regardless of the specific editing or selection process.").

[93] *See Whittlestone*, 618 F.3d at 974 (finding that defendant's argument to strike certain claims for damages as precluded as a matter of law as "really an attempt to have certain portions of [plaintiff's] complaint dismissed or to obtain summary judgment against [plaintiff] as to those portions of the suit-actions better suited for a Rule 12(b)(6) motion or a Rule 5 motion").

[94] *See Colaprico.*, 758 F. Supp. at 1339.

[95] *See* Docket No. 16 at 22.

21

rule.[96] Wang further argues that classes have been permitted to include product models that the representative did not purchase.[97] OCZ responds that the more persuasive line of cases follows the reasoning of *Johns v. Bayer Corp.*, which held that a plaintiff "cannot expand the scope of his claims to include a product he did not purchase."[98]

In dicta, the court in *Bayer Corp.* explains that the plaintiff has standing to proceed with claims under the UCL and CLRA only with respect to the particular Men's Health vitamin product that he purchased in reliance on Bayer's representations; claims relating to the Men's 50+ vitamin could not be sustained.[99] Other district courts in this Circuit recently have followed the principle set forth in *Bayer Corp.*[100] Other recent court decisions, however, have drawn the opposite conclusion. For example, in *Carideo v. Dell, Inc.*, the court upheld claims by the named plaintiffs for computer models that they had not purchased, but that were "subject to the same core factual allegations and causes of action."[101] And in *Hewlett-Packard v. Superior Ct.*, the court upheld class certification for UCL, CLRA, express warranty and unjust enrichment claims relating to display failures in several models, even though the named plaintiff only purchased one of those models.[102]

---

[96] *See* Docket No. 34 at 22-23 (*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).

[97] *See id.* at 23 (citing *Von Koenig v. Snapple Beverage Corp.*, 2011 WL 43577, at *3 (E.D. Cal. Jan. 26, 2011); *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122 (W.D. Wash. 2010)).

[98] No. 09-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010).

[99] *Id.* at *5.

[100] *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, C 10-1044 JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (holding that plaintiff has standing to bring UCL and CLRA claims for the Drumstick ice cream products purchased, but dismissing plaintiff's claims for the Dibs ice cream product, which plaintiff never alleged he purchased or suffered a loss); *Mlejnecky v. Olympus Imaging Am., Inc.*, No. 2-10-cv-2630, 2011 WL 1497096, at *4 (E.D. Cal. April 19, 2011) (dismissing plaintiff's claims relating to a camera model that has the "same underlying defects" and used the same advertisements as the model she purchased, but for which she did not allege any economic injury).

[101] 706 F. Supp. 2d 1122, 1134 (W.D. Wash. 2010).

[102] 167 Cal. App. 4th 87, 89-91 (2008).

22

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER DENYING DEFENDANT'S MOTION TO STRIKE

These cases are instructive insofar as they illuminate the need to differentiate a plaintiff's alleged economic injury under the UCL or CLRA as it relates to a product actually purchased from claims for related products that may have been subject to the same misrepresentation, but for which the named plaintiff suffered no loss or economic harm. Here, OCZ moves to strike allegations relating to SSD drives apart from the Agility 2 model that Wang purchased, not to dismiss the claims or allegations based on standing. As a result, OCZ improperly relies upon reasoning related to standing, rather than reasoning related to whether the allegations are "redundant, immaterial, [or] impertinent." Although Wang's inability to allege injury based on products that he did not purchase may ultimately subject those claims to proper dismissal pursuant to a Rule 12(b) motion or motion for summary judgment, inclusion of those products at the pleading stage and prior to a motion for class certification is not improper.

## IV. CONCLUSION

Based on the foregoing, the court hereby GRANTS OCZ's motion to dismiss Wang's claims for prospective injunctive relief WITH LEAVE TO AMEND, as well as Wang's claims subject to heightened pleading under Fed. R. Civ. P. 9(b): false advertising under the FAL; unfair competition under the UCL; violations of the CLRA; negligent misrepresentation, and unjust enrichment. The court DENIES OCZ's motion to dismiss Wang's complaint for lack of standing and DENIES OCZ's motion to strike allegations concerning third-party website content and products not purchased.

**IT IS SO ORDERED.**

Dated: 10/14/2011

Paul S. Grewal

PAUL S. GREWAL
United States Magistrate Judge

Case No.: 11-01415 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; ORDER
DENYING DEFENDANT'S MOTION TO STRIKE

United States District Court
For the Northern District of California