1  MAYER BROWN LLP
   NEIL M. SOLTMAN (SBN 67617)
2    *nsoltman@mayerbrown.com*
   MATTHEW H. MARMOLEJO (SBN 242964)
3    *mmarmolejo@mayerbrown.com*
   RUTH ZADIKANY (SBN 260288)
4    *rzadikany@mayerbrown.com*
   350 South Grand Avenue, 25th Floor
5  Los Angeles, CA  90071-1503
   Telephone:  (213) 229-9500
6  Facsimile:  (213) 625-0248

7  Attorneys for Defendant
   OCZ TECHNOLOGY GROUP, INC.

8

9            **UNITED STATES DISTRICT COURT**

10           **NORTHERN DISTRICT OF CALIFORNIA**

11                **SAN JOSE DIVISION**

12

13 JAMES WANG, individually and on behalf of          Case No. CV11-01415 PSG
   all others similarly situated,
14                                                    **DEFENDANT OCZ TECHNOLOGY
                                                      GROUP, INC.'S NOTICE OF MOTION
                        Plaintiff,                    AND MOTION TO DISMISS
15                                                    PLAINTIFF'S FIRST AMENDED
       v.                                             COMPLAINT**
16
   OCZ TECHNOLOGY GROUP, INC.,                        **MEMORANDUM OF POINTS AND
17                                                    AUTHORITIES IN SUPPORT
                        Defendant.                    THEREOF**
18
                                                      Date:    February 7, 2012
19                                                    Time:    10:00 a.m.
                                                      Courtroom: 5
20
                                                      The Honorable Paul S. Grewal
21
                                                      Complaint filed:  March 24, 2011
22
                                                      [Notion of Motion and Motion to Strike and
23                                                    Proposed Order Filed Concurrently
                                                      Herewith]
24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE THAT on February 7, 2012 at 10:00 a.m. in Courtroom 5 of

4 the United States District Court for the Northern District of California, located at 280 South 1st

5 Street, San Jose, CA 95113, before the Honorable Judge Paul S. Grewal, Defendant OCZ

6 Technology Group, Inc. ("OCZ") will and hereby does move to dismiss plaintiff James Wang's

7 ("Wang") First Amended Class Action Complaint ("FAC") and each claim therein.

8          This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based

9 on the following grounds:

10 **I.**     Wang has not stated a claim for false advertising, unfair competition, negligent

11          misrepresentation, violations of the California Legal Remedies Act, breach of express

12          warranty or unjust enrichment;

13 **II.**    Wang lacks standing to bring a number of his allegations because they concern products

14          that Wang admittedly did not purchase and advertising upon which he did not rely;

15 **III.**   Wang lacks standing to seek injunctive relief;

16 **IV.**    Wang may not seek disgorgement under the claims pled.

17          This Motion is based on this Notice of Motion; the attached Memorandum of Points and

18 Authorities filed concurrently herewith; the Notice of Motion and Motion to Strike filed

19 concurrently herewith; the First Amended Complaint; and the pleadings, papers and other

20 documents on file in this action; along with any evidence and argument presented to the Court at

21 the hearing in this matter.

22 Dated:  December 20, 2011                    MAYER BROWN LLP
                                               NEIL M. SOLTMAN
23                                             MATTHEW H. MARMOLEJO
                                               RUTH ZADIKANY
24

25

26                                             By:   s/ Ruth Zadikany
                                                      Ruth Zadikany
27                                             Attorneys for Defendant
                                               OCZ TECHNOLOGY GROUP, INC.
28

1

## **TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ..................................................................................................... 1

4

STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3)) ............................................. 1

5

SUMMARY OF ALLEGATIONS .......................................................................... 1

ARGUMENT ............................................................................................................ 4

6

I.     NONE OF WANG'S CLAIMS FOR RELIEF ARE LEGALLY SUFFICIENT .............. 4

7

       A.     Wang's First, Second, Third And Sixth Causes Of Action Fail To State A
              Claim ............................................................................................................ 5

8

              1.     OCZ's Advertising Materials Are Not Plausibly False Or
                     Misleading ........................................................................................ 5

9

              2.     OCZ Had No Duty To Disclose Changes To The Component Parts
                     Of The Products ............................................................................... 10

10

       B.     Wang Fails To State A Claim For Breach of Express Warranty ........................ 13

11

       C.     Wang Fails To State A Claim Under The CLRA. ............................................. 15

12

       D.     Wang Fails To State A Claim Under The UCL. ............................................... 15

13

              1.     Wang Has Not Sufficiently Alleged That OCZ's Conduct Was
                     "Unlawful" ....................................................................................... 15

14

              2.     Wang Has Not Established That OCZ's Alleged Conduct Was
                     "Unfair" ............................................................................................ 16

15

              3.     OCZ's Advertising Was Not Fraudulent, As A Matter Of Law ............... 18

16

       E.     Wang Has Failed to Allege Facts Sufficient To Establish That OCZ
              Negligently Misrepresented The Products ...................................................... 18

17

II.    WANG LACKS STANDING TO ASSERT A CLAIM BASED ON PRODUCTS
       HE DID NOT PURCHASE AND ADVERTISING UPON WHICH HE DID

18

       NOT RELY ................................................................................................................. 19

19

       A.     Wang Does Not Have Standing To Pursue Claims Based On The Vertex 2
              SSD Or The 60 GB, 80GB, 90 GB, 160 GB, and 180 GB Agility 2 SSDs ........ 21

20

       B.     Wang Does Not Have Standing To Pursue Claims Based On Advertising
              Of The Vertex 2 SSD, Upon Which He Did Not Rely ..................................... 22

21

III.   WANG'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED ................... 22

22

IV.    WANG LACKS STANDING TO SEEK INJUNCTIVE RELIEF ............................... 23

23

V.     WANG IMPROPERLY SEEKS DISGORGEMENT ................................................. 24

24

CONCLUSION ............................................................................................................. 25

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4
*Am. Home Products Corp. v. FTC,*
 695 F.2d 681 (3d Cir. 1982)..................................................................................................9
5

6
*Andrade v. Pangborn Corp.,*
 No. C 02-3771 PVT, 2004 U.S. Dist. LEXIS 22704 (N.D. Cal. Oct. 22, 2004) ....................21

7
*Aquino v. Credit Control Servs.,*
 4 F. Supp. 2d 927 (N.D. Cal. 1998) .....................................................................................16
8

9
*Baba v. Hewlett-Packard Co.,*
 No. C 09-05946 RS, 2011 U.S. Dist. LEXIS 8527 (N.D. Cal. Jan. 28, 2011) ......................16
10

11
*Baggett v. Hewlett-Packard Co.,*
 582 F. Supp. 2d 1261 (C.D. Cal. 2007) ...............................................................................23

12
*Baltazar v. Apple, Inc.,*
 No. CV-10-3231-JF, 2011 U.S. Dist. LEXIS 13187 (N.D. Cal. Feb. 10, 2011) ....................13
13

14
*Baltazar v. Apple, Inc.,*
 No. CV-10-3231-JF, 2011 U.S. Dist. LEXIS 96140 (N.D. Cal. Aug. 26, 2011) ....................10
15

16
*Bardin v. DaimlerChrysler Corp.,*
 136 Cal. App. 4th 1255 (2006) ..........................................................................11, 12, 13, 17

17
*Bell Atl. Corp. v. Twombly,*
 127 S. Ct. 1955 (2007).........................................................................................................4
18

19
*Berry v. Webloyalty.com, Inc.,*
 No. 10-CV-1358-H (CAB), U.S. Dist. LEXIS 39581 (S.D. Cal. Apr. 11, 2011)....................16
20

21
*Berryman v. Merit Prop. Mgmt., Inc.,*
 152 Cal. App. 4th 1544 (2007) ...........................................................................................17

22
*Blennis v. Hewlett-Packard Co.,*
 No. 07-00333 JF, 2008 U.S. Dist. LEXIS 106464 (N.D. Cal. Mar. 25, 2008).......................16
23

24
*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC,*
 162 Cal. App. 4th 858 (2008) .........................................................................................10, 13
25

26
*Buller v. Sutter Health,*
 160 Cal. App. 4th 981 (2008) .........................................................................................10, 18

27
*Cal-Tech Comms., Inc. v. Los Angeles Cellular Telephone Co.,*
 20 Cal. 4th 163 (1999) ........................................................................................................17
28

*Carideo v. Dell*,
  706 F. Supp. 2d 1122 (W.D. Wash. 2010)............................................................22

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. January 10, 2011)...............21

*Cattie v. Wal-Mart Stores, Inc.*,
  504 F. Supp. 2d 939 (S.D. Cal. 2007).........................................................20, 24

*Clemens v. DaimlerChrysler Corp.*,
  530 F.3d 852 (9th Cir. 2008) ....................................................................12

*Cortez v. Purolator Air Filtration Prods. Co.*,
  23 Cal. 4th 163 (2000) .........................................................................25

*Daugherty v. Am. Honda Motor Co. Inc.*,
  144 Cal. App. 4th 824 (2006) ...............................................................10, 12

*Dumas v. Kipp*,
  90 F.3d 386 (9th Cir. 1996) .....................................................................1

*Dysthe v. Basic Research LLC, et al.*,
  Case No. CV 09-8013 AG, 2011 WL 586307 (C.D. Cal. June 13, 2011)............................21

*Fraker v. KFC Corp.*,
  No. 06-CV-1284-JM, 2007 U.S. Dist. LEXIS 32041 (S.D. Cal. Apr. 30, 2007) ....................7

