1  Laurence M. Rosen, Esq. (CSB# 219683)
   THE ROSEN LAW FIRM, P.A.
2  355 South Grand Avenue, Suite 2450
   Los Angeles, CA  90071
3  Tel:  (213) 785-2610
   Fax: (213) 226-4684
4  Email: lrosen@rosenlegal.com

5  Additional Counsel on Signature Page

6

7              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
8                      SAN JOSE DIVISION

9  _____
                                      )
10 JAMES WANG, INDIVIDUALLY AND ON     )   Case No.: CV11-01415 PSG
   BEHALF OF ALL OTHERS SIMILARLY      )
11 SITUATED,                           )   **OPPOSITION TO DEFENDANT'S**
                                       )   **MOTION TO DISMISS**
12              Plaintiffs,            )
                                       )   Date: February 28, 2012
13         vs.                         )   Time: 10:00 a.m.
                                       )   Courtroom 5
14                                     )
                                       )   The Honorable Paul S. Grewal
15 OCZ TECHNOLOGY GROUP, INC.,         )
                                       )   Complaint filed: March 24, 2011
16              Defendant.             )
                                       )
17 _____)

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................... i

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION AND SUMMARY OF ALLEGATIONS ...................................... 1

STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3) ...................................................... 2

ARGUMENT ..................................................................................................... 2

    I.   ALL OF WANG'S CLAIMS FOR RELIEF ARE LEGALLY SUFFICIENT ........... 3

        A.   OCZ's Advertisement Materials Are Materially False and Misleading ........ 3

            1.  The Marketing Materials Were False and Misleading ......................... 3

        B.   OCZ Had a Duty to Disclose.................................................. 8

        C.   Wang Has Stated a Claim Under FAL ..................................... 10

        D.   Wang Has Stated a Claim for Breach of Express Warranty ....................... 10

        E.   Wang Has Stated a Claim Under the CLRA ............................... 11
        F.   Wang Has Stated a Claim Under the UCL ................................ 12

        G.   Wang Has Sufficiently Stated a Claim for Negligent Misrepresentation .... 15

    II.  PLAINTIFF CAN ASSERT CLAIMS AND ALLEGATIONS CONCERNING ALL VERTEX 2 AND AGILITY 2 CAPACITIES ................................................. 16

    III.  Plaintiff Can Assert a Claim for Unjust Enrichment ................................ 19

    IV.  Plaintiff Has Standing to Seek Injunctive Relief ..................................... 20

    V.  Disgorgement Is A Proper Remedy ....................................................... 24

CONCLUSION................................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
    640 F.3d 1377 (Fed. Cir. 2011)..................................................................... 21, 22

*Anderson v. Riverside Chrysler Jeep*,
    Case No. E039507, 2007 WL 3317819 (Cal.App.4th Dist., Nov. 8, 2007)................. 22

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,
    158 Cal.App.4th 226 (2007) ...................................................................... 16

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001)...................................................................... 18

*Bank of the West v. Superior Court*,
    2 Cal. 4th 1254 (1992) .............................................................................. 24

*Beauperthuy v. 24 Hour Fitness USA, Inc*,
    Case No. 06-0715-SC, 2006 WL 3422198 (N.D. Cal. Nov. 28, 2006) ...................... 17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................... 2

*Brazil v. Dell Inc.*,
    Case No. C-07-1700-RMW, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010).............. 19

*Brockery v. Moore*,
    107 Cal.App.4th 86 (2003) ......................................................................... 23

*Bruno v. Quten Research Institute, LLC*,
    Case No. SACV 11-00173-DOC-Ex, ----- F.R.D. -----, 2011 WL 5592880
    (C.D. Cal. Nov. 14, 2011) .......................................................................... 18

*Cel-Tech Communications v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999) ............................................................................. 12

*Chavez v. Blue Sky Natural Beverage Co.*,
    340 Fed.Appx. 359 (9th Cir. 2009)................................................................. 2

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010).................................................................. 19

ii

*Clayworth v. Pfizer, Inc.*
    49 Cal. 4th 758 (2010) ........................................................................ 22

*Colgan v. Leatherman Tool Group, Inc.,*
    135 Cal.App. 4th 663 (2006) ............................................................. 21

*Corbett v. Superior Court,*
    101 Cal. App. 4th 649 (2002) ............................................................ 24

*Cortez v. Purolator Air Filtration Prods. Co.,*
    23 Cal. 4th 163 (2000) ............................................................... 24, 25

*Covillo v. Specialtys Café,*
    Case No. C-11-00594-DMR, 2011 WL 6748514 (N.D. Cal. Dec. 22, 2011).............. 17

*Daugherty v. American Honda Motor Co., Inc.,*
    144 Cal. App. 4th 824 (2006) ............................................................. 8

*Davis v. Ford Motor Credit Co.,*
    179 Cal.App. 4th 581 (2009) .............................................................. 12

*Day v. AT & T Corp.,*
    63 Cal.App.4th 325 (1998) ........................................................... 10, 15

*Engalla v. Permanente Medical Group, Inc.*
    15 Cal. 4th 951 ................................................................................ 7

*F.T.C. v. Procter & Gamble Co.,*
    386 U.S. 568 (1967) ........................................................................ 13

*Flast v. Cohen,*
    392 U.S. 83 (1968) .......................................................................... 20

*Fletcher v. Security Pacific National Bank,*
    23 Cal.3d 442 (1979) ....................................................................... 24

*Friedman v. 24 Hour Fitness USA, Inc.,*
    580 F. Supp. 2d 985, 995 (C.D. Cal 2008) ........................................... 22

*Greenwood v. Compucredit Corp.,*
    Case No. CV 08-04878-CW, 2010 WL 4807095 (N.D. Cal. Nov. 19,2010) ............. 19

*Hewlett v. Squaw Valley Ski Corp.,*
    54 Cal.App. 4th 499 (1997) .............................................................. 23

iii

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999) ................................................................ 23

*In re Google AdWords Litigation*,
    Case No. CV 08-3369-EJD, 2012 WL 28068 (N.D. Cal. Jan. 5, 2012) ..................... 18

*In re Sony PS3 Other OS Litigation*,
    Case No. C 10-1811-RS, 2011 WL 6117892 (N.D. Cal. Dec. 8, 2011) ..................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    Case No. M 07–1827-SI., 2011 WL 4345435 (N.D. Cal. Sept. 15, 2011) ................ 20

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ................................................................. *passim*

*In re Wal-Mart Stores, Inc. Wage and Hour Litigation*,
    505 F.Supp.2d 609 (N.D. Cal. 2007) ....................................................... 17

*Jackson v. Carey*,
    353 F.3d 750 (9th Cir. 2003) ............................................................... 25

*Kasky v. Nike Inc.*,
    27 Cal. 4th 939 (2002) ..................................................................... 12

*Keilholtz v. Superior Fireplace Co.*,
    Case No. C 08-00836-CW, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009) ................ 20

*Keith v. Buchanan*,
    173 Cal. App. 3d 13 (1985) .............................................................. 10, 11

*Klein v. Chevron U.S.A., Inc.*,
    Case No. B219113, 2012 WL 206615 (Cal. App. 2d, Jan. 25, 2012) ............. 12, 13, 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .................................................................... 25

*Kraus v. Trinity Management Services, Inc.*,
    23 Cal.4th 116 (2000) ................................................................... 24, 25

*Kwikset Corp. v. Superior Court*,
    51 Cal.4th 310 (2011) ................................................................. 8, 15, 22

*Laster v. T-Mobile USA, Inc.*,
    Case No. CV 05-1167, 2009 WL 4842801 (S.D. Cal. Dec. 14, 2009) ...................... 22

iv

*Madrid v. Perot Sys. Corp*,
    130 Cal. App. 4th 440 (2005) ................................................................................ 25

*Marshal v. Standard Ins. Co.*,
    274 F. Supp.2d 1052 (C.D. Cal. 2000) .................................................................. 25

*Meta-Film Associates, Inc. v. MCA, Inc.*,
    586 F.Supp. 1346 (C.D. Cal. 1984)........................................................................ 23

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009) ................................................................................ 20, 21

*Multimedia Patent Trust v. Microsoft Corp.*
    525 F.Supp.2d 1200 (S.D. Cal. 2007) ................................................................... 22