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ...............................................................6, 9, 10

*Gest v. Bradbury*,
  443 F.3d 1177 (9th Cir. 2006) ..................................................................23

*Hewlett-Packard v. Superior Court*,
  167 Cal. App. 4th 89 (2008) ...................................................................22

*Hodgers-Durgin v. De La Vina*,
  199 F.3d 1037 (9th Cir. 1999) .............................................................23, 24

*Hoey v. Sony Elecs, Inc.*,
  515 F. Supp. 2d 1099 (N.D. Cal. 2007) .....................................................12, 13

*Hovsepian v. Apple, Inc.*,
  No. 08-5788 JF (PVT), 2009 U.S. Dist. LEXIS 117562 (N.D. Cal. Dec. 17, 2009)...............11

*In re Sony Grand Wega Litig.*,
  758 F. Supp. 2d 1077 (S.D. Cal. 2010).................................................10, 12, 16

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .........................................................................21

iii

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ........................................................................5

*Jogani v. Superior Court*,
    165 Cal. App. 4th 901 (2008) ......................................................................23

*Johns v. Bayer Corp.*,
    No. 09-CV-1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010)...........
    .........................................................................................................22, 23

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.*,
    578 F. Supp. 2d 1229 (C.D. Cal. 2008) .........................................................7

*Johnson v. Riverside Healthcare Sys., LP*,
    534 F.3d 1116 (9th Cir. 2008) .....................................................................4

*Kent v. Hewlett-Packard Co.*,
    No. 09-5341 JF (PVT), 2010 U.S. Dist. LEXIS 76818 (N.D. Cal. July 6, 2010)...................11

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ............................................................................25

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005).........................................................20

*Laster v. T-Mobile USA, Inc.*,
    No. 05-CV-1167, 2009 U.S. Dist. LEXIS 116228 (S.D. Cal. Dec. 14, 2009).......................24

*Lavie v. Proctor & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ......................................................................6

*Long v. Hewlett-Packard Co.*,
    No. 07-16440, 316 Fed. App'x 585 (9th Cir. March 3, 2009)................................13

*Long v. Hewlett-Packard Co.*,
    No. C 06-02816 JW, 2007 U.S. Dist. LEXIS 79262 (N.D. Cal. July 27, 2007)....................12

*Lopez v. GMAC Mortg.*,
    No. CVF 11-1795 LJO JLT, 2011 U.S. Dist. LEXIS 139436 (E.D. Cal. Dec. 5, 2011) ...........5

*Loranzo v. AT&T Wireless Services, Inc.*,
    504 F.3d 718 (9th Cir. 2007) ......................................................................16

*Lorenzo v. Qualcomm Inc.*,
    603 F. Supp. 2d 1291 (S.D. Cal. 2009).........................................................23

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................23

MOTION TO DISMISS FIRST AMENDED COMPLAINT; CASE NO. CV11-01415 PSG

*Madrid v. Perot Sys. Corp.*,
  130 Cal. App. 4th 440 (2005) ...................................................................................25

*Maloney v. Verizon Internet Servs., Inc.*,
  No. ED CV 08-1885-SGL, 2009 U.S. Dist. LEXIS 131027 (C.D. Cal. Oct. 4, 2009)........7, 15

*Maneely v. Gen. Motors Corp.*,
  108 F.3d 1176 (9th Cir. 1997) .................................................................................19

*Marshall v. Standard Ins. Co.*,
  214 F. Supp. 2d 1062 (C.D. Cal. 2000) .....................................................................25

*McDonnel Douglas Corp. v. Thiokol Corp.*,
  124 F.3d 1173 (9th Cir. 1997) .................................................................................14

*McKinniss v. Kellogg USA*,
  No. CV-07-2611 ABC, 2007 U.S. Dist. LEXIS 96206 (C.D. Cal. Sep. 21, 2007) .....................
  ..............................................................................................................6, 7, 18, 19

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) .......................................................................................20, 24

*Mlejnecky v. Olympus Imaging Am., Inc.*,
  No. 2:10-CV-02630 JAM-RJN, 2011 U.S. Dist. LEXIS 42333, *11 (E.D. Cal. April
  19, 2011) .........................................................................................................21, 22

*Morgan v. Harmonix Music Sys.*,
  No. C08-5211 BZ, 2009 U.S. Dist. LEXIS 57528 (N.D. Cal. July 7, 2009)...................13, 17

*O'Shea v. Epson Am., Inc.*,
  No. CV 09-8063 PSG, 2011 U.S. Dist. LEXIS 85273 (C.D. Cal. July 29, 2011)...................5

*Oestreicher v. Alienware Corp.*,
  322 Fed. App'x 489 (9th Cir. Apr. 2, 2009) ...............................................................12

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ..................................................................11, 22

*Patent Trust v. Microsoft Corp.*,
  525 F. Supp. 2d 1200 (S.D. Cal 2007).................................................................15, 18

*People v. Toomey*,
  157 Cal. App. 3d 1 (1984) ......................................................................................23

*Pfizer, Inc. v. Miles, Inc.*,
  868 F. Supp. 437 (D. Conn. 1994)..............................................................................7

*Sanders v. Apple, Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .......................................................................11

*Shein v. Canon U.S.A. Inc.*,
    No. CV 08-07323 CAS (Ex), 2009 U.S. Dist. LEXIS 131519 (C.D. Cal. June 22,
    2009) .................................................................................................................23

*Smith v. Ford Motor Co.*,
    749 F. Supp. 2d 980 (N.D. Cal. 2010) ...............................................................12

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) .............................................................................8

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ...............................................................................4

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) .........................................................24, 25

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.*,
    933 F. Supp. 918 (C.D. Cal. 1996) .......................................................................9

*Tietsworth v. Sears, Roebuck & Co.*,
    No. 5:09-CV-00288 JF (HRL), 2009 U.S. Dist. LEXIS 98532 (N.D. Cal. Oct. 13,
    2009) .................................................................................................................11

*Vinci Inv. Co. v. Mid-Century Ins. Co.*,
    No. CV 08-152 AHS, 2008 U.S. Dist. LEXIS 82628 (C.D. Cal. Sept. 30, 2008)...................25

*Weinstate v. Dentsply Int'l, Inc.*,
    180 Cal. App. 4th 1213 (2010) ...........................................................................15

*Williams v. Beechnut Nutrition Corp.*,
    185 Cal. App. 3d 135 (1986) ..............................................................................14

**STATUTES**

Cal. Bus. & Prof. Code § 17200, *et seq.* ........................................................... passim

Cal. Bus. & Prof. Code § 17204 .........................................................................20

.Cal. Bus. & Prof. Code § 17500, *et seq.* ........................................................... passim

Cal. Bus. & Prof. Code § 17535 .........................................................................20

Cal. Civ. Code § 1572, *et seq.*........................................................................... passim

Cal. Civ. Code §§ 1709-1710 .............................................................................16

Cal. Civ. Code § 1750 *et seq.*..............................................................................4

Cal. Civil Code § 1770 ....................................................................................... passim

Cal. Civ. Code § 1780.................................................................................20, 25

MOTION TO DISMISS FIRST AMENDED COMPLAINT; CASE NO. CV11-01415 PSG

Cal. Comm. Code § 2313 .................................................................................4, 16

Civil L.R. 7-4(a)(3)) ..............................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ....................................................................................1, 4

MOTION TO DISMISS FIRST AMENDED COMPLAINT; CASE NO. CV11-01415 PSG

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This lawsuit concerns OCZ's Vertex 2 and Agility 2 lines of solid state drives ("SSDs"), defined as "Products" in paragraph 1 of the FAC. Wang alleges that OCZ's sale of the Vertex 2 and Agility 2 lines of SSD's constitutes actionable fraud and a breach of warranty because the SSDs allegedly do not perform as advertised. The gravamen of Wang's FAC is that OCZ "failed to disclose" a change in the component parts of the Products to consumers, such that its advertising and marketing materials were misleading. Yet even assuming for purposes of this Motion that the Products perform as the FAC describes, Wang fails to state any claims against OCZ. Wang fails to sufficiently allege that any advertisements or representations by OCZ promised the particular performance to which Wang claims to be entitled. Nor does Wang adequately allege that OCZ had a duty to make any affirmative disclosures regarding the component parts of the Products and any changes made thereto, as required to establish an actionable omission. Additionally, Wang alleges a claim for breach of express warranty based upon a separate ground, that OCZ's marketing materials for the Products "warranted" the Products' "user accessible" storage capacity, precise performance specifications and level of performance relative to a previous iteration of the Products, even though OCZ never made any such warranties. These theories cannot support a claim, and this motion to dismiss should thus be granted. Because amendment would now be futile, OCZ respectfully requests that Wang's FAC be dismissed with prejudice. *See Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

### STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3))

1.      Does plaintiff fail to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)?

2.      Does plaintiff impermissibly seek relief, at least in part, for alleged injuries resulting from products that he did not purchase and advertisements upon which he did not rely?

3.      Does plaintiff have standing to seek injunctive relief?

4.      Does plaintiff improperly seek disgorgement as a remedy?

### SUMMARY OF ALLEGATIONS

Plaintiff James Wang alleges that "OCZ markets, distributes and sells" certain models of

1

SSDs, including the Products. FAC ¶ 2, 12. According to Wang, in or about January of 2011, "OCZ made material alterations to the mix of physical components used in the Vertex 2 and Agility 2 line of products." FAC ¶ 4. Wang takes issue with the alleged technical revisions of the Products; specifically with the "us[e] [of] a 25 nanometer (nm) manufacturing process instead of a 34-nm process used to produce the[] predecessor models" and the "use [of] high density chips that allowed OCZ to use fewer chips per product." FAC ¶¶ 59-60. Wang's claims are based on a fraud by omission theory arising from the alleged fact that "OCZ failed to disclose these changes to consumers and continued to use the same marketing and advertising statements." FAC ¶ 6.