*Nagel v. Twin Laboratories, Inc.*,
    109 Cal.App. 4th 39 (2003) ...................................................................... 7, 10, 15

*Nordberg v. Trilegiant Corp.*,
    445 F.Supp.2d 1082 (N.D.Cal. 2006) .................................................................. 20

*People v. Toomey*,
    157 Cal. App. 3d 1 (1984)...................................................................................... 23

*Reyes v. Wells Fargo Bank, N.A.*,
    Case No. C-10-01667-JCS, 2011 WL 30759 (N.D. Cal. Jan. 3, 2011) ...................... 20

*Sliger v. Prospect Mortg., LLC*,
    789 F.Supp.2d 1212 (E.D. Cal., 2011)................................................................... 17

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011)........................................................................ 17, 22

*Sun Microsystems, Inc. v. Microsoft Corp.*,
    87 F.Supp.2d 992 (N.D. Cal. 2000) ..................................................................... 23

*Thorpe v. Abbott Laboratories, Inc.*,
    534 F.Supp.2d 1120 (N.D. Cal. 2008) ................................................................. 17

*Ticconi v. Blue Shield of California Life & Health Ins. Co.*,
    160 Cal. App. 4th 528 (2008) ............................................................................... 12

*Velasquez v. HSBC Finance Corp.*,
    Case No. 08-4592-SC, 2009 WL 112919 (N.D. Cal. Jan. 16, 2009).......................... 17

v

*Vinci Inv. Co., Inc. v. Mid-Century Ins. Co.*,
    Case No. SACV 08152-AHS-MLGx, 2008 WL 4447102 (C.D. Cal. 2008)............... 25

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ................................................................ 17

*Von Koenig v. Snapple Beverage Corp.*,
    713 F.Supp.2d 1066 (E.D. Cal. May 10, 2010) ........................................ 23

*Vuyanich v. Republic Nat'l Bank of Dallas*,
    82 F.R.D 420 (N.D. Tex. 1979) ............................................................. 18

*Whittlestone v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010)................................................................ 17

*Wolph v. Acer America Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011) .......................................................... 19

*Zeisel v. Diamond Foods, Inc.*,
    Case No. C 10-01192-JSW, 2011 WL 2221113 (N.D. Cal. Jun. 7, 2011)
    .................................................................................................. 17, 18, 19

## STATUTES

28 U.S.C. § 1367 ...................................................................................... 21

Cal. Bus. & Prof. Code § 17200 ...................................................... 12, 21, 22, 25

Cal. Bus. & Prof. Code § 17203 ........................................................ 21, 22, 25

Cal. Bus. & Prof. Code § 17204 ................................................................ 22

Cal. Bus. & Prof. Code § 17500 .......................................................... 10, 21

Cal. Bus & Prof. Code § 17535 ................................................................ 25

Cal. Civ. Code § 1750 .............................................................................. 21

Cal. Civ. Code § 1780(a) ......................................................................... 21

Cal. Com. Code § 2313 (1)(a)................................................................... 10

Cal. Com. Code § 2313 (b) ....................................................................... 10

Cal. Com. Code § 2313(2) ........................................................................ 10

vi

**OTHER AUTHORITIES**

1992 Cal. Legis. Serv. Ch. 430 (S.B. 1586)................................................................. 21

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356,
    p. 354 (3d ed. 2004)............................................................................................... 3

**RULES**

Fed. R. Civ. Pro. 12(b)................................................................................................. 16

Fed. R. Civ. Pro. 12(b)(6) .............................................................................. 2, 16, 17

Fed. R. Civ. Pro. 23..................................................................................................... 17

Fed. R. Civ. Pro. 23(d)(4) ........................................................................................... 17

## INTRODUCTION AND SUMMARY OF ALLEGATIONS

On November 18, 2011, Plaintiff filed an amended complaint on behalf of himself and a class of purchasers of certain solid state drives ("SSDs" or the "Products")) designed, marketed and sold by Defendant OCZ.  Dkt. No. 47.  SSDs are digital storage devices for use with computers and other electronics that store data.  ¶14.  Plaintiff asserts claims under numerous California consumer protection laws as well as common law causes of action. ¶2.  The Products were represented by OCZ to have a specific storage capacity and provided specific performance characteristics.  ¶11.  The Products were marketed as being the same as products that had previously been established by OCZ to specify a particular set of drive components that would provide a certain level of performance and capacity ("Predecessor Products").  ¶¶3, 28, 33, 49. Both the Products and Predecessor Products were given the moniker "Vertex 2" and "Agility 2." ¶¶3, 28, 33, 38.    OCZ utilized the exact same advertising and Marketing Materials[1] and information in marketing the Products as it had used in marketing the Predecessor Products.  ¶¶6, 38, 43, 56, 66, 70.  Thus, OCZ marketed, and represented the Products as being identical to the Predecessor Products.   Accordingly, the product packaging for both products was identical. ¶38, 56, 66.  The SKU's and model names were identical.  *Id.* OCZ's webpages for the Product were the exact same as the Predecessor Products (and, used the exact same url destination).  ¶¶38, 49, 56,  Since both products shared the same webpage, OCZ directed potential consumers of the Products to the same excerpts from, and links to, third-party websites that contained reviews of the Predecessor Products.  ¶¶38, 49, 56. Likewise, potential consumers of the Products were presented with awards that were based upon the Predecessor Products.  Consequently, OCZ's retailers continued to use the same information in describing the Products as they had used in marketing the Predecessor Products.  ¶¶38, 50, 70. Among the identical information provided by OCZ for both products were specifications and performance figures. In light of the identical

---

[1] Marketing Materials refer to the Product's packaging and labeling, naming scheme, moniker, OCZ's webpages concerning the Products, the excerpts contained in OCZ's webpages, the information contained on etailers webpages that replicated OCZ's own product information, including Newegg.com's, and the third-party articles and awards linked to on OCZ's Product's webpages, including the Anandtech reviews.

marketing materials, the Products and Predecessor Products appeared indistinguishable.  And, there was nothing to distinguish the Products from the Predecessor Products.

Plaintiff was induced, and relied upon, these representations in purchasing one of the Products.  ¶¶11, 38, 102.   Plaintiff purchased a Product in reliance upon these representations, which he learned only after purchasing were false as to the Products.  ¶7, 11, 38.   The representations were false as Defendant materially altered the components and manufacturing process of the advertised products, ¶¶4-5, the Products purchased by Plaintiff provided Plaintiff materially inferior performance, ¶¶41, 62, and lesser storage capacity,  ¶¶41, 54-55, than what was advertised  ¶¶5, 43-64.  OCZ failed to disclose this material information, ¶¶6, 43, 56,   and continued using stale and inaccurate labels and marketing materials.   ¶¶43, 55-57; 65-68. Consequently, Plaintiff received an inferior product that was not as advertised, and has been injured thereby.  ¶¶8, 78, 106.

STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3)

1.     Does plaintiff fail to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)?

2.     Does plaintiff impermissibly seek relief for alleged injuries resulting from products that he did not purchase and advertisements upon which he did not rely?

3.     Does plaintiff have standing to seek injunctive relief?

4.     Does plaintiff improperly seek disgorgement as a remedy?

ARGUMENT

When reviewing a motion to dismiss, the Court must accept as true allegations of material fact and construe them in the light most favorable to the nonmoving party. *Chavez v. Blue Sky Natural Beverage Co.*,  340 Fed.Appx. 359, 360 (9th Cir. 2009).  The motion should be denied if the complaint states a claim to relief "that is plausible on its face" such that it allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,  (2007). The motion to dismiss "is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case."  *Id.*   Viewing all of Plaintiffs' allegations as true, the Complaint adequately pleads the causes of action against Defendant.

2

I.     **ALL OF WANG'S CLAIMS FOR RELIEF ARE LEGALLY SUFFICIENT**

    A.     **OCZ's Advertisement Materials Are  Materially False and Misleading**

        OCZ's Marketing Materials utilized for the advertising and marketing of the Products were false and misleading, and omitted material information concerning the Products. Contrary to Defendant's assertions, Plaintiff sufficiently alleges false affirmative statements by OCZ, ¶¶40, 41, 43, 54, 58, 62, 65-66,88, 109, 117, as well as a failure to disclose when it was otherwise required to do so. ¶6, 42, 43, 56, 117.