Wang alleges that he purchased a single 120 gigabyte Agility 2 model, after the purported technical change, on February 27, 2011. FAC ¶ 34. And he bases his claims on "research" that he conducted in the month leading up to his purchase by "witnessing, reading and reviewing" the following information: (a) The OCZ product pages for the Agility 2 and Vertex 2 product lines; (b) The title and SKU of the 120 GB Agility 2, as well as pictures of the 120 GB Agility 2's packaging, on the webpage of an independent retailer, Newegg.com; (c) An "Overview" and "Details" page of the Agility 2 on Newegg.com that is "identical" to the specifications set forth on OCZ's webpage; and (d) Reviews of the Agility 2 and Vertex 2 by third party technology enthusiast website Anandtech, which Plaintiff does not allege was linked to or cited on OCZ's webpage. FAC ¶ 38.

As a result of the purported change to the component parts of the Products, Wang claims not to have received the full value of his 120GB Agility 2 drive based on the advertising that he viewed. FAC ¶ 11. The FAC suggests a two-fold concern over storage capacity and performance (i.e., data transfer speed). Wang claims that the "user accessible" and IDEMA capacity of the Agility 2 drive he purchased are not as advertised, namely that his drive had a user accessible capacity of only 115GB. FAC ¶ 41. He also claims that the unit he purchased did not meet the performance specifications advertised by OCZ because it operated at "substantially slower" data transfer speeds than the Agility 2 units previously sold by OCZ. FAC ¶¶ 41, 76.

1    Interestingly, the OCZ advertising material that Wang purportedly saw and relied upon,

2    which he has attached to the FAC as Exhibits 1-2 and Exhibit 6[1], do not advertise the "user

3    accessible" or "IDEMA" capacity of the Products.  Rather, the OCZ advertising material that

4    Wang purportedly relied upon advertise only a raw capacity of the Products.  And OCZ's

5    Product websites specifically explain that:

6    *Consumers may see a discrepancy between reported capacity and actual*
     *capacity*; the storage industry standard is to display capacity in decimal.
7    However, the operating system usually calculates capacity in binary
     format, causing traditional HDD and SSD to show a lower capacity in
8    Windows.  *In the case of SSDs, some of the capacity is reserved for*
     *formatting and redundancy for wear leveling.*
9

10   FAC, Exs. 1-2.  Further, in disclosing the available storage capacities of the Products, OCZ's

11   product pages state that "[a]ctual IDEMA capacities may vary slightly."  *Id.*

12   With respect to the performance specifications advertised by OCZ (i.e., data transfer

13   rates), the first page of OCZ's product webpages for both the Agility 2 and Vertex 2 product

14   lines explain that:

15   *Rated speeds may vary slightly depending on the benchmark used, bios*
     *version and file size*.  We recommend using ATTO, IOMeter, and PC
16   Mark Vantage for benchmarking SSDs and to achieve maximum rated
     specifications.
17

18   *Id.*  In addition, the performance specifications are advertised in terms of their outer limit of

19   performance, using the qualifying term "up to" in order to disclose the maximum performance

20   speed.  For example, the "*Max Performance*" for the 120GB Agility 2 SSD models is advertised

21   as:

22   Max Read: up to 285 MB/s
     Max Write: up to 275 MB/s
     Sustained Write: up to 250MB/s
23   Random Write 4KB (aligned): 10,000 IOPS

24   *Id.*  Notably, the OCZ advertising materials upon which Wang alleges that he relied do not

25   advertise or mention the component parts of the Products—they do not specify the number of

26   memory chips used, whether high or low density chips are used, or whether a 25 nm v. 34 nm

27   manufacturing process is utilized.

28   _____
     [1]    It is unclear where Wang alleges he saw the product packaging attached as Exhibit 6.

3

1    Based on these flimsy allegations, Wang attempts to state six counts against OCZ on

2    behalf of himself and a putative nationwide class of persons who purchased all models of Agility

3    2 or Vertex 2 drives with storage capacities of 180GB or less and which used 25 nm flash

4    memory chips: Count 1 - Deceptive Advertising Practices (Cal. Bus. & Prof. Code § 17500 *et*

5    *seq.* ("FAL")) (FAC ¶¶ 85-91); Count 2 – Unfair Business Practices (Cal. Bus. & Prof. Code

6    § 17200 *et seq.* ( "UCL")) (FAC ¶¶ 92-96); Count 3 – Negligent Misrepresentation (FAC ¶¶ 97-

7    102); Count 4 – Breach of Express Warranty (Song-Beverly Consumer Warranty Act, Cal Civ.

8    Code § 1790 *et seq.* and Cal. Comm. Code § 2313) (FAC ¶¶ 103-107); Count 5 – Unjust

9    Enrichment (FAC ¶¶ 108-113); and Count 6 – California Consumers Legal Remedy Act, Cal.

10    Civ. Code § 1750 *et seq.* ("CLRA") (FAC ¶¶ 114-122).   Wang seeks actual and compensatory

11    damages, restitution and disgorgement of all amounts obtained by OCZ as a result of its

12    allegedly unlawful activities, punitive damages, injunctive relief and attorneys' fees and costs.

13    FAC, "Relief Sought" ¶¶ a-f.

14                                    **ARGUMENT**

15    **I.    NONE OF WANG'S CLAIMS FOR RELIEF ARE LEGALLY SUFFICIENT.**

16    A complaint must be dismissed under Rule 12(b)(6) where the plaintiff has failed to

17    allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

18    *Twombly*, 127 S. Ct. 1955, 1974 (2007); *Accord Johnson v. Riverside Healthcare Sys., LP*, 534

19    F.3d 1116, 1122 (9th Cir. 2008).  Dismissal may be based on either "lack of a cognizable legal

20    theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson*,

21    524 F.3d at 1121.  While the factual allegations in the complaint must be accepted as true, "[t]he

22    court need not [] accept as true allegations that . . . are merely conclusory, unwarranted

23    deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d

24    979, 988 (9th Cir. 2001).  A plaintiff's obligation to state the grounds for his entitlement to relief

25    therefore demands "more than labels and conclusions, and a formulaic recitation of the elements

26    of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65.

27

28

1

A.    **Wang's First, Second, Third And Sixth Causes Of Action Fail To State A Claim.**

2

3      Wang's fraud-based claims under the FAL, UCL, CLRA and for negligent

4   misrepresentation fail for several reasons.[2]  First, Wang has not alleged an actionable false or

5   misleading statement.    Second, he has failed to allege a failure to disclose based on any

6   established duty to disclose.  To establish a violation of the FAL, Wang must allege that OCZ

7   made or disseminated any statement concerning property or services that is "untrue or

8   misleading."  Cal. Bus. & Prof. Code § 17500.  The UCL prohibits the commission of any

9   "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  And

10  the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in

11  "representing" or "advertising" goods." Cal. Civil Code § 1770.  "Because the standard for

12  deceptive practices under the 'fraudulent' prong of the UCL applies equally to

13  misrepresentation-based claims under the CLRA and FAL, courts often address these claims in

14  tandem." *O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG (CWx), 2011 U.S. Dist. LEXIS

15  85273, *13 (C.D. Cal. July 29, 2011) (internal citation omitted).  Similarly, claims for negligent

16  misrepresentation require a misrepresentation, either by way of a "false representation,

17  concealment or nondisclosure." *Lopez v. GMAC Mortg.*, No. CVF 11-1795 LJO JLT, 2011 U.S.

18  Dist. LEXIS 139436, *38 (E.D. Cal. Dec. 5, 2011).  Wang has not been, and will not be, able to

19  establish that OCZ's advertising and marketing materials are misleading or fraudulent, or that

20  OCZ has a duty to disclose information regarding the component parts of its Products.

21            1.    **OCZ's Advertising Materials Are Not Plausibly False Or Misleading.**

22                  (a)    Wang's Interpretation Of The Products' Specifications Is

23                         Unwarranted and Unsupported By The Facts Alleged.

24      Wang's far-fetched interpretation of OCZ's advertising permeates all of his fraud-based

25  causes of action and is equally fatal to each claim.  Under all categories of Wang's fraud-based

26  claims, conduct may be fraudulent or misleading if it is likely to deceive a reasonable consumer

27  _____

[2]    They are contained respectively in the First Cause of Action (paragraphs 85-91), Second Cause of Action (paragraph 92-96), Sixth Cause of Action (paragraphs 114-122) and Third Cause of Action (paragraphs 97-102).

28

1  within the target population—here, a reasonable consumer of OCZ's solid state drives. *See In re*

2  *Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009) (under the UCL, "[i]n order to obtain a

3  remedy for deceptive advertising, . . . . [t]he law focuses on the reasonable consumer *who is a*

4  *member of the target population.*" (emphasis added)); *Lavie v. Proctor & Gamble Co.*, 105 Cal.