        **1.     The Marketing Materials Were  False and Misleading**

            a. Logical deduction proves the Marketing Materials Were False

        OCZ represented the Products as the same as the Predecessor Products through the use of identical Marketing Materials.  It is undisputed that the Predecessor Products are not equivalent, and in fact, inferior, than the Products.  Thus, given the identical Marketing Materials, along with the fact the products are not the same, it is logically impossible for the Marketing Materials to have been truthful as to both the Products and the Predecessor Products.   As discussed herein, not only does this result in the affirmations in the Marketing Materials being directly false, but it makes the Marketing Materials misleading because they were likely to confuse the reasonable consumer into believe that both  products were identical, when in fact they were not.  And, given that the differences were material, the Marketing Materials were false and misleading for failing to disclose what was otherwise required to make them true – that is, a disclosure containing the true specifications as well as the fact that the Products are not equivalent to the Predecessor Products.

            b. The Advertised Capacity was False and Misled the Reasonable Consumer

        Defendant attempts to rewrite Plaintiff's allegations by claiming that Plaintiff has created its own category of "user accessible capacity" in order to state a claim.  To the contrary, Plaintiff has made clear in his allegations that "capacity" and "user accessible capacity" are one in the same to a reasonable consumer and is merely descriptive of the standard  industry practice of

representing capacity of a drive prior to formatting.[2] Plaintiff clearly alleges that the "storage capacity" of the Products was identified and advertised by OCZ as "50GB, 60GB, 80GB, 90GB,100GB, 120GB, 160GB, or 180GB."  ¶3.  Plaintiff further alleges that the Products had "less storage capacity" than the Predecessor Products,  ¶5, and that OCZ's "representations concerning the capacity of the products no longer followed industry or OCZ's own standards." ¶6.  Throughout its allegations, Plaintiff clearly refers to "advertised capacity" as "capacity." ¶11, 22, 23. 25.    In any event, Defendant is well aware of the terminology and its misrepresentations.  Plaintiff's Request for Judicial Notice ("Request"), Exh. 1, p.10 (OCZ technical support employee and forum moderator, RyderOCZ,  acknowledges that the Products have "less usable space." at 02-08-2011 08:53 AM).

"User accessible storage" is simply a term used to describe the standard advertising methodology of the industry and OCZ (outside of the Products).  ¶27.  Plaintiff makes clear "OCZ marketed the capacity of its SSDs in a historically consistent manner that followed the traditional standards used in the marketing of HDDs and that was also aligned with industry standards established by [IDEMA]."  *Id.* Because of this consistent historical norm, and the IDEMA standard, the capacity advertised by OCZ (outside of the Products) and determined by IDEMA standards is essentially the amount of capacity that was user accessible.  *See* n.1 herein. In short, Plaintiff utilized a descriptive term that summarized how capacity is advertised.

The capacity advertised by OCZ for the Products was false.  Wang alleges that the capacity was advertised as 120gb.  ¶41.  The Predecessor Products provided 120gb capacity. However, the Product Wang received only had 115gb of capacity.  ¶41, 54, 74.  Because the Products and Predecessor Products utilized the same Marketing Materials, which indicated a capacity of 120gb, the capacity of the Product (115gb) is false.

Moreover, Defendant has admitted that the Products and Predecessor Products had different capacities and that the Products' capacity was inconsistent with IDEMA. ¶55; Request,

---

[2] Formatting necessarily uses some of the accessible space.  The amount of space used will depend on the OS and/or disk file system used.  Thus, industry standard, and OCZ's own historical practices, is representing capacity as the amount accessible to the consumer (which would include formatting).  This is also reflected by the industry standard which Plaintiff clearly alleges OCZ utilized (other than with the Products).

Exhs. 1, 2.

Defendant raises three arguments that the statements concerning capacity were not false.[3] First, Defendant argues that the advertised capacity was the "raw capacity."[4]  Mem. at p. 4This is false.[5]  Raw capacity is the amount of flash memory that is accessible to the controller.  While raw capacity may be the same as the advertised/IDEMA capacity in some products, that is not the case with the Products or Predecessor Products.  As Plaintiff alleges, the raw capacity is greater than the capacity (IDEMA/useable standard), because the controller in the Products reserves flash for its own use.  ¶28.  For, e.g., the Predecessor Products that were advertised as 60GB actually had 64GB raw capacity.  The Predecessor Products that were advertised as 120GB actually had 128GB raw capacity.  This fact is evident from OCZ's product sheet for the Vertex 2.[6]  *See* Request, Exh. 3.  OCZ has never advertised "capacity" as the "raw capacity" in the Vertex 2 or Agility 2.

Second, Defendant relies upon a purported modifier that "[a]ctual IDEMA capacities may vary slightly."  This notice actually demonstrates that OCZ utilizes the IDEMA/user accessible standard for advertising (except for the Products).  Otherwise, it would be a statement without a reference. Defendant's argument is without merit.  The statement merely explains the following, which is also contained in the Marketing Materials:

> Consumers may see a discrepancy between reported capacity and actual capacity; the storage industry standard is to display capacity in decimal. However, the operating system usually calculates capacity in binary format, causing traditional HDD and SSD to show a lower capacity in Windows.

In short, it's merely a statement that carries over the disclosure that there is a mathematical discrepancy that occurs due to the way capacity is displayed in hardware versus certain operating systems.  It also refers to the fact that some flash memory cells can be

---

[3] These statements are insufficient to warrant dismissal even if the statements had merit.  The statements are in small, off-color print that is presented as it is in order to not distract consumers from the primary specifications and Marketing Materials.  This raises the question of legal relevancy.

[4] Defendant's assertion cannot be considered because it was not submitted as evidence.

[5] As the developer, OCZ knows quite well that the statement is simply false.

[6] As the products utilize the same controller, the same applies for the Agility 2. ¶28.

5

defective.  Alas, it simply has nothing to do with this case where the Products have a consistently and materially smaller capacity than the Predecessor Products and that which was advertised.

The other statement, "in the case of SSDs, some of the capacity is reserved for formatting and redundancy for wear leveling" is equally irrelevant and unrelated to this case.  As noted above, "capacity is reserved for formatting" simply explains that formatting will use some of the IDEMA/capacity/standard used by OCZ except with the Products.  As set forth herein, this reality applies to all hard drives and SSDs (and essentially impacts them equally) and does not affect how the products are advertised.  To the contrary, it's yet another reason why capacity is such a material concern for consumers and provides another opportunity to demonstrate the materiality of the difference between the Products and the Predecessor Products.  For example, the Predecessor Products marketed as 120GB provided post-Windows formatted capacity of approximately 111.75GB.  The 120GB Product, on the other hand, provided post-Windows formatted capacity of approximately 107.10GB.  As is evident, the Product has materially less post-format capacity than the Predecessor Product (despite their being marketed exactly the same).[7]  Wear leveling is simply not an aspect affecting the material differences between the Product and the Predecessor Product as both have wear leveling as do most SSDs.

Wear leveling is essentially a method to extend the life of flash cells by distributing writes to all cells as equally as possible. This wear leveling was a constant among the Predecessor Products and was already accounted for in the advertised capacity.  This accounts for why the raw capacity is greater than the advertised capacity/IDEMA/capacity/capacity used by OCZ except for the Products.

Any variation within the Predecessor Products or the Products is slight, again accounting for dead cells which may slowly emerge overtime.  In short, these factors are already considered in determining the advertised capacity/IDEMA capacity.   In fact, when OCZ materially decreased  the reserve space in a product line (thereby materially increasing the capacity/IDEMA capacity), it actually made a new model, model number and entirely new advertising scheme.

___

[7] As alleged, these differences were a significant loss to the consumer given the approximate $4 per GB for the Products  storage.  ¶24.

6

As Wang alleges, OC typically changed the advertised capacity and marketing of SSDs to account for such material changes on numerous occasions. ¶¶69.

The performance of the Products was also inferior to the performance of the Predecessor Products and as presented in the Marketing Materials. ¶¶41, 58-65. Defendant's "up to" argument is meritless. First, it is irrelevant if the advertisement is an "outer limit." OCZ utilized Marketing Materials that equated the performance to the Predecessor Products by using the same specifications and reviews that are based on the Predecessor Products. As the Products are inferior in performance to the Predecessor Products, the Marketing Materials are false and likely to mislead. Second, the Products did not meet the "outer limit" specifications. Third, where there are material differences in a product performance, OCZ has historically modified the specifications to reflect this and to differentiate the product. They did not do so here despite a pattern and practice to do so. Fourth, Wang alleges that the Products are inferior to the specifications and that they are misleading to the consumer. Even if the "outer limit" performance was true, which it is not as to the Products, the specifications are still misleading. [8]

The misrepresentations were material.[9] Wang alleges that the capacity and performance were the key considerations for consumers. ¶¶22-26, 30-31. And, given the commoditization of SSD's, these specifications are the primary influencers in a purchasing decision. *Id.*, 74.