5  App. 4th 496, 508-09 (2003) (noting that advertising aimed at a particularly susceptible audience

6  such as preschool children is measured by the audience to which it is addressed). And "[t]he

7  term 'likely' indicates that deception must be probable, not just possible." *McKinniss v. Kellogg*

8  *USA*, No. CV-07-2611 ABC (RCx), 2007 U.S. Dist. LEXIS 96206, *8-9 (C.D. Cal. Sep. 21,

9  2007). Whether read in isolation or in the context of all of its advertising materials, OCZ's

10  advertising would not deceive a *reasonable* consumer into believing that he or she would be

11  receiving 120 GB of *user accessible* storage capacity or data transfer speeds at the exact number

12  specified (i.e., for the 120GB Agility 2, a read speed of *exactly* 285MB/s, a write speed of

13  *exactly* 275MB/s, and a sustained write speed of *exactly* 250MB/s). If the alleged

14  misrepresentation would not mislead a reasonable consumer, then the allegation may be

15  dismissed on a motion to dismiss. *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995)

16  (affirming dismissal of plaintiff's complaint because "[a]ny [reasonable] persons . . . would be

17  put on notice that [winning] was not guaranteed simply by doing sufficient reading to comply

18  with the instructions for entering the sweepstakes.").

19          OCZ's advertising materials specifically state the "*maximum*" performance specifications

20  of its Products as being "*up to*" the specified number (i.e., for the 120 GB Agility 2 "*up to*

21  285MB/s," "*up to* 275MB/s" and "*up to* 200 MB/s." FAC ¶ 38, Exs. 1-2. They plainly do not

22  say those speeds will be reached at all times and in all circumstances. Furthermore, nowhere in

23  any of the advertising materials identified by Wang does OCZ make any representation

24  regarding "user accessible" capacity (*id.* ¶ 38, Exs. 1-3, 6); that appears to be a term invented by

25  Wang, not one used by OCZ. Nor is there any reason to believe Wang's conclusory allegations

26  that OCZ product model numbers are based on the amount of "user accessible" storage capacity

27  of the Products, as opposed to the guaranteed raw capacity of the Products prior to formatting

28  and wear leveling. FAC ¶ 47. The advertising and website materials never make that

MOTION TO DISMISS FIRST AMENDED COMPLAINT; CASE NO. CV11-01415 PSG

1  representation.

2      A misunderstood or misinterpreted statement is not a misleading statement. While

3  certain consumers may project their own individualized meanings onto a statement, their

4  fundamental assumptions about a product are often simply unreasonable. In such instances,

5  courts have not hesitated to dismiss the claims that depend on these unreasonable interpretations

6  on a 12(b)(6) motion. *See Fraker v. KFC Corp.*, No. 06-CV-1284-JM (WMc), 2007 U.S. Dist.

7  LEXIS 32041, at *7 (S.D. Cal. Apr. 30, 2007) (holding that "[n]o reasonable consumer would

8  rely upon [] statements" such as "[t]he good news is all foods can fit into a balanced eating plan.

9  That includes tacos, pizza, chicken, seafood and burgers," and "[y]ou can enjoy 'fast food' as

10 part of a sensible balanced diet" as "specific representations as to health, quality, or safety.");

11 *McKinniss*, 2007 U.S. Dist. LEXIS 96106 at *11 (holding that "[n]o reasonable consumer would

12 view the trademark 'FROOT LOOPS' name as describing the ingredients of the cereal"). The

13 Court should follow a similar path here.

14     The advertised specifications at issue in this case are no different than department store

15 signs that advertise, "save *up to* 50%," regularly encountered by most consumers—but which no

16 reasonable consumer takes to mean that every item in the store is 50% off. Otherwise, there

17 would be no need for the words "up to." Applying this rationale, several courts have held that a

18 statement focusing on the minimum or maximum figures for a range of possibilities is not

19 misleading as a matter of law. In *Maloney v. Verizon Internet Servs., Inc.*, No. ED CV 08-1885-

20 SGL (AGRx), 2009 U.S. Dist. LEXIS 131027, *13-14 (C.D. Cal. Oct. 4, 2009), for example, the

21 court dismissed the plaintiff's complaint, holding that "Verizon's advertisements for internet

22 speed 'up to 3 Mbps' was not likely to deceive a reasonable customer. The 'up to' language

23 should have put any reasonable consumer on notice that his or her own speed may not reach 3

24 Mbps." Similarly, the statement "Save *up to* $192 a year" was found to be not misleading,

25 because it "use[d] language which suggests the savings represent the outer limits." *Pfizer, Inc. v.

26 Miles, Inc.*, 868 F. Supp. 437, 446 (D. Conn. 1994). Indeed, in *Johnson v. Mitsubishi Digital

27 Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1232 (C.D. Cal. 2008), which did not even contain the

28 prefatory "up to" language, the court held that advertisements for high-definition televisions

1  marketed as "1080p" could not reasonably be understood as promising that all input ports could

2  accept 1080p signals from devices such as Blue-ray disc players or that broadcast outlets would

3  use 1080p signals.

4         A reasonable consumer knows that not everyone is entitled to the maximum performance,

5  especially in the world of computers and hard drives; that is the import of the "up to" language.

6  Certainly no less care and judgment should be expected from a sophisticated consumer of solid

7  state drives than from the consumer who properly read the "save up to 50%" sign at a department

8  store.  Wang bases his allegations regarding the "inferior performance" of his Agility 2 drive on

9  the contention that his Agility 2 was purportedly "slower" and had "decreased" performance than

10  a previously sold version of the same drive.  *See* FAC ¶¶ 43, 58, 62.  But this is irrelevant.  OCZ

11  did not advertise that the iteration of the Agility 2 purportedly purchased by Wang would

12  perform exactly at the same speed as previous iterations of the Agility 2; rather, OCZ's

13  advertised specifications simply state the outer limits of performance of the particular product

14  being sold.  Wang's interpretation that OCZ must have meant an implied comparison of the new

15  product to the old is a fiction of his imagination, not a factual representation made by OCZ.  By

16  definition, then, OCZ's advertising is neither fraudulent nor misleading.  Moreover, although

17  Wang asserts that his drive did not have 120GB of "user accessible" storage capacity, a review

18  of the advertising materials upon which Wang relied and which he appended to the FAC clearly

19  shows that OCZ *never* advertised that it was providing him with 120GB of "user accessible"

20  storage capacity irrespective of formatting and wear leveling.  OCZ advertised a guaranteed raw

21  capacity for the drive as a whole, and Wang has not alleged (and cannot truthfully allege) that his

22  120GB Agility 2 drive did not have 120GB of raw storage capacity.

23                   (b)    OCZ's Advertised Specifications Must Be Read In The Context of
                           The Information On OCZ's Product Pages.
24

25         If there is any lingering doubt in a reasonable consumer's mind as to the import of the

26  phrase "up to" and the precise meaning of the capacity advertised, it is dispelled by the express

27  explanations on OCZ's website, which Wang admittedly read and relied upon.  FAC ¶¶ 38-39,

28  Exs. 1-2.  When assessing whether an advertisement is false or misleading, the advertisement

8

1    must be considered as a whole.  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134,

2    1139 (9th Cir. 1997) ("When evaluating whether an advertising claim is literally false, the claim

3    must always be analyzed in its full context."); *Am. Home Products Corp. v. FTC*, 695 F.2d 681,

4    687 (3d Cir. 1982) ("The tendency of the advertising to deceive must be judged by viewing it as

5    a whole, without emphasizing isolated words or phrases apart from their context."); *Summit*

6    *Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 931 (C.D. Cal. 1996) (finding

7    the phrase "perfectly reliable" was not misleading "[i]n the context of the *entire advertisement*").

8    The statements on OCZ's advertising material explicitly state that the storage capacity and rated

9    speeds may vary.  The key language bears repeating:

10       **Important SSD notes:**
         Consumers may see a discrepancy between reported capacity and actual
11       capacity; the storage industry standard is to display capacity in decimal.
         However, the operating system usually calculates capacity in binary
12       format, *causing traditional HDD and SSD to show a lower capacity in*
         *Windows.  In the case of SSDs, some of the capacity is reserved for*
13       *formatting and redundancy for wear leveling.*

14
15       *Rated speeds may vary slightly depending on the benchmark used, drivers,*
         *windows version, bios version and file size.*

16   FAC, Exs. 1-2 (emphasis added; bolding in original).  This qualifying language applies to all

17   data on OCZ's website, including the third party reviews, which may have been based upon

18   testing conducted using any number or combination of benchmarks, drivers, windows versions,

19   bios versions or file sizes, and over which OCZ has no control.  And with respect to Wang's

20   claims that OCZ's advertised specifications purportedly do not meet IDEMA standards, the OCZ

21   website specifically explains to consumers that "*[a]ctual IDEMA capacities may vary slightly.*"

22   *Id.* (emphasis added).  It is difficult to conceive how OCZ could have been any clearer or broader

23   in explaining the  limitations of its advertised specifications.

24       Indeed, the qualifications here are even more substantial than the one at issue in

25   *Freeman*, where the Ninth Circuit affirmed dismissal of the plaintiff's UCL and CLRA claims

26   brought in response to a mailer stating: "If you return the grand price winner number, we'll

27   officially announce that MICHAEL FREEMAN HAS WON $1,666,675."  68 F.3d at 287.  The

28   mailer included a small print qualifier stating that "the chances of winning [were] dependent

                                                    9

1    upon the number of entries distributed and received," and that "the sweepstakes is estimated not

2    to exceed 900 million copies." *Id.*  The court found a reader's belief that he already had won to

3    be "unreasonable in the context of the entire document." *Id.* at 290.

4           Here, as well, it was unreasonable for Wang to believe that the fastest potential speed

5    specifications would always occur—the only guarantee made by OCZ was that the Products

6    *could* reach a certain maximum speed based upon certain benchmarks.  Although the prominence

7    of the explanations on OCZ's website is irrelevant in light of Wang's concession that he read the

8    information attached to his FAC before purchasing his SSD, the explanations were expressed in

9    no uncertain terms and displayed on the first page of the Product page along with the description

10   of the Products.  FAC Exs. 1-2.  Under these circumstances, Wang's self-interested spin on the

11   specifications defies reason.