The unit purchased by Plaintiff had IDEMA and accessible capacity of 5GB less than that of the Predecessor and the representations. ¶74. Reflecting the materiality of the difference, OCZ has routinely created different model numbers to account for 5GB differences in capacity. The unit's performance was also materially slower. ¶62. Given the cost per GB of SSDs and the focus on performance, this amounted to a material loss in value, capacity and performance. *Id.*, 24. The differences were materially enough that consumers would have purchased a different

---

[8] See *Nagel v. Twin Laboratories, Inc.*, 109 Cal.App.4th 39, 134 Cal.Rptr.2d 420 (2003) (even compliance with federal standards does not necessitate that the representations are not misleading)

[9] "A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.' " *In re Tobacco II*, 46 Cal.4th at 327 (quoting *Engalla*, 15 Cal.4th at 976–77, 64 Cal.Rptr.2d 843, 938 P.2d 903).

drive or would have not been willing to pay what they did had he known of the misrepresentations.  ¶102.

The Marketing Materials were false and likely to mislead a reasonable consumer.  Wang represents the reasonable consumer and concisely alleges why the misrepresentations were material.  The methodology utilized by OCZ, except for the Products, as well as the IDEMA standard that the industry, including OCZ, follows (and generally reflects many years of storage standards that are well entrenched among the target audience), reflects expectations of the reasonable consumer.  Thus, a reasonable consumer purchasing a 120GB SSD would reasonably expect the drive to have user accessible/IDEMA capacity of 120GB.  Yet, OCZ abandoned its practice and standard for the Products.  Moreover, a reasonable consumer would be misled by a product being marketed as identical to an existing product line, that is in fact, materially inferior.[10] That a reasonable consumer would have been misled by OCZ's misrepresentations and omissions is clearly reflected by the reactions of the consumer base and industry responses. Request Exhs. 1, 4, 5

### B.    OCZ Had a Duty to Disclose

Under the CLRA, an omission is actionable if it is contrary to a representation actually made by defendant or was a fact the defendant had a duty to disclose.  *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (Cal. Ct. App. 2006).  When a company discloses certain facts about its products, it has a corresponding duty to disclose information contrary to those representations.  *Id.* A duty to disclose material facts exists if: (1) the defendant had exclusive knowledge of material facts not know to the plaintiff; (2) the defendant actively conceals a material fact from the plaintiff; or (3) the defendant makes partial representations but also suppresses some material fact.

---

[10]  "Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source. An entire body of law ... exists to protect commercial and consumer interests in accurate label representations as to source, because consumers rely on the accuracy of those representations in making their *1307 buying decisions."  *Kwikset Corp. v. Superior Court* , 51 Cal.4th 310, 328, 120 Cal.Rptr.3d 741, 755 (2011)

OCZ made affirmative representations concerning the Products, including representations that the Products were the same as the Predecessor Products through the use of the same moniker, packaging, marketing webpages, and links to reviews and awards that were based upon the Predecessor Products.  ¶¶3, 11, 28, 33, 43, 49, 50, 56, 64.   OCZ also made affirmative representations concerning the capacity, ¶¶38, 46-49, 50, 63, 64 and performance of the Products.  ¶¶38 43, 62, 63.

Plaintiff has sufficiently alleged that the omitted information was contrary to the affirmative representations made by defendant.  The omitted information included: (a) Product was materially altered through the change in type, layout and quantity of flash chips which resulted in decreased storage capacity, and inferior performance,  ¶4; (b) that the capacity, ¶¶41, 54-55, 74, 76; and (c)  performance, ¶41, 62, 76 was not as represented.  ¶¶5, 43-65, 76-78, 102, 106; or (c) OCZ had materially changed the manner in which it represents capacity.[11]  As set forth herein, this information was material – the information is "the key characteristics considered by the consumer when deciding which SSD to purchase and how much they are willing to pay for such an SSD."  ¶16, 22.  This omitted information necessarily ran counter to the affirmative representations made by OCZ. The Defendant had exclusive knowledge of these material facts that could not have been known to Plaintiff.  ¶1, n1, 101, 70, 72.  Additionally, OCZ actively concealed the material facts that were contrary to its representations.  It did so through the utilization of the same model number, advertising, packaging, labeling and website of the Predecessor Products.  ¶¶6, 43, 56, 66, 70, 71, 76.

OCZ also marketed the Products  using the moniker of the Predecessor Products, "Vertex 2" and "Agility 2 ," ¶28, indicating that the Products utilized a common controller, but suppressed the material facts above – that the Products did not perform as the Predecessor Products that were previously sold and marketed under those labels -- effectively a bait and

---

[11] By logical deduction, either (b) or (c) is true.  The simple, undeniable, fact is that the capacity of the Product is significantly less that of the Predecessor Products, despite their being advertised using the exact same representations.  Thus, OCZ must either admit that (a) the representations concerning capacity were false; or (b) it utilized a different methodology than that used in the predecessor product (or used in its other SSDs).  In either case, the failure to disclose is actionable.

9

switch.  Lastly, and contrary to OCZ's contention, Wang does allege OCZ made affirmative assertions concerning the amount of flash chips and layout used in the Products.  Plaintiff alleges that OCZ affirmatively misrepresented that the Products were the subject of the reviews that OCZ directly excerpted from and linked to.  *See* FAC Exh. 4, at p.4; FAC Exh. 5 at p.2; ¶38(h), (i) (Predecessor Products physical layout and number of flash chips), ¶60-62.

## C.     Wang Has Stated a Claim Under FAL

A claim for false advertising requires proof that the defendant, in connection with the sale of a product or service, made an untrue or misleading statement regarding the product or service. Bus. & Prof. Code, § 17500.  Under FAL, a statement can be true, yet still be misleading.  *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332-333 (1998).  Defendant's sole argument to dismiss this claim is the truth of the Marketing Materials.  As set forth above, they are false and likely to mislead.  Wang has sufficiently stated a claim under FAL.  *See, e.g., Nagel v. Twin Laboratories, Inc.,* 109 Cal.App.4th 39, 51 (2003).

## .D.     Wang Has Stated a Claim for Breach of Express Warranty

To establish a claim for breach of express warranty, a plaintiff must allege that (1) the seller's statements constitute an affirmation of fact or promise, or a description of goods; (2) the statement was part of the basis of the bargain; (3) the warranty was breached.  *In re Sony PS3 Other OS Litigation*, 2011 WL 6117892, at *4 (N.D. Cal. Dec. 8, 2011).[12]  Such statements of warranty may be found in advertisements, brochures, and owner manuals. *Keith v. Buchana*, 173 Cal. App. 3d 13, 20 (1985).  No particular terms such as "warrant" or "guarantee" are required to create an express warranty. Cal. Com. Code § 2313(2).

Plaintiff alleges that OCZ marketed the Products using Marketing Materials that enumerated a specific capacity, as well as performance specifications.  These representations were affirmations of fact and descriptions of the good.  OCZ affirmatively represented the

---

[12] California Uniform Commercial Code ("UCC") § 2313, subdivision (1)(a) and (b) provide that express warranties are created by: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise; (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

capacity on the Products packaging, ¶¶38, 46, 47, 48 and on various webpages, ¶¶11, 38, 49, 63, 64, 50.     OCZ affirmatively represented the performance specifications on the Products packaging, ¶¶38 43, 62, 63, including through the use of an identifiable series name, ¶¶3, 28, 33 and on various webpages. ¶¶11, 38, 43, 49, 50, 56, 64. The Complaint provides over 2 pages of examples of Defendant's description of the good. ¶¶25, 27, 28, 33 38, 56. OCZ also provided a written warranty with the Products that provided, in relevant part, that the "products are warranted . . . to conform to the published specifications." Request Exh. 6. These statements are affirmations of fact or promise. Defendant does not argue to the contrary.