12             **2.     OCZ Had No Duty To Disclose Changes To The Component Parts Of
                        The Products.**

13

14          The gravamen of Wang's claims rests on the allegation that OCZ "failed to disclose" the

15   precise changes that it made to component parts of the Products.  FAC ¶ 6.  But Wang fails to

16   state a claim because Wang has not alleged that OCZ had a duty to disclose such information.  A

17   plaintiff's false advertising claim based on a theory of fraudulent omission or concealment must

18   show that the defendant had a legal "duty to disclose." *Baltazar v. Apple, Inc.*, No. CV-10-3231-

19   JF, 2011 U.S. Dist. LEXIS 96140, *15 (N.D. Cal. Aug. 26, 2011), ("To maintain a claim for

20   fraudulent omission, Plaintiff must allege specifically . . . an omission of fact that the defendant

21   was obligated to disclose."); *In re Sony Grand Wega Litig.*, 785 F. Supp. 2d 1077, 1092 (S.D.

22   Cal. 2010) ("A plaintiff alleging that the defendant failed to disclose material facts must,

23   however, establish that the defendant had a duty to disclose those facts."); *see Buller v. Sutter*

24   *Health*, 160 Cal. App. 4th 981, 989 (2008) (dismissing plaintiff's complaint because he "was

25   required to demonstrate that respondents are under a duty to disclose their discount policy.");

26   *Daugherty v. Am. Honda Motor Co. Inc.*, 144 Cal. App. 4th 824, 836 (2006) (dismissing

27   complaint because plaintiff did not adequately allege a duty to disclose)*; accord Blickman*

28   *Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 883 (2008).

1   Here, Wang does not allege that OCZ has a legal "duty to disclose" the change to its

2   Products' component parts. This fact alone necessitates dismissal. Apart from Wang's missing

3   allegation, a duty to disclose exists only where a defendant (1) is in a fiduciary relationship with

4   the plaintiff; (2) has exclusive knowledge of *material* facts not known to plaintiff; (3) actively

5   conceals *material* facts from the plaintiff, or (4) suppresses some material facts. *Kent v. Hewlett-*

6   *Packard Co.*, No. 09-5341 JF (PVT), 2010 U.S. Dist. LEXIS 76818, *27 (N.D. Cal. July 6,

7   2010); *Hovsepain v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 U.S. Dist. LEXIS 117562, *9

8   (N.D. Cal. Dec. 17, 2009) (same) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).

9   OCZ did not owe Wang a duty to disclose information about the technical components

10  contained in the Products. First, Wang does not plead, and the parties obviously did not have, a

11  fiduciary relationship. Second, with respect to the fourth factor, Wang fails to allege any partial

12  representations made by OCZ with regard to the technical components, either prior to, or after

13  the purported change. *See Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009)

14  ("Yonai fails to describe with specificity representations made by Apple with respect to the

15  display's component parts that would give rise to a duty to disclose, [or] how he relied upon such

16  partial disclosures."); *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JF (HRL), 2009

17  U.S. Dist. LEXIS 98532, *5 (N.D. Cal. Oct. 13, 2009) ("Tietsworth fails to describe with

18  specificity representations made by Defendants with respect to the machines' component parts

19  that would give rise to a duty to disclose"); *see also Oestreicher v. Alienware Corp.*, 544 F.

20  Supp. 2d 964, 973 (N.D. Cal. 2008). The OCZ advertising that Wang alleges that he relied upon

21  conveyed *no information* about the component parts of the Agility 2 and Vertex 2 SSDs at all.

22  *See* FAC Exs. 1-2, 6.

23  *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006), included an

24  indistinguishable claim to Wang's, alleging that DaimlerChrysler failed to disclose that it used

25  "tubular steel" in its exhaust manifolds rather than the "more durable and more expensive cast

26  iron." The Court of Appeal affirmed the dismissal of the complaint without leave to amend in

27  part because plaintiff did not allege that DaimlerChrysler made any representation giving rise to

28  a duty to disclose the specific type of material used. *Id.* at 1270, 1275-76 ("Does the use of less

11

1   expensive and less durable materials . . . to make more money violate public policy?  No.  The

2   second amended complaint did not allege DCC made any representations regarding the

3   composition of the exhaust manifolds.").   *Bardin's* analysis was relied on in *Clemens v.*

4   *DaimlerChrysler Corp.*, 530 F.3d 852, 861 (9th Cir. 2008), which also rejected a claim based on

5   a manufacturer's alleged concealment of a component part.  *See also Hoey v. Sony Elecs, Inc.*,

6   515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007) ("plaintiffs' complaint fails to identify a

7   representation by Sony contrary to the alleged concealment"); *Long v. Hewlett-Packard Co.*, No.

8   C 06-02816 JW, 2007 U.S. Dist. LEXIS 79262, *24 (N.D. Cal. July 27, 2007) (failure to disclose

9   was not actionable because "HP is not alleged to have made any representation as to the life of

10  its inverter").

11         Both the second and third factors supporting a duty to disclose require the existence of a

12  "material" fact.  "Materiality . . . is judged by the effect on a 'reasonable consumer'; that is,

13  information [whose] . . . disclosure would have caused a reasonable consumer to behave

14  differently."  *In re Sony Grand Wega Litig.*, 758 F. Supp. 2d at 1095.   In the context of

15  information that is alleged to be deceptive, material information is only that which "members of

16  the public . . . had an expectation or an assumption about."  *Daugherty*, 144 Cal. App. 4th at 838;

17  *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 996 (N.D. Cal. 2010) (same); *see Clemens*, 534

18  F. 3d at 861 (California courts have affirmed "dismissal on materiality grounds for failure to

19  allege that . . . the public had any expectation or made any assumptions" regarding the

20  component part at issue").  Wang alleges no expectations or assumptions in connection with the

21  identity of the individual components of his Agility 2 SSD or any other Product.  And although

22  Wang alleges that he would have behaved differently had he known about the Products'

23  purported "decreased" storage capacity and performance (FAC ¶ 42), he makes no specific

24  allegation that he would have behaved differently had OCZ identified that it was using a 25nm

25  manufacturing process instead of a 34nm process, using high density memory chips or modifying

26  the number of memory chips used in its SSDs.  As such, this information could not be material.

27  *See Bardin*, 136 Cal. App. 4th at 1275.

28         Additionally, a manufacturer's duty to disclose is "limited to its warranty obligations

1    absent either an affirmative misrepresentation or a safety issue." *Oestreicher v. Alienware*

2    *Corp.*, 322 Fed. App'x 489, 493 (9th Cir. Apr. 2, 2009). *See Long v. Hewlett-Packard Co.*, No.

3    07-16440, 316 Fed. App'x 585, 586 (9th Cir. March 3, 2009) (failure to disclose elevated failure

4    rate of laptops, "absent a special relationship or affirmative misrepresentations," failed to state a

5    CLRA or UCL claim); *Morgan v. Harmonix Music Sys.*, No. C08-5211 BZ, 2009 U.S. Dist.

6    LEXIS 57528, *11-12 (N.D. Cal. July 7, 2009) ("According to all relevant case law, defendants

7    are only under a duty to disclose a known defect in a consumer product when there are safety

8    concerns associated with the product's use."); *Hoey*, 515 F. Supp. 2d at 1103-05 (dismissing

9    CLRA and UCL claims based on alleged failure to disclose a soldering defect in defendant's

10   computers in the absence of any alleged misrepresentation or representations that the computers

11   have characteristics they do not have). Neither exception applies in this case.

12        First, there is no allegation that OCZ's alleged omission pertains to any product safety

13   concerns. Second, Wang's contention that OCZ did not disclose details about the purported

14   technical changes to its Agility 2 and Vertex 2 SSD models is unaccompanied by any contrary

15   representation—either that OCZ made and on which Wang relied—that would somehow require

16   OCZ to disclose the physical differences in the component parts of the SSDs after the purported

17   change. Nothing in any of OCZ's advertising materials promise that the Agility 2 and Vertex 2

18   SSD lines would use 34nm technology, a specific number of flash memory chips, or memory

19   chips of a specific density. "[T]he [] complaint did not allege a single affirmative representation

20   by [OCZ] regarding the [use of 25nm v. 34 nm technology, the number of memory chips used, or

21   the density of the chips]." *Bardin*, 136 Cal. App. 4th at 1276. Consequently, the FAC "utterly

22   fails to plead any affirmative representation on which a duty to disclose might be predicated,"

23   *Blickman Turkus, LP*, 162 Cal. App. 4th at 878, and must thus be dismissed.

24       **B.**    **Wang Fails To State A Claim For Breach of Express Warranty**.

25        "To state a viable claim under California's Song-Beverly Consumer Warranty Act, a

26   plaintiff must plead sufficiently a breach of warranty under California law." *Baltazar v. Apple,*

27   *Inc.*, No. CV-10-3231-JF, 2011 U.S. Dist. LEXIS 13187, *7 (N.D. Cal. Feb. 10, 2011) (citing

28   *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009)). To state a claim for breach of

1    express warranty under California law, a plaintiff must allege: (1) the exact terms of the

2    warranty; (2) reasonable reliance thereon; and (3) a breach of warranty that proximately caused

3    plaintiff's injury. *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986); *see*

4    *McDonnel Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997) ("First, the

5    court determines whether the seller's statement amounts to 'an affirmation of fact or promise'

6    relating to the goods sold. Second, the court determines if the affirmation or promise was 'part

7    of the basis of the bargain.' Finally, if the seller made a promise relating to the goods and that

8    promise was part of the basis of the bargain, the court must determine if the seller breached the

9    warranty").