As affirmations of fact by the seller become part of the basis of the bargain unless good reason is shown to the contrary, *Keith*, 173 Cal. App. 3d at 21, the representations cited by Wang were part of the basis of the bargain.

OCZ breached its express warranty.[13]  The Product does not conform to the affirmations of OCZ because the Product purchased by Plaintiff provided Plaintiff materially inferior performance, ¶62, 76, and lesser storage capacity,  ¶¶41, 54-55, 74, 76, than what was represented in the affirmations.  ¶¶5, 41, 43-65, 76-78, 102, 106.

### E.  Wang Has Stated a Claim Under the CLRA

Defendant only challenges Wang's CLRA claim on the grounds that the Marketing Materials are not false or misleading, and OCZ did not fraudulently omit information upon which a CLRA claim can be based.  In Section I and F, Wang establishes he has sufficiently pled the information was false and misleading, and that OCZ fraudulently omitted information upon which a CLRA claim be based.  Accordingly, Wang has stated a claim for CLRA because OCZ

---

[13] As set forth herein, Defendant's assertions that the warranty was of the raw capacity, with a possible discrepancy, is demonstrably false.  Moreover, the "disclaimers" simply do not provide for the discrepancy, or notice, that OCZ argues.  Likewise, Defendant's argument that OCZ "did not breach its express warranty because Wang's SSD failed to perform as a previous iteration of the Products" fails to appreciate the law and the affirmations made.  As Wang alleges, the statements made in the review excerpts posted by OCZ, as well as the reviews linked, are clearly affirmations concerning the predecessor product.  As such, because Wang has sufficiently alleged that the Product did not meet the performance and specifications of the predecessor product, he has stated a claim for breach of express warranty.  In addition, Plaintiff has sufficiently alleged that the Product did not perform to the "outer limits" that OCZ acknowledges was warranted.  ¶62.

11

utilized false and misleading stated in the marketing, advertising, and promotion of the products because OCZ represented that the Products had characteristics they did not have, represented that the goods were of a particular standard, quality or grade, or of a particular style or model, and advertised goods with the intent not to sell them as advertised.

**F.    Wang Has Stated a Claim Under the UCL**

To state a claim under UCL, Plaintiff must allege facts that, if proven, establish that OCZ engaged in unlawful, unfair, or fraudulent business acts or practices.  Cal. Bus. & Prof. Code § 17200.   Plaintiff need only allege facts sufficient under any one of these three types of conduct to state a UCL claim.  Plaintiff states a claim under all three prongs.

Plaintiffs have stated a claim for unlawful business practices.  A violation of virtually any law or regulation can serve as a predicate wrong constituting an unlawful business practice. *Kasky v. Nike* Inc., 27 Cal. 4th 939, 950 (2002); *Cel-Tech Communications v. Los Angeles Cellular Telephone Co*, 20 Cal. 4th 163, 180 (1999).  Thus, a violation of a borrowed law results in a *per se* violation of the UCL.  As set forth herein, Wang has sufficiently stated a claim for violation of the CLRA and FAL.  Accordingly, Plaintiff has stated a claim for unlawful business practices.

Plaintiffs state a claim for "unfair" business practices.  "The 'unfair' standard ... is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud."  *Ticconi v. Blue Shield of California*, 160 Cal. App. 4th 528, 539 (2008); *see also Davis v. Ford Motor Credit Co*., 179 Cal.App.4th 581, 596-97 (2009), reh'g denied (Dec. 8, 2009), review denied (Mar. 10, 2010)–.  "The test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Ticconi*, 160 Cal. App. 4th at 539. An "unfair" business practice occurs "when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id*. To state an unfair practice, Plaintiff must allege (1) a consumer injury that is "substantial"; (2) that the injury is not "outweighed by any countervailing benefits to consumers or competition"; and (3) that the injury was one that "consumers themselves could not

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

reasonably have avoided."   *Id.; Klein v. Chevron U.S.A., Inc.,* 2012 WL 206615, at *21 (Cal.App. 2 Dist. 2012). A business practice can be unfair even if there is no law prohibiting it.

Plaintiff sufficiently alleges that OCZ's unfair practices causes substantial harm to consumers, ¶¶78, 106,  by (1) depriving them of the benefit of the bargain as a result of selling Plaintiff an SSD that had materially lesser capacity,  ¶¶41, 54-55, 74, 76, and inferior performance,  ¶41, 62, 76,  than that which was advertised by OCZ, ¶¶5, 43-68, 76-78, 102, 106; (2) advertising and marketing  the Product as though it was equivalent to the predecessor product, ¶¶3, 11, 28, 33, 38, 43, 49, 50, 56, 64, and failing to disclose that the Product was materially altered and inferior, ¶¶4-5, 54-55, 62, 78, 106; (3) making it impossible for consumers to truly compare prices between like products, ¶ ¶19, 21, 22, 25, 27; and  (4) causing Plaintiff to spend more than he otherwise would have had to and providing the Product, ¶¶11, 42, 111, with diminished utilization and resell value. ¶¶11, 22, 24-26

That injury to Plaintiff is not "outweighed by any countervailing benefits to consumers or competition" can be presumed at the pleading stage.  *Klein v. Chevron U.S.A., Inc.,*2012 WL 206615,  at *22  (Cal.App. 2 Dist. 2012) (court cannot presume at the pleading stage that the alleged harms are not substantial or otherwise outweighed by benefits, and the issue must "be determined on a developed factual basis.").   Notwithstanding, there simply is no benefit to consumers or the competition created by a company that misrepresents its products to be of higher quality and value than what they are.  The misrepresentations and omissions complained of  have the same impact as the introduction of forgeries or infringing items into the marketplace. It further harms the collective efforts of an  industry that otherwise operates based upon standards, as is the case here by creating a "cheater" that claims to use the standards but actually does not.  *See, e.g.*, *F.T.C. v. Procter & Gamble Co.*, 386 U.S. 568, 572 (1967) (noting central role of advertising in generating market share, where the competing products are functionally identical).   As set forth herein, the reliability of labels and specifications is of utmost importance in the fair and efficient execution of the transaction of goods and services.

Plaintiff could not have avoided the injury.  Wang alleges that OCZ had exclusive knowledge of the alterations, deficiencies and misstatements,   ¶¶1, n1, 101, 70, 72, and

concealed this information from consumers, ¶¶6, 28, 43, 56, 66, 70, 71, 76, who had no way of ~~of~~ discovery the falsities until after purchase was made and the product used. ¶72.  Plaintiff has sufficiently pled that OCZ engaged in an unfair business practice.

Wang has also stated a claim under the "fraudulent" prong of the UCL.    A business practice is "fraudulent" within the meaning of the UCL if it is:

> likely to deceive the public. It may be based on representations to the public which are untrue, and ' "also those which may be accurate on some level, but will nonetheless tend to mislead or deceive.... A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under" 'the UCL. The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer.

*Klein,* 2012 WL 206615, at *25.

Determination of whether a statement is deceptive or fraudulent is a question of fact "requiring consideration and weighing of evidence from both sides before it can be resolved." *Id.*  Unless the Court can find that as a matter of law that members of the public were not likely to be deceived or misled, the pleading should be found sufficient.  *Id.*

As set forth above in Sections I, Plaintiff has adequately alleged OCZ made materially false statements in its Marketing Materials, and even if the Defendant's statements were "perfectly true," (they were not) the statements are still actionable because the statements were "couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information"  *Klein,* 2012 WL 206615, at *25 (Cal.App. 2 Dist. 2012), including that the Products were the same as the Predecessor Products.

*Klein* is particularly instructive in this case.  In *Klein*, plaintiffs alleged that by selling motor fuel in non-temperature adjusted "gallon" units without disclosing the effects of thermal expansion, the defendant was deceiving consumers into believing they are receiving a standard quantity of motor fuel, when in fact they were receiving less.  Plaintiff's further alleged that this also mislead consumers as to the true price of motor fuel which varies depending on the temperature at which the fuel is purchase.  The court found that such practice was sufficient to

satisfy the fraud prong because "the public expected and assumed . . . that they would receive a standardized amount . . . and that the stated price reflected the actual cost of that fuel." *Id.* at 25.