10          Wang fails to sufficiently allege that OCZ breached any express promise. First, Wang

11    claims that his 120GB Agility 2 SSD had 115GB of "user accessible" capacity, and not the

12    120GBs purportedly advertised. FAC ¶¶ 41, 54. But Wang does not identify a single instance in

13    which OCZ represented that its SSDs have any "user accessible capacity." The OCZ

14    advertisements upon which the FAC is based simply state the "capacity" of the SSDs. OCZ

15    cannot be liable for breach of a warranty it never made. In any case, the advertising materials

16    specifically state that "[c]onsumers may see a discrepancy between reported capacity and actual

17    capacity" and that "[i]n the case of SSDs, some of the capacity is reserved for formatting and

18    redundancy for wear leveling." FAC, Exs. 1-2. As such, the only thing that OCZ warranted was

19    that the raw storage capacity of the SSD, prior to formatting and wear leveling, was at least

20    120GB. Wang does not dispute the accuracy of that limited assertion.

21          The FAC's core performance allegation is that OCZ breached its express warranty

22    because Wang's SSD failed to perform as a pervious iteration of the Products had performed—

23    namely that they were "slower than the predecessor units." FAC ¶ 62. But OCZ did not warrant

24    that the Products would perform identically to previous iterations of the Products, and Wang

25    does not identify any such representation by OCZ. And, as we have previously discussed,

26    OCZ's advertised performance specifications are in terms of the outer limits of performance, not

27    the minimum guaranteed performance or even the average performance. Wang could not

28    reasonably have relied on the terms of a warranty that was not made.

14

1    To the extent that Wang seeks to rely upon "basis of the bargain" assertions between
2    consumers and OCZ, as noted above, the precise wording of OCZ's product specification
3    representations and the explanations on OCZ's website are part of the bargain; as such, Wang
4    received the basis of the bargain in purchasing his Agility 2 SSD. *See Maloney*, 2009 U.S. Dist.
5    LEXIS 131027 at *12 ("up to" language and disclaimers in the contract were "the benefit of the
6    bargain actually made by plaintiff" despite her "unreasonable[] belie[f] that she [was] entitled to
7    what . . . Verizon disclaimed in the contract").    Accordingly, Wang's allegations are not
8    sufficient to support his claims for breach of express warranty. *See Weinstate v. Dentsply Int'l,*
9    *Inc.*, 180 Cal. App. 4th 1213, 1228 (2010) (express warranty claim must focus on seller's
10   "affirmations, promises, and descriptions of the goods").

11       C.    <u>Wang Fails To State A Claim Under The CLRA.</u>

12   Wang alleges that OCZ violated three provisions of the CLRA "by utilizing false and
13   misleading statements in the marketing, advertising, and promotion of the Products" (FAC, ¶
14   117)—California Civil Code subsections 1770(a)(5) (representing that products have
15   characteristics they do not have), (7) (representing that goods are of a particular standard, quality
16   or grade, or of a particular style or model, if they are another) and (9) (advertising goods or
17   services with intent not to sell them as advertised), all of which essentially prohibit
18   "representing" or "advertising" goods or services in a false or misleading manner. FAC ¶¶ 94,
19   117(a).  As discussed above, Wang has failed to establish that OCZ's advertising was false or
20   misleading, or that OCZ fraudulently omitted information upon which a CLRA claim can be
21   based.

22       D.    <u>Wang Fails To State A Claim Under The UCL.</u>

23   The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and
24   unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code § 17200.  Wang has not,
25   and will not, be able to establish any prong of this statute.

26           1.    **Wang Has Not Sufficiently Alleged That OCZ's Conduct Was**
27   **"Unlawful."**

28   First, "an 'unlawful' business act or practice is one that is prohibited by law." *Patent*

1    *Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1217 (S.D. Cal 2007). "By proscribing

2    'unlawful' acts or practices, 'Section 17200 'borrows' violations of other laws and treats them as

3    unlawful practices independently actionable." *In re Sony Grand Wega Litig.*, 758 F. Supp. 2d at

4    1091. Wang's unlawful conduct claim necessarily fails because he is unable to sufficiently plead

5    a predicate offense. *See Aquino v. Credit Control Servs.*, 4 F. Supp. 2d 927, 930 (N.D. Cal.

6    1998) (failed FDCPA claim could not serve as a predicate for a UCL unlawful conduct claim).

7          Wang alleges three potential bases for his unlawful conduct claim: (1) violations of the

8    CLRA, specifically Civil Code Sections 1770(a)(5), 1770(a)(7), and 1770(a)(9); (2) fraud under

9    Civil Code Section 1572; and (3) willful deception to alter position under Civil Code Sections

10   1709-1710. FAC ¶ 94. Wang's FAC generally also alleges violations of the FAL and breach of

11   express warranty under the Song-Beverly Act and California Communications Code Section

12   2313, although he does not allege that they are the predicate offenses for his UCL claim. FAC

13   ¶¶ 85-90, 103-107. None of these constitutes a viable basis for Wang's unlawful conduct claim

14   under the UCL. The CLRA, FAL, and other fraud-based statutory offenses all require a

15   "deceptive act." *See Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 U.S. Dist. LEXIS

16   8527, *14-15 (N.D. Cal. Jan. 28, 2011). But there was no deception here. As discussed above,

17   Wang did not sufficiently plead that OCZ's conduct was fraudulent or willfully deceptive, as a

18   matter of law. As such, OCZ could not have violated the alleged fraud-based predicate offenses.

19   And Wang has failed to plead an express warranty claim because he has not identified any

20   "affirmation of fact" made by OCZ that was breached. *Blennis v. Hewlett-Packard Co.*, No. 07-

21   00333 JF, 2008 U.S. Dist. LEXIS 106464, *5-6 (N.D. Cal. Mar. 25, 2008). Wang has thus failed

22   to plead a predicate offense.

23          **2.    Wang Has Not Established That OCZ's Alleged Conduct Was**
            **"Unfair."**
24

25          Wang fails to allege that OCZ's actions were unfair, as that term is used in the UCL. The

26   test for unfairness under California's UCL, as it applies to consumer suits, is currently in flux.

27   *Loranzo v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 735-36 (9th Cir. 2007); *see Berry v.*

28   *Webloyalty.com, Inc.*, No. 10-CV-1358-H (CAB), U.S. Dist. LEXIS 39581, *18 (S.D. Cal. Apr.

1    11, 2011). Historically, courts have applied a balancing test. *Morgan*, 2009 U.S. Dist. LEXIS

2    57528 at *14. "Under the test, the determination of whether a particular business practice is

3    unfair necessarily involves an examination of its impact on its alleged victim, balanced against

4    the reasons, justification and motives of the alleged wrongdoer. The court weighs the utility of

5    the defendant's conduct against the gravity of the harm to the alleged victims." *Id.* at *14-15.

6    The California Supreme Court rejected this test in an unlawful competition case, holding that

7    "any unfairness must be tethered to some legislatively declared policy." *Cal-Tech Comms., Inc.*

8    *v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 186 (1999).

9        Wang has not alleged sufficient facts to establish a violation of the "unfairness" prong of

10    the UCL under either test. First, under the balancing test, Wang has failed to state a claim

11    because, as set forth above, no reasonable consumer would have been deceived by OCZ's

12    advertising, such that there was not harm to consumers. *See Bardin*, Cal. App. 4th at 1263, 1270

13    (upholding the trial court's determination that "the failure to disclose [the use of tubular steel

14    exhaust manifolds] is not immoral, unethical, oppressive, unscrupulous or substantially injuries

15    to consumers in order to maintain a cause of action under [section] 17200. The burden on

16    automobile manufacturers to disclose alternative mediums used in component parts or other cost

17    savings measures used in the manufacture of automobiles would be huge compared to the benefit

18    received by the automobile purchasing public").

19        Second, Wang has not alleged facts sufficient to show that OCZ's conduct violates a

20    "legislatively declared policy," as required in *Cal-Tech*. "Where a claim of an unfair act or

21    practice is predicated on public policy . . . the public policy which is a predicate to the action

22    must be 'tethered' to specific constitutional, statutory or regulatory provisions." *Bardin*, 136

23    Cal. App. 4th at 1271. Because Wang did not identify any governmental statute or regulation

24    that requires a manufacturer to adopt certain policies, Wang's "unfair" prong claims must fail.[3]

25    *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1555-57 (2007) (sustaining

26    dismissal of "unfair" prong claim because plaintiff did not identify any statute or case law that

27    ───────────────
     [3]    The standards established by IDEMA, *see* FAC ¶¶ 27, 28, 29, 45, are not governmental

28    statutes or regulations; they are voluntary standards established by an international trade
     organization.

1   required defendant to provide breakdown of its fees).  Wang, in sum, cannot establish a claim

2   under the "unfair" prong of the UCL.