In *Nagel v. Twin Laboratories, Inc.*, 109 Cal.App.4th 39 (2003), plaintiff alleged that the defendant manufacturer of dietary supplements made misrepresentations on the labels of certain products, as well as defendant's website, that the ephedrine ingredient in the dietary supplement was "standardized for 6% ephedrine." Plaintiff contended that the ephedrine in the product was not "standardized" in the popularly understood use of the word. Tests also indicated the amount of ephedrine differed dramatically between lots. The court rejected defendant's argument that it complied with federal government's determination regarding inaccuracy on the label of a dietary supplement, reasoning that even federal standards does "not mean a reasonable consumer would not be misled by it, nor does it mean that under California law the advertising cannot be deemed false." *Id.* at 53; *Day v. AT & T Corp.*, 63 Cal.App.4th 325, 331, 74 Cal. Rptr.2d 55 (1998). "[T]he appropriate consideration is not what the defendant's own policies allow, but whether the [information] would mislead a reasonable consumer." *Id.* The court found that plaintiff was likely to prevail on the merits of its CLRA, UCL and FAL claims.

In *Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 246 P.3d 877 (2011), the Court held that, where defendant had labeled products as "Made in the U.S.A.," but which essentially were not, the plaintiff had sufficiently pled a claim because plaintiff selected the particular item because of the label and would not have purchased the item otherwise. "They bargained for locksets that were made in the United States; they got ones that were not." *Id.* at 892. Plaintiff bargained for an SSD that contained the same capacity and performance that not only met the specifications advertised, but was also materially identical to the Agility 2 products that were the subject of the numerous reviews that OCZ highlighted by excerpting and linking to, as well as the rewards contained on OCZ's website. Again, the Products simply are not equivalents to the Predecessor Products.

15

### G..    **Wang Has Sufficiently Stated a Claim for Negligent Misrepresentation**

As Wang has sufficiently alleged a statement of claim for fraud, it "necessarily means [Wang] states a claim for negligent representation." *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 243 (2007).[14]

## II.    **PLAINTIFF CAN ASSERT CLAIMS AND ALLEGATIONS CONCERNING ALL VERTEX 2 AND AGILTY 2 CAPACITIES**

In a puzzling move, Defendant attempts to rehash the previously denied motion to strike allegations concerning non-120GB Agility 2 drives. Defendant requests that the "Court should dismiss any allegations relating to" any drives other than 120GGB Agility 2 drive. Mem. at p. 20 ("the Court thus should consider only the allegations relating to the 120GB Agility 2 and not those referring to other products."), 21: 8-9, 22:3-5. The Court should deny the request because Rule 12(b)(6) is not a device to dismiss "allegations" and the Court has already denied the request to strike such allegations. Order at p. 23.

The Court previously held :

> Although Wang's inability to allege injury based on products that he did not purchase may ultimately subject those claims to proper dismissal pursuant to a Rule 12(b) motion or motion for summary judgment, inclusion of those products at the pleading stage and prior to a motion for class certification is not improper.

Order at p.23. The Court made clear in its Order that even if those claims may ultimately be subject Rule 12(b), which now forms the basis of Defendant's motion, " inclusion of those products at the pleading stage and prior to a motion for class certification is not improper." *Id.* Defendant has provided no legitimate basis or authority for the Court to reconsider it prior holding. Defendant's attempt to end-run around the Court's Order must be denied.

The rationale underlying the Court's Order find significant support in the case law. [15] First, dismissal would create unnecessary conflicts and redundancies within the Federal Rules of

---

[14] The elements of negligent misrepresentation are the same as fraud except that in negligent misrepresentation a positive assertion is required (which Wang has clearly alleged), and knowledge of falsity by the speaker need not be proven or alleged. *Id.*

[15] As this issue has largely been previously indicated, the case law and argument presented by Plaintiff in opposition Defendant's first motion to dismiss and strike remains compelling. *See Pl. Opp. to Mot. to Dismiss or Strike*, at pp. 22-24. Plaintiff reasserts that the case law and analysis cited therein compels the same outcome – denial of Defendant's motion.

Civil Procedure. *Whittlestone v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010) (denying motion to strike where the consequence would result in unnecessary redundancies); *Beauperthuy v. 24 Hour Fitness USA, Inc,* 2006 WL 3422198, at *3 (N.D. Cal. Nov. 28, 2006) (class certification should be considered before Rule 23(d)(4) motion to amend pleadings) . Second, it would deprive Plaintiff of his established right to assert class claims under Rule 23 which properly governs the issue. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("the better and more advisable practice" for determining class certification is "to afford the litigants an opportunity to present evidence as to whether a class action was maintainable" which includes discovery); *Thorpe v. Abbott Laboratories, Inc.*, 534 F.Supp.2d 1120, 1125 (N.D. Cal.. 2008) (denying motion to strike because a motion for class certification is more appropriate).

Accordingly, the weight of authority among the Courts is to deny motions to dismiss claims and allegations that concern class allegations and certification. *Covillo v. Specialtys Café*, 2011 WL 6748514, at *7 (N.D. Cal. Dec. 22, 2011) (denying motion to dismiss class claims); *Sliger v. Prospect Mortg., LLC*, 789 F.Supp.2d 1212, 1218 (E.D. Cal., 2011) (denying 12(b)(6) motion to dismiss class allegations because such a procedure "threatens a determination [of class certification] on its merits."); *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F.Supp.2d 609, 615 (N.D. Cal. 2007) (denying motion to dismiss or strike even "suspicious" class definitions as premature and reserving ruling via class certification briefing); *Velasquez v. HSBC Finance Corp.*, No. 08-4592 SC, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009).

Ultimately, Defendant's analysis is simply flawed and runs contrary to Ninth Circuit law.[16] The exact Article III standing argument that Defendant advances, "that the named plaintiffs only had standing to raise claims that he or she would be able to assert individually," was recently rejected by a court in this District in the class action context. *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at *4 (N.D. Cal. June 7, 2011). The court relied upon *In re*

---

[16] "In a class action, standing is satisfied if at least one named plaintiff meets the requirements.... Thus, we consider only whether at least one named plaintiff satisfies the standing requirements...." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011)

*Tobacco Cases II* and *Vuyanich v. Republic Nat'l Bank of Dallas*, 82 F.R.D. 420

(N.D.Tex.1979) which provides the correct analysis in the class action contex:

> In a class action ... the trial court initially must address whether the named plaintiffs have standing under Article III to assert their individual claims. If that initial test is met, the court must then scrutinize the putative class and its representatives to determine whether the relationship between them is such that under the requirements of Rule 23 the named plaintiffs may represent the class.

*Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at *5 (quoting *Vuyanich v. Republic Nat'l Bank of Dallas*, 82 F.R.D 420 (N.D. Tex. 1979).   Because the plaintiff in *Zeisel* had demonstrated Article III standing as to his claims, he could be considered pursuant to Rule 23 to represent a class.  And, contrary to Defendant's proposition, under the Rule 23 analysis, plaintiff need not sustain the same injuries as those he represents.  *Zeisel , id.* at *7. (focus is on defendants' conduct, not the injury caused to plaintiff) (quotations omitted).  "In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff.  Thus, where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability," the representative can has standing to assert claims of those he represents.  *Id.* at *8 (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  Plaintiff has established Article Iii standing.  Order at p. 10, 23 (finding standing for purposes of damages claims and denying OCZ's motion to dismiss for lack of Article III standing).  Consequently, the issue left for the Court is whether, under Rule 23, he can represent claims of the class.  *In re Google AdWords Litigation* , 2012 WL 28068, at *10 (N.D.Cal.,2012)  ("where one class representative in a UCL or FAL class action has already established Article III standing, the court need not analyze the standing of unnamed class members.") (following *Bruno v. Quten Research Institute, LLC,* No. SACV 11-00173 DOC(Ex), 2011 WL 5592880, at *5 (C.D. Cal. Nov. 14, 2011).[17] That question has not been addressed by Defendant and the Court has indicated such a question will be left to class certification.  Order at p. 23.

---

[17] *Bruno* also ruled that "where the class representative has established standing and defendants argue that class certification is inappropriate because unnamed class members' claims would require individualized analysis of injury or differ too greatly from the plaintiff's, a court should analyze these arguments through Rule 23 and not by examining the Article III standing of the class representative or unnamed class members." *Id.* at *4-5.