3          **3.    OCZ's Advertising Was Not Fraudulent, As A Matter Of Law.**

4          Though Wang did not expressly assert "fraudulent business practices or acts" in his

5   Second Cause of Action for Unfair Business Practices in violation of the UCL, we nonetheless

6   address it here.  FAC ¶¶ 92-96.  Wang's claims under the "fraudulent" prong of the UCL would

7   be fatally defective for two primary reasons.  As described above, Wang never alleged a duty on

8   OCZ's behalf to disclose the specific component parts used in its Products.  "[I]t appears settled

9   that '[a]bsent a duty to disclose, the failure to do so does not support a claim under the fraudulent

10  prong of the UCL.'"  *Buller*, 160 Cal. App. 4th at 987 (citation omitted).    Moreover, a

11  "fraudulent" practice requires a showing that "members of the public are likely to be deceived."

12  *Patent Trust*, 525 F. Supp. 2d at 1217.  As discussed above, Wang's advertising is not fraudulent

13  or misleading as a matter of law, such that members of the public are not likely to be deceived by

14  its advertising.

15         **E.    Wang Has Failed to Allege Facts Sufficient To Establish That OCZ**
               **Negligently Misrepresented The Products.**
16

17         Wang's negligent misrepresentation claims fail for the same reasons as his UCL, FAL,

18  and CLRA claims.  "In order to make out a claim for negligent misrepresentation, a plaintiff

19  must allege, inter alia, that the defendant negligently provided false information and that the

20  plaintiff reasonably relied on that false information to his detriment."  *McKinniss*, 2007 U.S.

21  Dist. LEXIS 96106 at *14; *see Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir.

22  1997) (same).  As noted earlier, OCZ did not provide Wang with false information regarding the

23  Products.    OCZ's representation that Wang's drive had 120 GB of "capacity" was not a

24  representation regarding the "user accessible capacity" of the Product.  And the advertising does

25  not say that the cited capacity represents "user accessible capacity," but rather specifically states

26  that it does not.  *See* FAC Exs. 1-2.  OCZ's advertised performance specifications are

27  specifically worded in terms of the outer limits of performance, such that they do not guarantee

28  the performance of the Products in all conditions based on all benchmarks and tests; that fact is

specifically explained to consumers on OCZ's product pages.  *Id.*  And OCZ made no representations regarding the Products' performance relative to previous iterations of the drive. As a result, there is no false information on which to base a claim of negligent misrepresentation.

Even assuming that the specifications in OCZ's advertising constitute misrepresentations, Wang cannot establish justifiable reliance because, again, he cannot establish that the reasonable consumer would rely on these representations in assuming that "capacity" means "user accessible capacity" or that the Products will *always* perform at precisely the "maximum" read/write speeds advertised with the "up to" qualification.  And Wang's claim is further undermined by a quick glance at the OCZ product pages themselves, which reveal the precise limitations of the Products with respect to both capacity and performance.  Thus, Wang has failed to allege facts sufficient to support a negligent misrepresentation claim, and his Third Cause of Action should therefore be dismissed.  *See McKinniss*, 2007 U.S. Dist. LEXIS 96106 at *13-15.

## II. WANG LACKS STANDING TO ASSERT A CLAIM BASED ON PRODUCTS HE DID NOT PURCHASE AND ADVERTISING UPON WHICH HE DID NOT RELY.

Wang's FAC improperly includes allegations regarding products that he did not purchase and advertisements upon which he did not rely.  As set out above, Wang purchased only a 120GB Agility 2 brand SSD, model number OCZSSD2-2AGTE120G.  FAC ¶ 34.  But a number of his allegations relate to the Vertex 2 line of SSDs marketed by OCZ, as well as Agility 2 models of varying sizes (i.e. 60 GB, 80GB, 90GB, 160GB, and 180GB), none of which Wang ever purchased.  *See, e.g.*, FAC ¶¶ 1 ("The is a class action on behalf of a class consisting of all persons and entities . . . who purchased within the United States certain solid state drives ('SSDs') marketed and sold by OCZ under the model names 'Vertex 2' and 'Agility 2'"), 28 ("[A]n OCZ Vertex 2 advertised with the capacity of 60GB was advertised as such to reflect the user accessible capacity"), 52 ("[T]he 60GB version of the Vertex 2 originally used sixteen 4GB flash memory modules.  After the manufacturing change, the 60 GB version utilized only eight 8GB memory modules of a higher density"), 74 ("[H]ad consumers been truthfully informed, consumers would have either opted to purchase units similar to the initial iteration of the Vertex

19

1  2 and Agility 2 as offered by it competitors, or would have demanded lower prices before

2  purchasing the Products."). But Wang does not have standing to bring claims with respect to

3  products that he did not purchase and advertisements upon which he did not rely. In evaluating

4  Wang's claims on this Motion to Dismiss, the Court thus should consider only the allegations

5  relating to the 120GB Agility 2 and not those referring to other products (i.e. the Vertex 2 line of

6  SSDs and the 60GB, 80GB, 90GB, 160GB, and 180GB Agility 2 SSDs), and only to OCZ

7  statements and advertisements regarding the Agility 2, the only advertisements or statements

8  upon which Wang could have relied, and suffered injury from in purchasing his Agility 2 drive.

9       To establish standing, the UCL and FAL require that a plaintiff establish that he or she

10  has suffered "injury in fact" *and* "has lost money or property" *as a result of* a defendant's alleged

11  conduct. Cal. Bus. & Prof. Code §§ 17204, 17535. The CLRA has a similar standing provision,

12  which requires that a plaintiff "suffer[ed] any damage as a result of . . . [the complained of]

13  practice." Cal. Civ. Code § 1780 (a); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641

14  (2009). To maintain claims under these statutes, a plaintiff must plead actual reliance on the

15  allegedly false advertising statements. *See e.g. Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d

16  939, 948-49 (S.D. Cal. 2007) ("Requiring a plaintiff merely to show that she bought a product

17  and that the product was falsely advertised would not, in the Court's opinion, show harm

18  occurred 'as a result of the false advertisement.'") ; *Laster v. T-Mobile USA, Inc.*, 407 F. Supp.

19  2d 1181, 1194 (S.D. Cal. 2005) (dismissing UCL and FAL claims for lack of standing where

20  "none of the named Plaintiffs allege that they saw, read, or in any way relied on the

21  advertisements; nor did they allege that they entered into the transaction *as a result of* those

22  advertisements."). This standing requirement "imposes an actual reliance requirement" on

23  plaintiffs purporting to represent a class of consumers and they must "plead and prove actual

24  reliance" on the challenged conduct (here, the challenged advertising) to bring a UCL claim. *In*

25  *re Tobacco II Cases*, 46 Cal. 4th 298, 326-28 (2009). Reliance is established by "showing that

26  the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's

27  injury-producing conduct." *Id.* at 326 (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1111

28  (1993)). "Harm" is also a necessary element to have standing for a breach of warranty claim.

20

1   *See, e.g., Andrade v. Pangborn Corp.*, No. C 02-3771 PVT, 2004 U.S. Dist. LEXIS 22704, *61

2   (N.D. Cal. Oct. 22, 2004).

3         **A.**     **Wang Does Not Have Standing To Pursue Claims Based On The Vertex 2**
                  **SSD Or The 60 GB, 80GB, 90 GB, 160 GB, and 180 GB Agility 2 SSDs.**

4

5         Wang lacks standing to pursue claims based on the Vertex 2 line of SSDs or the 60 GB,

6   80GB, 90 GB, 160 GB, and 180 GB Agility 2 SSDs because he does not allege that he purchased

7   these Products, let alone suffered any injury *as a result of* the purchase of such Products. Wang

8   alleges only that he purchased a 120GB Agility 2 SSD. FAC ¶ 34. All of Wang's claims and

9   allegations as to the many Products that he did not purchase should be dismissed under the

10   principle recently noted in *Johns v. Bayer Corp.*, No. 09-CV-1935 DMS (JMA), 2010 U.S. Dist.

11   LEXIS 10926 (S.D. Cal. Feb. 9, 2010). In *Johns*, plaintiff sought to bring a class action on

12   behalf of consumers of two distinct products: One a Day Men's 50+ Advantage and One a Day

13   Men's Health Formula. *Id.* at *3. The plaintiff, however, did not allege that he purchased the

14   Men's 50+ Advantage product. *Id.* at *12. The court held that plaintiff "cannot expand the

15   scope of his claims to include a product he did not purchase," and accordingly, dismissed

16   plaintiff's claims under the UCL and CLRA as to the Men's 50+ Advantage product. *Id.* at *13.

17   This principle has recently been upheld by additional courts. *See Dysthe v. Basic Research LLC,*

18   *et al.*, Case No. CV 09-8013 AG (SSx), 2011 WL 586307, *4 (C.D. Cal. June 13, 2011)

19   ("Plaintiff does not have standing to bring her CLRA, UCL, or warranty claim based on a

20   product that she never purchased . . . . Plaintiff argues that Relacore and Relacore Extra are

21   nearly identical, and that there is 'no real difference' between the two Products besides the name

22   . . . . This argument is unpersuasive."); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-

23   01044 JSW, 2011 U.S. Dist. LEXIS 6371, *7-8 (N.D. Cal. January 10, 2011) (dismissing claims

24   for lack of standing as to the Dibs products because "Plaintiff has not . . . alleged that he

25   purchased Defendant's Dibs products or otherwise suffered any injury or lost money or property

26   with respect to those products."); *Mlejnecky v. Olympus Imaging Am., Inc.*, No. 2:10-CV-02630

27   JAM-RJN, 2011 U.S. Dist. LEXIS 42333, *11 (E.D. Cal. April 19, 2011) (dismissing claims

28   relating to a camera model that has the "same underlying defects" and used the same

1    advertisements as models she purchased, but for which she did not allege any economic injury).[4]

2          The same reasoning applies here.  Wang cannot assert claims of damage for products that

3    he never purchased.  Accordingly, the Court should dismiss any allegations relating to any

4    Vertex 2 model SSD, and any model of Agility 2 SSD other than the 120GB model that Wang

5    alleges he actually purchased.