18

Plaintiff is able to sustain all claims concerning the Products as defined in the Class definition.  As alleged, and previously argued, the false advertising followed a common scheme, reflecting substantially the same misrepresentations, and arise from the same facts and legal theory.  Recent cases in this District support that this is sufficient to warrant class certification of the claims alleged in the.  *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011) (certifying class of all persons who purchased Shelled Walnut Products in 6oz, 10oz, 16oz and/or 3 pound bags); *Wolph v. Acer America Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) (class conditionally certified of all purchasers of an Acer notebook computer that had less than 1gb of ram and had one of 3 variations of Windows Vista installed and there was a single representative couple who purchased a single notebook; notably, such a class would include a very large variety of models with a very large number of variations between those models including screen size, hard disk capacity, speed, ram, keyboards, touchpads, CPU, and system chipsets); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) (granting class consisting of all buyers of all beverage types containing a false statement concerning origination of product despite the fact that false statements were "worded in several variations" and the plaintiff and proposed class representative "did not buy each product in the Blue Sky beverage line."); *Brazil v. Dell Inc.,* 2010 WL 5387831 (N.D. Cal.  Dec. 21, 2010) (certification of class of persons who bought any Dell branded product from Dell website that was advertised with a former sales prices with a two class representatives; Dell 100's of Dell branded products including desktops, notebooks, servers, monitors, and peripherals and thus with each would be a distinct and different false price); ells thousands of products); *Greenwood v. Compucredit Corp.*,  2010 WL 4807095, at *5 (N.D.Cal.,2010)  (maintaining class of credit card recipients despite fact that "though the solicitation materials may contain subtle differences, they are alleged to contain the same, or almost the same, combination of deceptive features").  Defendant's analysis is legally and factually flawed.[18]  .  Defendant's request should be denied.

---

[18] Among others, *In re Tobacco II Cases* was considered in the decision issued by this Court in *Chavez* and *Zeisel*, and found to favorably support certification in that analogous case.  *Chavez,* 268 F.R.D. at 376.

**III.    Plaintiff Can Assert a Claim for Unjust Enrichment**

It is unsettled amongst California courts whether unjust enrichment is an independent cause of action. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345435, at *3 (N.D.Cal. 2011) (providing extensive analysis of the split, with an emphasis on opinions issued from this District, concerning unjust enrichment and sustaining plaintiff's claim for unjust enrichment). But, determination of such is unnecessary in sustaining Plaintiffs claim seeking restitution through an unjust enrichment claim.    As courts in this district have reasoned, "[w]hether Plaintiffs' unjust enrichment cause of action is construed as a claim for restitution as in the *McBride* case or is considered to be an independent cause of action as in the *Lectrodryer* and *First Nationwide* cases, the allegations are sufficient to state a claim under California law." *Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076, at *5 (N.D.Cal., March 30, 2009).

As Plaintiff has sufficiently "invoked a valid theory of recovery" the unjust enrichment claim should not be dismissed. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345435, at *3-4 (denying motion to dismiss unjust enrichment claim noting that where a valid theory of recovery has been invoked, "courts have generally allowed claims for 'unjust enrichment' to proceed, regardless of the precise label assigned to the cause of action."); *Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1100 (N.D.Cal. 2006) (permitting claim to proceed because "[a]lthough their Eighth cause of action is entitled 'unjust enrichment' it is clear that plaintiffs are seeking restitution"); *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, at *17 n. 7 (N.D.Cal. Jan.3, 2011) ("The Court notes that even if there is disagreement as to whether there is a claim for 'restitution,' the disagreement turns in large part on the label that is attached to the claim on which restitution is sought; while some courts refer to claims for 'restitution,' others label these claims according to the underlying theory attached to the claim.").

**IV.    Plaintiff Has Standing to Seek Injunctive Relief**

In its previous order, the Court observed that if Plaintiff sufficiently stated a CLRA claim, the analysis in *Meyer's, Meyer*, 45 Cal 4th 634, 645-46 (2009) may support injunctive relief under the CLRA. Order at p. 11, n.54.    The limited jurisdiction of all federal courts requires, preliminarily, that there be a "case" or "controversy" in existence. *Flast v. Cohen*, 392

20

U.S. 83 (1968). Because Plaintiff's Amended Complaint sufficiently pleads numerous claims that independently give rise to Article III standing, the Court has original jurisdiction. The Court can consequently exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The remaining issue is whether Plaintiff has appropriate standing under California law to seek injunctive relief via Plaintiff's various causes of action. *See*, *e.g.*, *Allergan, Inc. v. Athena Cosmetics, Inc*., 640 F.3d 1377, 1378 (Fed. Cir. 2011) (analyzing standing to assert injunctive relief pursuant to UCL using California state law where plaintiff maintained Article III standing through its allegations of patent infringement). If standing is present, a state or federal court is required to consider imposing injunctive relief upon Defendant for violations of UCL. *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal.Rptr.3d 36, (2006) (where plaintiff asserted UCL, FAL and CLRA claims, injunctive relief is to be determined at the time of the order of the judgment).

Plaintiff seeks injunctive relief under California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, the CLRA (Cal. Civ. Code § 1750 *et seq*.) and the UCL (Cal. Bus. & Prof. Code § 17200 *et seq*.). ¶¶91, 96, 118. Under the CLRA and UCL, Plaintiff can obtain injunctive relief without demonstrating that the objectionable conduct is likely to reoccur. The UCL explicitly provides that [a]ny person who . . . engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code §17203. This language, the result of a 1992 amendment of Section 17203,[19] confirms that injunctive relief can be based on past acts regardless of the likelihood of reoccurrence. The CLRA also provides for injunctive relief regardless of the likelihood of reoccurrence, Cal. Civ. Code § 1780(a).[20]

The Supreme Court of California has repeatedly held that a consumer can obtain injunctive relief pursuant to UCL and the CLRA without reference to reoccurrence. *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634 (2009) ("[t]he CLRA, in its injunctive relief provisions, allows plaintiffs to enjoin a corporation's deceptive or unlawful business practices." The only

---

[19] The amendment replaced "[a]ny person performing or proposing to perform an act of unfair competition within this state" with the present language. 1992 Cal. Legis. Serv. Ch. 430 (S.B. 1586).

[20] Section 1780(a) provides that "[a]ny consumer who suffers any damage" as a result of an act deemed unlawful by Section 1770 may bring an action to obtain "[a]n order enjoining the methods, acts, or practices.

requirement is that the plaintiff seeking injunctive relief must demonstrate standing in the form of having been damaged. *Id.* (rejecting argument that "requiring even a low damage threshold" would allow corporations to evade the conduct regulated by the consumer laws); *Friedman v. 24 Hour Fitness USA, Inc*., 580 F. Supp. 2d 985, 995 (C.D. Cal 2008) (injunctive relief appropriate where there was no likelihood of future harm to named plaintiffs as they were aware of the deceptive practices and had no intention of doing business with defendant in the future, since the CLRA is designed "not [to] resolve a private dispute but to remedy a public wrong").

This simple standing requirement also applies to injunctions sought pursuant to UCL as made clear in two recent California Supreme Court cases. *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011) (standing pursuant to Section 17204 to assert a UCL claim will "permit a plaintiff to seek an injunction against the offending business practice even in the absence of any basis for restitution."); *Clayworth v. Pfizer, Inc.* 49 Cal.4th 758, 789-790 (2010) ("[i]f a party has standing under section 17204 . . . it may seek injunctive relief under section 17203."); *Allergan, Inc. v. Athena Cosmetics, Inc*., 640 F.3d 1377, 1378 (Fed. Cir. 2011) ("The California Supreme Court makes clear in . . . [*Kwikset Corp*. and *Clayworth*] that UCL § 17204 . . . requires that a party need only allege an injury in fact that was caused by defendant's unfair competition."); *Anderson v. Riverside Chrysler Jeep*, 2007 WL 3317819, at *2 (Cal.App. 4th Dist. Nov. 8, 2007) (reversing grant of demurrer where plaintiff sought injunctive relief pursuant to UCL where plaintiff incurred damages in connection with her efforts to purchase a vehicle that was misrepresented to her as not for sale when in fact it was); *Multimedia Patent Trust v. Microsoft Corp*., 525 F.Supp.2d 1200, 1217 (S.D. Cal. 2007) (court did not consider a requirement of pleading future or continuing harm in denying motion to dismiss and merely reviewed sufficiency of pleading to assert a claim under 17200 generally). At bottom, whether Plaintiff has standing to assert its UCL claim is solely a question of California state law, and California's highest court has now resolved that question. Plaintiff has standing.