6          **B.    Wang Does Not Have Standing To Pursue Claims Based On Advertising Of
               The Vertex 2 SSD, Upon Which He Did Not Rely.**
7

8          Wang also lacks standing to bring claims concerning any advertisements that he does not

9    allege he relied upon.  Throughout the FAC, Wang alleges that OCZ conveyed its misleading

10   messages through its "marketing and advertising," and that he relied upon such advertising in

11   purchasing his SSD.  *See* FAC ¶¶ 39.  Specifically, Wang asserts that he viewed, *inter alia*, the

12   Vertex 2 advertisement on OCZ's website.  *See* FAC, Ex. 2.  But Wang never alleges that he

13   purchased the Vertex 2 SSD and thus could not have *relied* upon the Vertex 2 advertising in

14   purchasing his Agility 2 SSD.  *See Oestreicher*, 544 F. Supp. 2d at 974 n.7 ("Statements not

15   relating to the machine bought by plaintiff could not possibly have caused him to rely on its

16   contents.  Thus, [those] statements [are] not actionable.").  Wang cannot assert that he was

17   "injured" or suffered any "damage" from the purported misleading contents of the Vertex 2

18   advertising.

19   **III.   WANG'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.**

20         Wang's unjust enrichment claim should be dismissed because, first, unjust enrichment is

21   not an independent claim for relief, *see, e.g. Johns*, 2010 U.S. Dist. LEXIS 10926, at *14;

22   *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1307 (S.D. Cal. 2009) ("a cause of action for

23   unjust enrichment is not cognizable under California law"); *Jogani v. Superior Court*, 165 Cal.

24

25   [4]      *Mlejnecky* considered *Carideo v. Dell*, 706 F. Supp. 2d 1122, 1134 (W.D. Wash. 2010),
     and *Hewlett-Packard v. Superior Court*, 167 Cal. App. 4th 89, 91 (2008), and stated: "the *Johns*
26   court's reasoning is more in line with the recent standard delineated by the California Supreme
     Court in *Kwikset*, 51 Cal. 4th 310 [2011] . . . . *Kwikset* . . . held that to have standing, a plaintiff
27   must allege an economic injury and must allege that the economic injury was caused by
     Defendant's unfair business practices.  [Citation] Plaintiff does not claim that she suffered an
28   economic injury from any alleged misrepresentations regarding the Stylus 850 SW."  2011 U.S.
     Dist. LEXIS 42333 at *12-13.

1   App. 4th 901, 911 (2008); and, second, Wang's unjust enrichment claims are duplicative of his

2   other claims for relief, such as those for violations of the UCL and FAL, which allow for

3   restitution. *See* FAC ¶¶ 85-102. Where a plaintiff has requested the same relief through other

4   claims, courts dismiss unjust enrichment claims *with prejudice. See, e.g., Shein v. Canon U.S.A.*

5   *Inc.*, No. CV 08-07323 CAS (Ex), 2009 U.S. Dist. LEXIS 131519, *38 (C.D. Cal. June 22,

6   2009); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1271 (C.D. Cal. 2007).

7   **IV.      WANG LACKS STANDING TO SEEK INJUNCTIVE RELIEF.**

8          To satisfy Article III's standing requirement, a plaintiff bears the burden of showing,

9   among other things, an injury that is "concrete and particularized," and "actual or imminent, not

10  conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

11  Where a plaintiff seeks prospective injunctive relief, the concrete injury element for standing

12  requires a "likelihood of future injury." *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1039

13  (9th Cir. 1999); *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (where plaintiff seeks

14  injunctive relief, he must demonstrate that he is "realistically threatened by a *repetition* of the

15  violation"). "Past exposure to illegal conduct does not itself show a present case or controversy

16  regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."

17  *Lujan*, 504 U.S. at 564; *People v. Toomey*, 157 Cal. App. 3d 1, 20 (1984) ("Injunctive relief

18  under sections 17203 and 17535 cannot be used . . . to enjoin an event which has already

19  transpired . . . . Injunctive relief has no application to wrongs which have been completed, absent

20  a showing that past violations will probably recur.").

21         Wang lacks standing to seek injunctive relief because he cannot allege a threat of *future*

22  injury. To the extent Wang suffered injury as a result of purchasing his Agility 2 SSD, that

23  injury has already occurred and Wang is now fully aware of the alleged false advertising and of

24  the Products' performance and user accessible capacity, such that he will not be deceived by the

25  alleged continued use of the same advertising, and will be able to avoid any future purchases of

26  the Products at issue. Without a likelihood of future injury, Wang does not have standing to seek

27  injunctive relief. *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151 (N.D.

28  Cal. 2010) (plaintiffs lack standing to pursue injunctive relief if they do not establish "a

23

1   likelihood of future injury."); *Laster v. T-Mobile USA, Inc.*, No. 05-CV-1167, 2009 U.S. Dist.

2   LEXIS 116228, *10 (S.D. Cal. Dec. 14, 2009) ("Plaintiffs' knowledge [of alleged false

3   advertising] precludes them from showing likelihood of future injury . . . Therefore, prospective

4   relief will not redress Plaintiffs' alleged injuries."); *Cattie*, 504 F. Supp. 2d at 951   ("[I]t is

5   unclear how prospective relief will redress [plaintiff's] injury, since she is now fully aware of the

6   linens' thread count").   And the fact that there may be a likelihood that unnamed class members

7   suffer future injury is irrelevant.   *See Hodgers-Durgin*, 199 F.3d at 1045 ("Unless the named

8   plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking

9   that relief.   Any injury unnamed members of this proposed class may have suffered is simply

10  irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they

11  seek."); *Stearns*, 763 F. Supp. 2d at 1151 n.17 ("Because Plaintiffs lack standing to seek

12  injunctive relief, so too does their purported plaintiff class."); *Laster*, 2009 U.S. Dist. LEXIS

13  116228 at *10 (stating that "unnamed class members' standing [does not] confer jurisdiction").

14      Furthermore, without meeting the requisite future damages "threshold" required in order

15  to have standing to seek injunctive relief, Wang cannot allege a cause of action for injunctive

16  relief on behalf of the general public.   *Meyer*, 45 Cal. 4th at 645-46.   Wang cannot meet this

17  damages "threshold" because he has not alleged any actual or concrete harm that is threatened or

18  imminent due to OCZ's allegedly misleading advertising; Wang is already aware of the allegedly

19  lower "user accessible" capacity than the advertised capacity, and that the advertised

20  specifications are not relative to the previous iteration of the Products and are advertised in terms

21  of the outer limits of performance.   And Wang has not alleged even a likelihood that he would

22  once against purchase the SSDs at issue from OCZ.   As such, the possibility of future harm to

23  Wang is speculative at best, and certainly insufficient to warrant injunctive relief.   *See* Order

24  Granting-In-Part Defendant's Motion To Dismiss With Leave To Amend (Docket No. 46), 11:3-

25  18 (dismissing Wang's request for injunctive relief).

26  **V.    WANG IMPROPERLY SEEKS DISGORGEMENT.**

27      Wang seeks disgorgement under his UCL and FAL claims.   FAC ¶¶ 91, 96.   But non-

28  restitutionary disgorgement is not available under the UCL and FAL.   *Korea Supply Co. v.*

24

1    *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145-48 (2003) ("[T]he remedy of nonrestitutionary

2  disgorgement is not expressly authorized"; plaintiff may only "recover profits unfairly obtained

3  to the extent these profits *represent monies given to the defendant or benefits in which the*

4  *plaintiff has an ownership interest*") (emphasis added)("plaintiff in a representative action under

5  the UCL . . . could not obtain disgorgement [of profits] in the broader, nonrestitutionary sense,

6  into a fluid recovery fund."); *see also Marshall v. Standard Ins. Co.*, 214 F. Supp. 2d 1062,

7  1073-74 (C.D. Cal. 2000) (striking request for disgorgement of profits pursuant to UCL); *Vinci*

8  *Inv. Co. v. Mid-Century Ins. Co.*, No. CV 08-152 AHS (MLGx), 2008 U.S. Dist. LEXIS 82628,

9  *14-15 (C.D. Cal. Sept. 30, 2008) ("The unfair competition law . . . does not allow a plaintiff to

10  seek disgorgement of ill-gotten gains . . . . which, by definition, would include money in which

11  Plaintiff has no ownership interest."); *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 460

12  (2005) (nonrestitutionary disgorgement is not an available remedy in a class action under the

13  UCL); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 177 n.10 (2000)

14  (nonrestitutionary disgorgement not available in an FAL class action).  Similarly, disgorgement

15  is not an authorized remedy recognized in Civil Code section 1780, which sets forth all of the

16  available remedies under the CLRA.  Cal. Civ. Code §1780(a).

17  **CONCLUSION**

18      For the reasons set forth above, OCZ respectfully requests that this Court dismiss Wang's

19  FAC, with prejudice.

20    Dated: December 20, 2011            MAYER BROWN LLP

21                                        NEIL M. SOLTMAN

22                                        MATTHEW H. MARMOLEJO

                                      RUTH ZADIKANY

23

24                                  By:   s/ Ruth Zadikany

                                      Ruth Zadikany

25                                      Attorneys for Defendant

                                      OCZ TECHNOLOGY GROUP, INC

26

27

28

MOTION TO DISMISS FIRST AMENDED COMPLAINT; CASE NO. CV11-01415 PSG