The cases cited by Defendant are inapposite. In most instances, only claims for injunctive/equitable relief remained as the basis for Article III standing because all the other federal or state law claims for damages were dismissed, *see Stearns*, *Cattie*, *Laster*, or the

22

equitable relief sought was pursuant to Federal law resulting in an analysis under Federal law. *See Lujan*, *Hodgers-Durgin*, *Gest*. In other instances, the state authority cited has been overruled, as discussed above. *People v. Toomey,* 157 Cal. App. 3d 1 (1984) (overruled).

Even if Plaintiff must demonstrate a likelihood of future harm, Plaintiff has done so. As OCZ has a large presence in the SSD market, Plaintiff may purchase a future product from OCZ. In fact, prior to purchase his Agility 2 drive, he had previously purchased an OCZ 60gb Agility 1 (prior generation) drive. ¶11. OCZ incentives to continue its unlawful practices are greater now that SSDs have become the central focus of Defendant's business. ¶12. *See, e.g., Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F.Supp.2d 992, 1005 (N.D. Cal. 2000) (misrepresentations as a strategy warranted granting injunctive relief). This risk is heightened because consumers have no way of discovering the misrepresentations until a purchase has been used. ¶102. OCZ has also failed to present any evidence that it has ceased the misconduct or intends to do so. *Id.* at 1004-1005 (injunction granted despite representations that conduct would cease); *Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066, 1080 (E.D. Cal. May 10, 2010) (permitting request for injunctive relief despite representation that misconduct seized).

Plaintiff's allegations of the likelihood of future harm are more than sufficient. *See Meta-Film Associates, Inc. v. MCA, Inc.*, 586 F.Supp. 1346, 1361 (C.D. Cal. 1984) (injunctive permissible even though there was only a single instance of challenged act); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1041-42 (9th Cir. 1999) (Article III standing found where there was "no tenable argument that plaintiffs should avoid driving [in the area] in order to avoid another stop by the Border Police.")[21]; *Brockery v. Moore*, 107 Cal.App.4th 86, 131 Cal.Rptr.2d 746 (2003) (defendant enjoined from false advertising as UCL "allows trial courts great latitude in protecting the public and making the victims of unfair competition whole."); *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal.App.4th 499, 542, 63 Cal.Rptr.2d 118 (1997) (defendant's "flagrant" and repeated misconduct justified injunction).

---

[21] Defendant's parenthetical of *Hodgers* is misleading. The Court's denial was based upon limiting the scope of the Court's equitable power to grant injunctive relief against state actors, not Art. III standing.

1

## V.    **Disgorgement Is A Proper Remedy**

2

As the California Supreme Court has recently made clear, disgorgement is permissible,

3

and appropriate relief pursuant to both FAL and UCL, in the class action context.    In *Fletcher v.*

4

*Security Pacific National Bank*, 23 Cal.3d 442, 591 P.2d 51 (1979), the Supreme Court held that

5

disgorgement, in the form of "surrender[ing] all profits flowing" from the unlawful conduct, was

6

permissible in class actions asserting FAL claims. *Id.* at 451.  The Court reasoned that "we must

7

effectuate the full deterrent force of the unfair trade statute" and that "[t]o permit the (retention

8

of even) a portion of the illicit profits, would impair the full impact of the deterrent force that is

9

essential if adequate enforcement (of the law) is to be achieved." *Id.*  The permissibility of non-

10

restitutionary disgorgement into a fluid recovery fund   in class actions remained the clear law in

11

California as confirmed by *Corbett v. Superior Court*, 101 Cal. App. 4th 649, 663, 667-68 (2002)

12

(where a UCL class has been certified, a plaintiff may seek disgorgement of unlawful profits).

13

And, most recently, the California Supreme Court reaffirmed disgorgement in class actions as a

14

permissible remedy.  *In re Tobacco II Cases,* 46 Cal. 4th 298, 207 P.3d 20 (2009), the California

15

Supreme Court confirmed that the limitations on nonrestitutionary disgorgement  made in *Kraus*

16

*v. Trinity Management Services, Inc.*, supra, 23 Cal.4th 116, 96 Cal.Rptr.2d 485, 999 P.2d 718

17

"did not overrule any part of" *Fletcher* "under which restitution may be ordered "if necessary to

18

prevent the use or employment of unfair practice."  *Id.* at 320, n.14 (citing *Bank of the West v.*

19

*Superior Court*, 2 Cal. 4th 1254, 833 P.2d 545 (1992) (permitting discouragement of ill-gotten

20

gains).  As made apparent by the language of the Court, its immediate citing of *Bank of the West*,

21

and as set forth above, such restitution included complete disgorgement of illicit profits and

22

gains.  In conclusion, the controlling law of the State of California permits Plaintiff to seek

23

disgorgement where a class action is sought.

24

Defendant's analysis is simply incorrect.  Although nonrestitionary disgorgement cannot

25

be sought in an individual or "representative action,"[22] it is permissible in the class action

26

27

---

28

[22] "Representative action" is a UCL action that is NOT class actions in which a private person seeks relief on behalf of other persons via an alternative California statute. *Kraus*, 23 Cal. 4th at 126 n.10.

24

context.[23]   Thus, the entirety of Defendant's analysis is inapposite because it relies upon holdings in individual or representative actions, not class actions.   In fact, the principle case that Defendant cites explicitly acknowledges that "in *Kraus*, we noted that the Legislature 'has authorized disgorgement into a fluid recovery fund in class actions.'" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1148 n.6, 131 Cal.Rptr.2d 29 (2003) (holding denying disgorgement was limited "to individual private actions brought under the UCL.").[24] Disgorgement is available to Plaintiff as he pursues this class action.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendant's motion. If the Court grants any portion of Defendant's motion, Plaintiffs respectfully seek leave to amend.   Leave to amend a complaint should be freely given, unless the Court is convinced that it could not be saved by any amendment. *See, e.g., Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Dated: February 7, 2012                            Respectfully submitted,

**THE HINTON LAW FIRM**

By:    /s Christopher S. Hinton

---

[23] *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 1772 (2000) affirmed that nonrestitutionary disgorgement is only authorized in a UCL class action reasoning that the California legislature had authorized such disgorgement into a fluid recovery fund in class actions only); *Kraus v. Trinity Management Services, Inc*., 23 Cal.4th 116, 96 Cal.Rptr.2d 485 (2000) (denying disgorgement as the action was a representative action and dissecting the rationale ultimately holding same as *Cortez*).

[24] Defendant's other citations are equally flawed. *Marshal v. Standard Ins. Co*., 274 F. Supp.2d 1062, 1073-74 (C.D. Cal. 2000) had been relegated to an individual action.   ("In Kraus, the California Supreme Court held that disgorgement into a fluid recovery fund is not an available form of relief in a representative action brought pursuant to § 17200.").   *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000) was a representative action.   Moreover, in contrast to Defendant's parenthetical, *Cortez* does not anywhere state "nonrestitutionary disgorgement not available in an FAL class action."   Mem. at p. 25 (citing *Cortez* at 177, n.10).   *Cortez* simply states   the restitutionary remedies of Sections 17535 and 17203 are the same.   Those sections clearly provide nonrestitutionary disgorgement in class actions.   *Madrid v. Perot Sys. Corp*, 130 Cal. App. 4th 440 (2005)   states that "[a]n open question exists as to the availability of nonrestitutionary disgorgement in a properly certified UCL class action."   This issue was clearly resolved by the California Supreme Court in *In re Tobacco II Cases*.   Lastly, *Vinci Inv. Co., Inc. v. Mid-Century Ins. Co*., 2008 WL 4447102 (C.D. Cal. 2008)   is not only pre-Tobacco II, but was decided without any briefing on the issue by plaintiff's counsel.

25

Christopher S. Hinton
275 Madison Ave., 34th Floor
New York, NY 10016
Telephone: (646) 723-3377
Facsimile: (212) 202-3827
Email: chinton@hintonlegal.com

-and-

The Rosen Law Firm, P.A.
Laurence M. Rosen (SBN # 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone:     (213) 785-2610
Facsimile:     (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Email: pkim@rosenlegal.com

Attorneys for Plaintiff

OPPOSITION TO MOTION TO DISMISS
CASE NO. CV11-01415