MAYER BROWN LLP
NEIL M. SOLTMAN (SBN 67617)
  nsoltman@mayerbrown.com
MATTHEW H. MARMOLEJO (SBN 242964)
  mmarmolejo@mayerbrown.com
RUTH ZADIKANY (SBN 260288)
  rzadikany@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone: (213) 229-9500
Facsimile:  (213) 625-0248

Attorneys for Defendant
OCZ TECHNOLOGY GROUP, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| JAMES WANG, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>OCZ TECHNOLOGY GROUP, INC.,<br><br>          Defendant. | Case No. CV11-01415 PSG<br><br>**OCZ TECHNOLOGY GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF JAMES WANG'S FIRST AMENDED COMPLAINT**<br><br>Date:  March 27, 2012<br>Time:  10:00 a.m.<br>Courtroom:  5<br><br>The Honorable Paul S. Grewal<br><br>Complaint filed:  March 24, 2011<br><br>[Reply In Support of Motion to Strike and Opposition to Plaintiff's Request for Judicial Notice Filed Concurrently Herewith] |

1

OCZ TECHNOLOGY GROUP, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; CASE NO. CV11-01415 PSS

1

**TABLE OF CONTENTS**

Page

2

INTRODUCTION ....................................................................................................................1

3

STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3))................................................................2

4

ARGUMENT ...........................................................................................................................2

5

I.     PLAINTIFF CANNOT SHOW THAT OCZ'S ADVERTISING MATERIALS ARE
FRAUDULENT OR MISLEADING AS A MATTER OF LAW .........................................2

6

     A.    Wang's Interpretation of the Products' Specifications Is Unwarranted and
Unsupported By the Facts Alleged................................................................................2

7

          1.    Plaintiff's Interpretation of the Advertised Capacity of the Products Is
Conclusory and Unreasonable .......................................................................3

8

               a.    OCZ Did Not Advertise "User Accessible" Storage Capacity.............3

9

               b.    Plaintiff's Assertions Regarding the "Standard Industry Practice" and
OCZ's Historical Practices Are Unsubstantiated ..................................4

10

          2.    No Reasonable Consumer Would Be Misled By the "Maximum Performance"
Specifications Advertised By OCZ ................................................................4

11

          3.    OCZ Made No Representation Regarding The Relative Capacity and
Performance of The Products .........................................................................6

12

     B.    Plaintiff's "Fraudulent Concealment" Claim Fails Because No Duty to Disclose
Exists ...........................................................................................................................6

13

          1.    Plaintiff Ignores Dispositive Case Law Rejecting A Duty To Disclose
Information Relating to Unadvertised "Inferior" Component Parts.................6

14

          2.    Plaintiff Cannot Create A Duty To Disclose Based On Non-Existent
Representations That OCZ's Products Are Identical ......................................8

15

          3.    Plaintiff Cannot Establish That The Purported Alteration of the Products Was
Material.........................................................................................................8

16

          4.    Plaintiffs Cannot Create A Duty To Disclose Based On OCZ's Purported
Exclusive Knowledge ....................................................................................8

17

II.     PLAINTIFF FAILS TO ALLEGE A BREACH OF EXPRESS WARRANTY.....................9

18

III.   WANG FAILS TO STATE A CLAIM UNDER THE FAL AND CLRA, NOR CAN HE
ESTABLISH THAT OCZ NEGLIGENTLY MISREPRESENTED THE PRODUCTS .........9

19

IV.   WANG FAILS TO STATE A CLAIM UNDER THE UCL ..................................................9

20

V.    WANG DOES NOT HAVE STANDING TO ASSERT CLAIMS CONCERNING
PRODUCTS THAT HE DID NOT PURCHASE BASED ON ADVERTISING UPON
WHICH HE DID NOT RELY ............................................................................................10

21

VI.   PLAINTIFF FAILS TO STATE AN UNJUST ENRICHMENT CLAIM ............................13

22

VII.  PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF .................................13

23

VIII.  DISGORGEMENT IS NOT AN APPROPRIATE REMEDY ..............................................14

24

CONCLUSION .......................................................................................................................15

25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Adams v. Murakami,*
5
   54 Cal. 3d 105 (1991) ...................................................................................................... 14

6

*Adesokan v. U.S. Bank, N.A.,*
   No. 11-cv-01236-LJO-SKO, 2011 U.S. Dist. LEXIS 125591 (E.D. Cal. Oct. 31, 2011) ............... 13
7

8

*Andrade v. Pangborn Corp.,*
   No. C 02-3771 PVT, 2004 U.S. Dist. LEXIS 22704 (N.D. Cal. Oct. 22 2004) ............................... 11

9

*Baba v. Hewlett-Packard Co.,*
10
   No. 09-05946 RS, 2011 U.S. Dist. LEXIS 8527 (N.D. Cal. Jan. 28, 2011) ....................................... 9

11

*Bardin v. DaimlerChrysler Crop.,*
   136 Cal. App. 4th 1255 (2006) .................................................................................................. 6, 7
12

13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................................................ 3

14

*Berryman v. Merit Prop. Mgmt., Inc.,*
   152 Cal. App. 4th 1544 (2007) ..................................................................................................... 10
15

16

*Brazil v. Dell Inc.,*
   No. C-07-01700 RMW, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) ........................................ 12

17

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
18
   No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10, 2011) ........................... 11

19

*Chamberlan v. Ford Motor Co.,*
   No. C 03-2628 CW, 2003 U.S. Dist. LEXIS 27912 (N.D. Cal. Aug. 6, 2003) .............................. 15
20

21

*Chavez v. Blue Sky Natural Beverage Co.,*
   268 F.R.D. 365 (N.D. Cal. 2010) ................................................................................................. 12

22

*Cholla Ready Mix, Inc. v. Civish,*
23
   382 F.3d 969 (9th Cir. 2004) .......................................................................................................... 3

24

*Clemens v. DaimlerChrysler Corp.,*
   530 F.3d 852 (9th Cir. 2008) .......................................................................................................... 8
25

26

*Corbett v. Superior Court,*
   101 Cal. App. 4th 649 (2002) ....................................................................................................... 15

27

*Cortez v. Purolator Air Filtration Prods. Co.,*
28
   23 Cal. 4th 163 (2000) .................................................................................................................. 14

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Daugherty v. Am. Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006)...........................................................................................8

4

*Deitz v. Comcast Corp.*,
  No. 06-6352 WHA, 2006 U.S. Dist. LEXIS 94333 (N.D. Cal. Dec. 21, 2006)...............14

5

6

*Freeman v. The Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995).........................................................................................3, 6

7

8

*Gest v. Bradbury*,
  443 F.3d 1177 (9th Cir. 2006)........................................................................................13

9

10

*Ginns v. Savage*,
  61 Cal. 2d 520 (1964)....................................................................................................12

11

*Greenwood v. Compucredit Corp.*,
  No. 08-04878 CW, 2010 WL 4807095 (N.D. Cal. Nov. 19, 2010) ...............................12

12

13

*Hodgers-Durgin v. De La Vina*,
  199 F.3d 1037 (9th Cir. 1999)........................................................................................13

14

15

*Hoey v. Sony Elecs, Inc.*,
  515 F. Supp. 2d 1099 (N.D. Cal. 2007).............................................................................6

16

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009)...................................................................................................12

17

18

*Johns v. Bayer Corp.*,
  No. 09-CV-1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010)................11

19

20

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.*,
  578 F. Supp. 2d 1229 (C.D. Cal. 2008) .............................................................................4

21

22

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012)......................................................................................10

23

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003).................................................................................................14

24

25

*Kraus v. Trinity Mgmt. Svcs., Inc.*,
  23 Cal. 4th 116 (2000)...................................................................................................15

26

27

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011)...................................................................................................10

28

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Long v. Hewlett-Packard Co.*,
  No. C 06-02816 JW, 2007 U.S. Dist. LEXIS 79262 (N.D. Cal. July 27, 2007) .............................6

*Madrid v. Perot Sys. Corp.*,
  130 Cal. App. 4th 440 (2005)..........................................................................................................15

*Maloney v. Verizon Internet Servs., Inc.*,
  No. ED CV 08-1885-SGL, 2009 U.S. Dist. LEXIS 131027 (C.D. Cal. Oct. 4, 2009) ..................4, 5

*Martinez v. Welk Group, Inc.*,
  No. 09-CV-2883-AJB, 2011 U.S. Dist. LEXIS 58718 (S.D. Cal. June 2, 2011)...........................14

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009)....................................................................................................................13

*Mlejnecky v. Olympus Imaging Am., Inc.*,
  No. 2:10-CV-02630 (E.D. Cal. Apr. 19, 2011) ..............................................................................11

*Nagel v. Twin Laboratories, Inc.*,
  109 Cal. App. 4th 39 (2003)............................................................................................................10

*Nelson v. Dollar Tree Stores, Inc.*,
  No. 2:11-CV-01334 JAM-CMK, 2011 U.S. Dist. LEXIS 90531 (E.D. Cal. Aug. 15, 2011).......14

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ..............................................................................................8

*People v. Toomey*,
  157 Cal. App. 3d 1 (1984) ..............................................................................................................14

*Pfizer, Inc. v. Miles, Inc.*,
  868 F. Supp. 437 (D. Conn. 1994)....................................................................................................5

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ......................................................................................6, 7, 9

*Shein v. Canon U.S.A., Inc.*,
  No. CV 08-07323 CAS (Ex), 2009 U.S. Dist. LEXIS 131519 (C.D. Cal. June 22, 2009)..............13

*Stickrath v. Globalstar, Inc.*,
  527 F. Supp. 2d 992 (N.D. Cal. 2007) ............................................................................................13

*Sun Microsystems, Inc. v. Microsoft Corp.*,
  87 F. Supp. 2d 992 (N.D. Cal. 2000)..............................................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page

*Tietsworth v. Sears, Roebuck & Co.*,
    No. 5:09-CV-00288 JF (HRL), 2009 U.S. Dist. LEXIS 98532 (N.D. Cal. Oct. 13, 2009)............6

*Von Koenig v. Snapple Bev. Corp.*,
    713 F. Supp. 2d 1066 (E.D. Cal. 2010) .......................................................................14

*Williams v. Beechnut Nutrition Corp.*,
    185 Cal. App. 3d 135 (1986).......................................................................................9

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011) ...............................................................................12

*Zeisel v. Diamond Foods, Inc.*,
    No. C 10-01192 JSW, 2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011) .........................12

STATUTES

Cal. Bus. & Prof. Code § 17200....................................................................................9

Cal. Bus. & Prof. Code § 17204..................................................................................11

Cal. Bus. & Prof. Code § 17535..................................................................................11

Cal. Civ. Code § 1780(a) ...........................................................................................11

OTHER AUTHORITIES

Fed. R. Civ. P. 23...............................................................................................11, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The chief tactic employed by Plaintiff James Wang ("Plaintiff" or "Wang") in his Opposition to OCZ Technology Group, Inc.'s ("OCZ") Motion To Dismiss ("Opposition" or "Opp.") amounts to nothing more than atmospherics; Wang attempts to distract this Court with irrelevant legal theories and unsubstantiated conclusory statements that do not address the issues raised by OCZ's Motion to Dismiss and do not remedy the failings of his allegations.[1]

The fundamental premise of Plaintiff's entire case is that OCZ marketed two completely distinct products as the same product due to the modification of several component parts. This assertion is patently false because Wang received exactly what was advertised: a 2.5" solid state drive using OCZ's latest controller technology. The Agility 2 and Vertex 2 lines of SSDs (the "Products") were set apart from the previous generation of Agility and Vertex drives by their utilization of the SandForce controller (as opposed to the previously used Indilinx controller). Plaintiff does not allege that OCZ changed the critical distinguishing component—the SandForce controller;[2] rather, he alleges that OCZ changed various other component parts used in the drives. But it is undisputed that OCZ did *not* advertise or suggest in any of its advertising materials that an Agility 2 SSD purchased in April 2010 would be identical *in all respects* to an Agility 2 SSD purchased in February 2011 or even one purchased in May 2010.[3] Nor does Plaintiff allege that OCZ made representations regarding the component parts used in the Products—namely the use of a 34 v. 25 nanometer (nm) manufacturing process and the characteristics of the memory chips utilized in each drive—or made any representation that these components would never be changed. It is common practice among manufacturers to modify the internal components of a product without disclosing such modifications to the public; as long as the use of a

---

[1]    As before, Plaintiff also engages in the tactic of summarizing his allegations in a misleading manner and citing dozens of largely irrelevant cases, very few of which shed any light on the motion. The allegations, of course, are those actually plead, not their recharacterization in Plaintiff's Opposition.

[2]    Plaintiff's FAC concedes that "performance is largely determined by the controller" of the SSD—the very component that is not alleged to have been modified by OCZ.  FAC ¶ 32.

[3]    Contrary to Plaintiff's conclusory assertions in his Opposition, it is hardly undisputed that the "Predecessor Products" are inferior to the "Products."  Opp. at 3:11-12.

1

1    particular component is not advertised to the public, no reasonable consumer can be misled by the

2    change of a component part of which he or she was not aware to begin with.

3         The same reasoning holds true with respect to the Products' specifications.    The only

4    representation that OCZ can be said to have made is that which its advertising materials state.  Plaintiff

5    has not identified any representation by OCZ in which its Product specifications were advertised in terms

6    of their relative performance to previous iterations of the Products (the "Predecessor Products").  Rather,

7    OCZ's advertised specifications were expressly presented to consumers in terms of the maximum outer

8    limits of performance and "reported capacity" (as opposed to "actual" or "user accessible" capacity),

9    along with explicit explanations setting forth the limitations of the specifications, as clearly articulated on

10   OCZ's website.  A reasonable consumer could thus not be misled, as a matter of law, by representations

11   that OCZ did not make or have any duty to disclose.  And contrary to Plaintiff's poorly reasoned

12   assertion, it is logically possible for OCZ's marketing material to have been truthful as to both the

13   Products and Predecessor Products—both met the maximum performance and capacity specifications

14   advertised by OCZ (taking into account the limitations explicitly set forth therein).

15                       **STATEMENT OF ISSUES (CIVIL L.R. 7-4(a)(3))**

16        1.       Does Plaintiff fail to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)?

17        2.       Does Plaintiff impermissibly seek relief, at least in part, for alleged injuries resulting from

18   products that he did not purchase and advertisements upon which he did not rely?

19        3.       Does Plaintiff improperly state a cause of action for unjust enrichment?

20        4.       Does Plaintiff have standing to seek injunctive relief?

21        5.       Does Plaintiff improperly seek disgorgement as a remedy?

22                                   **ARGUMENT**

23   **I.    PLAINTIFF CANNOT SHOW THAT OCZ'S ADVERTISING MATERIALS ARE**
24   **FRAUDULENT OR MISLEADING AS A MATTER OF LAW.**

         **A.    Wang's Interpretation of the Products' Specifications Is Unwarranted and**
25            **Unsupported By the Facts Alleged.**

26        Plaintiff's Opposition convolutes OCZ's advertising materials to fit his theory, and is comprised

27   of nothing more than conclusory allegations that should not be accepted by this Court.  It is well-

28   established that on a motion to dismiss, a plaintiff's obligation to state the grounds for his entitlement to

relief demands "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court need not "accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. 'Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (internal citation omitted).[4]

        **1.**    **Plaintiff's Interpretation of the Advertised Capacity of the Products Is Conclusory and Unreasonable.**

        **a.**    **OCZ Did Not Advertise "User Accessible" Storage Capacity.**

The premise of Plaintiff's storage capacity claim is that "the advertised capacity was the capacity that was user accessible." Opp. at 7:14-15. But OCZ's advertising materials and product packaging upon which Plaintiff relies make no representations regarding "user accessible" capacity. The words "user accessible" are nowhere to be found in OCZ's advertising materials and packaging. And the explanations on OCZ's website, which Wang admittedly relied upon, unequivocally inform consumers that the advertised or "reported" capacity of the Products is *not* the "actual" or "user accessible" capacity, FAC, Exs. 1-2 (**Important SSD notes:** "**Consumers may see a discrepancy between reported capacity and actual capacity**"), and that "**some of the [reported] capacity is reserved for formatting and redundancy**," thereby disclosing that the reported capacity is higher than the user accessible capacity. *Id.* (emphasis added). Given the specific explanations set forth in the relied upon advertising materials, Plaintiff cannot credibly allege OCZ advertised "user accessible" capacity. Nor can one reasonably infer in view of the website qualifiers that a reasonable consumer would believe "capacity" and "user accessible capacity" are "one in the same." Opp. at 3:25-26. *See Freeman v. The Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (holding "unreasonable" a consumer's belief that he had won a sweepstakes upon receiving a mailer because the mailer expressly included a small print qualifier explaining the terms and conditions for winning). In any event, Plaintiff's characterization of "capacity" and "user accessible capacity" as "one in the same" is conclusory and need not be accepted by this Court.

---

[4]    Plaintiff seeks to bolster his unreasonable interpretation of OCZ's advertising by improperly appending, by way of judicial notice, unauthenticated evidence outside the allegations of his FAC and to which he did not refer or rely upon in his FAC. *See* Opposition to Wang's Request for Judicial Notice.

### b.    Plaintiff's Assertions Regarding the "Standard Industry Practice" and OCZ's Historical Practices Are Unsubstantiated.

Wang relies on an unsubstantiated assertion that the industry marketing standard is to advertise the "user accessible"/IDEMA capacity and that OCZ historically has used such a practice. *See* FAC ¶¶ 6, 27-29, 45. But Wang provides this Court with no basis for his claim that customary industry practice is to use the standards of IDEMA, a voluntary trade organization, or that a product's advertised capacity signifies the actual "user accessible"/IDEMA capacity. Equally unsupported is Plaintiff's claim that OCZ historically marketed the capacity of its products in accordance with IDEMA standards (it has not).[5]

Even assuming arguendo that use of the IDEMA standards is the industry practice, OCZ's website expressly puts consumers on notice that the advertised capacity of the Products may not be consistent with IDEMA by stating that "[a]ctual IDEMA capacities may vary slightly."[6] FAC, Exs. 1-2. If the advertised capacities were consistent with IDEMA, or alternatively, if OCZ was misleading consumers into believing that the capacity was consistent with IDEMA, its advertising materials would not affirmatively disclose that the advertised capacity varies from the IDEMA capacity.

### 2.    No Reasonable Consumer Would Be Misled By the "Maximum Performance" Specifications Advertised By OCZ.

Numerous courts have held that emphasizing a maximum or minimum value within a range of possibilities is not misleading because any reasonable consumer understands that achieving that value depends on particular circumstances. *See Maloney v. Verizon Internet Servs., Inc.*, No. ED CV 08-1885-SGL (AGRx), 2009 U.S. Dist. LEXIS 131027, at *13 (C.D. Cal. Oct. 4, 2009) (advertising maximum internet speed of "up to 3 Mbps" not likely to deceive a reasonable consumer); *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1241 (C.D. Cal. 2008) (emphasis on maximum "1080"

---

[5]    Plaintiff should know that OCZ did not always advertise IDEMA capacity because the 60GB Agility 1 SSD Plaintiff purportedly purchased was not advertised in those terms.

[6]    Plaintiff's attempt to inject his own interpretation of the IDEMA modifier on OCZ's website is meritless. The "IDEMA modifier" is not merely a continuation of the disclosure by OCZ that "[c]onsumers may see a discrepancy between reported capacity and actual capacity." *See* Opp. at 5:12-22. The two modifiers are located under different tabs of OCZ's website—one on the "Description" page, the other on the "Specifications" page. Had OCZ wished to use the IDEMA modifier as a continuation of the initial modifier, they both would have been set forth in the same "Important SSD notes" section.

4

OCZ TECHNOLOGY GROUP, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; CASE NO. CV11-01415 PSS

1  television resolution not misleading); *Pfizer, Inc. v. Miles, Inc.*, 868 F. Supp. 437, 446 (D. Conn. 1994)

2  ("Save up to $192 a year" is not misleading).

3      OCZ's advertising materials state the "*maximum*" performance specifications of the Products as

4  being "up to" the specified number.  FAC, Exs. 1-2.  They do not state that every drive will reach such

5  speeds all the time or that this maximum performance is relative to a previous iteration of the drive.  Just

6  as the only reasonable interpretation of a "up to 3Mbps" advertisement is that "*some* customers will reach

7  an internet speed of 3Mbps," *Maloney*, 2009 U.S. Dist. LEXIS 131027 at *13-14, the only reasonable

8  interpretation of "up to 275 MB/s" is that *some* consumers will achieve speeds at 275 MB/s—not that

9  every consumer will always do so.  *Id.*  OCZ explains this limitation when it discloses on the first page of

10 the Products' webpage that: "Rated speeds **may vary** slightly depending on the benchmark used, drivers,

11 windows version, bios version and file size."  FAC, Exs. 1-2 (emphasis added).  This qualifying

12 language was applied to all data on OCZ's advertisement, including the third party reviews, which were

13 based upon testing conducted using various combinations of benchmarks, drivers, windows versions,

14 bios versions or file sizes, over which OCZ has no control.

15      Further, Wang provides no reasonable basis for his claim that, in providing consumers with

16 information regarding the outer limits of performance of its drives, OCZ must have intended an implied

17 comparison between an SSD manufactured in 2010 and one manufactured in 2011.  The marketing

18 materials Plaintiff refers to imply only what they say—that the drives *can* reach the maximum

19 performance advertised under particular circumstances—and nothing more.

20      Notably, both the FAC and Plaintiff's Opposition are devoid of claims that the Agility 2 SSD did

21 not meet the *maximum* specifications advertised.  Plaintiff does not allege that he tested his drive to

22 assess its compliance with the advertised specifications, nor does he identify the benchmarks used to test

23 his drive.  And Wang's unfounded general statements regarding the Products' noncompliance do not

24 circumvent this deficiency—how did Wang draw this conclusion? If he relied upon tests conducted by

25 third party's on other drives, were the proper benchmarks utilized?  If so, how many drives were tested?;

26 if only one, could that drive have been an outlier or a singularly faulty drive?

27      OCZ's website statements regarding the limitations of its advertised specifications were crystal

28 clear in disclosing the potential variance in rated speeds, and Plaintiff admits to having read this

webpage.  FAC ¶¶ 38-39.  Indeed, the explanation was displayed on OCZ's Product pages under a bold heading entitled "**Important SSD notes**."  Disclaimers far less visible than those here pass muster.  *See Freeman*, 68 F.3d at 289 (affirming dismissal and rejecting claim that a reader would "review the large print and ignore the qualifying language in small print").

### 3.     OCZ Made No Representation Regarding The Relative Capacity and Performance of The Products.

Plaintiff's argument that the Products' advertised capacity was misleading because the "user accessible" capacity in the Products differed from that of the Predecessor Product fails.  Opp. at 8:10-12.  Plaintiff has not identified any representation by OCZ that the "actual" storage capacity of the Products would always be identical.  In fact, the OCZ website expressly states that the "user accessible" or "actual" storage capacity of the Products may be different from the "reported capacity" and that "[a]ctual IDEMA capacities may vary slightly."  FAC, Exs. 1-2.  Accordingly, any variance in the IDEMA or advertised capacity between the Predecessor Products and Products, *see* Opp. at 6:10-15, is not inconsistent with information provided by OCZ to consumers.

Similarly, to the extent Wang's claims are based on the purported "slower" performance of the Products relative to previous iterations, FAC ¶¶ 59, 62, Plaintiff has not identified a single representation regarding the drives' relative performance.  Instead, Wang's performance allegations are stated in terms of the Products' "slower" average speed relative to the Predecessor Products, not in terms of the "max" performance.  But the latter are the only performance representations actually attributable to OCZ.  *Id.*

### B.     Plaintiff's "Fraudulent Concealment" Claim Fails Because No Duty to Disclose Exists.

#### 1.     Plaintiff Ignores Dispositive Case Law Rejecting A Duty To Disclose Information Relating to Unadvertised "Inferior" Component Parts.

Plaintiff ignores the controlling case law on which OCZ's motion to dismiss is based.  *See* Motion at 11:9-28, 12:1-10 (citing, *inter alia*, *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) and *Bardin v. DaimlerChrysler Crop.*, 136 Cal. App. 4th 1255 (2006).[7]  These cases dispose of

---

[7]     Plaintiff takes the same head in the sand approach to the rest of the cases cited by OCZ; this tells the Court all it needs to know.  *See Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JF (HRL), 2009 U.S. Dist. LEXIS 98532, at *12 (N.D. Cal. Oct. 13, 2009); *Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007); *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 U.S. Dist. LEXIS 79262, at *24 (N.D. Cal. July 27, 2007).

6

OCZ TECHNOLOGY GROUP, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; CASE NO. CV11-01415 PSS

any duty to disclose component parts information.  OCZ's motion should thus be granted because Plaintiff's claim rests on a claimed duty to disclose purported changes to the component parts of the Products due to utilization of the same Product name, packaging and marketing material.  Opp. at 9:18-20.  But, as these authorities unequivocally explain, this claim is insufficient because Wang fails to allege any representation by OCZ regarding the technical components of the Products giving rise to any duty to disclose.

The *Sanders* plaintiff alleged that Apple had misleadingly marketed the display of its 20- and 24-inch iMac products as though they were interchangeable in terms of quality despite their use of different technologies and performance.  672 F. Supp. 2d at 983.  As here, the plaintiffs' claims were based upon a theory of fraudulent concealment—that it was fraudulent to market 20-inch iMacs as having a monitor indistinguishable from the superior one used in the 24-inch iMac despite its use of "inferior" component parts.  *Id.* at 985.  The Court dismissed the plaintiffs' complaint because it "fails to describe with specificity representations made by Apple with respect to the display's component parts that would give rise to a duty to disclose." *Id* at 986.

Similarly, in *Bardin*, the plaintiffs claimed an alleged nondisclosure of an "inferior" component part—the use of a tubular steel rather than industry-standard cast iron exhaust manifold.  136 Cal. App. 4th at 1261-62.  The Court of Appeal affirmed dismissal without leave to amend, holding that "the use of less expensive and less durable materials in the manufacture of DCC's vehicles to make more money" does not support liability, especially where DCC did not make "any representations regarding the composition of the exhaust manifolds" that could give rise to a duty to disclose such information.  *Id.* at 1270.

Plaintiff ignores these cases and argues, *without any supporting case law*, that by failing to change the marketing materials and Product "moniker," OCZ fraudulently omitted material facts.  But OCZ made no factual statement to support a duty to disclose the change in components parts that would have required OCZ to change its Product name or marketing materials.  Plaintiff's claims must be dismissed.

### 2. Plaintiff Cannot Create A Duty To Disclose Based On Non-Existent Representations That OCZ's Products Are Identical.

Plaintiff argues that by not changing its advertising materials and by using the same moniker, OCZ made "affirmative representations" that the Products and Predecessor Products were identical. Opp. at 9:1-2, 13. But Plaintiff cannot cite a single statement by OCZ that the Products would be manufactured identically to its predecessors or that they would have identical performance and capacity.[8] As a result, OCZ made no statement that could support a duty to disclose changes to the component parts of the products or any purported difference in the average specifications of the Products.

### 3. Plaintiff Cannot Establish That The Purported Alteration of the Products Was Material.

Material information is only that about which "members of the public . . . had an expectation or an assumption." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (2006). Courts dismiss claims "on materiality grounds for failure to allege that . . . the public had any expectation or made any assumptions" regarding the component part at issue. *Clemens v. DaimlerChrysler Corp.*, 530 F.3d 852, 861 (9th Cir. 2008). Wang has identified no representation by OCZ regarding the component parts of the Products or their specifications relative to a purported previous iteration of the Product. As a result, a consumer could not reasonably have had any expectation regarding such issues as a matter of law, and this information cannot be characterized as "material" for purposes of imposing a duty to disclose.

### 4. Plaintiffs Cannot Create A Duty To Disclose Based On OCZ's Purported Exclusive Knowledge.

OCZ did not have a duty to disclose the alleged use of the component parts because of any exclusive knowledge. Once again, Plaintiff does not cite a single case where this rarely-invoked rule has created liability in the consumer products context. This is not surprising: this District consistently rejects claims based on identical allegations. *See, e.g. Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008) (no duty to disclose because defendant had "exclusive knowledge as the manufacturer;"

---

[8] The Opposition haphazardly states that the FAC "does allege OCZ made affirmative assertions concerning the amount of flash chips and layout used in the Products." Opp. at 10:1-2. But it does not cite any part of the FAC identifying any such affirmative assertion *by OCZ*. In any event, the pictures of the inside of the drives in Anandtech's reviews do not amount to a representation by OCZ that all Agility 2 and Vertex 2 SSDs contain the precise internal layout as the pictures, nor does Anandtech make any such representation. The photographs are simply representations of the layout of the specific drive reviewed by Anandtech.

that "could be [said] about any alleged design defect in any manufactured product."); *Sanders*, 672 F. Supp. 2d at 986 (same).

## II.     PLAINTIFF FAILS TO ALLEGE A BREACH OF EXPRESS WARRANTY.

A claim for breach of express warranty requires an actual "breach of th[e] warranty." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986). Despite Plaintiff's bare assertion that the Products do not conform to the affirmations of OCZ because they provide inferior performance and less storage capacity than represented, Opp. at 11:12-15, the FAC avoids alleging that Plaintiff tested his SSD and discovered that it did not meet the advertised maximum specifications, and Plaintiff is unable to identify any representation by OCZ that the advertised "capacity" of the Products means the "user accessible" capacity. Instead, the Opposition attempts to distract with allegations that OCZ breached its express warranty to provide Products identical in performance and capacity to the Predecessor Products. Again, Plaintiff fails to identify a single OCZ representation regarding the Products' performance and capacity relative to the Predecessor Products; OCZ cannot be liable for breach of a warranty it never made.

## III.    WANG FAILS TO STATE A CLAIM UNDER THE FAL AND CLRA, NOR CAN HE ESTABLISH THAT OCZ NEGLIGENTLY MISREPRESENTED THE PRODUCTS.

As discussed above, Wang has failed to allege that OCZ's advertising was false or misleading, or that OCZ fraudulently omitted information upon which a CLRA or FAL claim can be based. Plaintiff also cannot establish justifiable reliance by Plaintiff because a reasonable consumer would not assume that "capacity" means "user accessible"/IDEMA capacity, or that the Products will always perform at precisely the maximum specifications advertised irrespective of the explicit disclosures on OCZ's Product pages.

## IV.    WANG FAILS TO STATE A CLAIM UNDER THE UCL.

Wang fails to allege facts sufficient to establish that OCZ engaged in an unlawful, unfair or fraudulent business act or practice. Cal. Bus. & Prof. Code § 17200. First, Plaintiff has not sufficiently alleged any viable basis for an unlawful conduct claim. The CLRA, FAL and the other fraud-based statutory offenses upon which his UCL claim can be predicated all require a "deceptive act." *See Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 U.S. Dist. LEXIS 8527, at *14 (N.D. Cal. Jan. 28,

1   2011).  As discussed above, OCZ has not committed any deceptive act as a matter of law.

2       Plaintiff's claim for "unfair" business practices also fails.  As set forth above, no reasonable

3   consumer would be deceived by OCZ's advertising as a matter of law, such that they cannot be harmed.

4   Alternatively, Wang has not alleged that OCZ violated any "legislatively declared policy," an issue that

5   he entirely ignores in his Opposition.  *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544,

6   1555 (2007) (dismissing because plaintiff did not identify any statute or case law that required defendant

7   to provide a breakdown of its fees).

8       Plaintiff advances three California Court of Appeal cases that he claims demonstrate his

9   compliance under the UCL's "fraudulent" prong.  These cases are so factually distinct that they have

10  little, if any, relevance.  Unlike here, in *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342 (2012),

11  plaintiff claimed that consumers were misled by the defendant's sale of motor fuel in non-temperature

12  adjusted "gallon" units without disclosing the impact of such a practice.  *Id.* at 1381.  But OCZ did not

13  simply state the "capacity" of the Products; it clearly explained that the "reported capacity and actual

14  capacity" may be different.  FAC, Exs. 1-2.  Unlike the *Klein* plaintiffs, who purportedly made an

15  assumption about "receiv[ing] the standardized amount of motor fuel" due to use of the term "gallon," *id.*

16  at 1382, OCZ expressly explained that "[a]ctual IDEMA capacities may vary."  FAC, Exs. 1-2.  The

17  same is true with respect to the Products' maximum advertised specifications; OCZ disclosed that

18  "[r]ated speeds may vary."  *Id.*

19      Similarly, in *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 52 (2003), the plaintiff's

20  claims hinged on the defendant's non-disclosure of its meaning of the term "standardized."  But OCZ did

21  not leave its advertised specifications unexplained.  Plaintiff's citation of *Kwikset Corp. v. Superior*

22  *Court*, 51 Cal. 4th 310 (2011), does not help either; the Court's holding was due to an affirmative

23  misrepresentation—the locks were not "Made in the U.S.A." as labeled—not, as here, on some implied

24  representation unsupported by OCZ's actual representations.

**V.    WANG DOES NOT HAVE STANDING TO ASSERT CLAIMS CONCERNING**
26  **PRODUCTS THAT HE DID NOT PURCHASE BASED ON ADVERTISING UPON**
    **WHICH HE DID NOT RELY.**

27      Wang says little of substance concerning whether he has standing to seek relief regarding

28  products that he admittedly did not purchase and advertisements upon which he did not rely.  Wang

10

1   claims to have purchased only the 120 GB Agility 2 SSD.  He did not purchase a Vertex 2 SSD or a

2   60GB, 80GB, 90GB, 160GB, or a 180GB Agility 2 SSD.  Wang thus could not sustain any "injury in

3   fact" or "los[e] money or property" from drives he never purchased.  Yet to establish standing under the

4   UCL, FAL, CLRA, and breach of warranty, Wang must suffer damage or harm.  *See* Cal. Bus. & Prof.

5   Code §§ 17204, 17535; Cal. Civ. Code § 1780(a); *Andrade v. Pangborn Corp.*, No. C 02-3771 PVT,

6   2004 U.S. Dist. LEXIS 22704, at *61 (N.D. Cal. Oct. 22 2004) ("To prove breach of an express

7   warranty, the plaintiff must prove . . . harm[]").  This Court has expressly acknowledged that Wang's

8   inability to allege injury based on products he did not purchase subjects those claims to dismissal.

9   Court's Oct. 14, 2011 Order at 23:9-10.

10          Rather than addressing whether he satisfies the threshold requirement of standing, Wang attempts

11   to distract by conflating a hodge-podge of irrelevant theories which focus on the dismissal of "class

12   allegations" under Fed. R. Civ. P. 23.  Opp. at 17:12-13.  But OCZ did not move to strike class

13   allegations.  Curiously, not one of Wang's cases address the standing issue presented by OCZ's Motion,

14   and are thus all inapposite.[9]

15          The far more persuasive authority cited by OCZ in its opening papers—all of which address the

16   precise standing issue in question in the very context currently before this Court—establish that claims

17   should be dismissed *at the pleading stage* when the named plaintiff individually does not have standing

18   to assert them.  *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 U.S. Dist.

19   LEXIS 6371, at *7-8 (N.D. Cal. Jan. 10, 2011) (dismissing claims with prejudice for lack of standing

20   because plaintiff never purchased the product); *Mlejnecky v. Olympus Imaging Am., Inc.*, No. 2:10-CV-

21   02630 JAM-RJN, 2011 U.S. Dist. LEXIS 42333, at *11 (E.D. Cal. Apr. 19, 2011) (dismissing plaintiff's

22   allegations concerning a camera plaintiff never claimed to have owned); *Johns v. Bayer Corp.*, No. 09-

23   CV-1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010) (dismissing claims

24   as to a vitamin product that "plaintiff did not purchase and advertisements relating to a product that he

25   did not rely upon").  Plaintiff unconvincingly attempts to avoid these authorities by citing class

26   certification decisions in which the named plaintiff's standing concerning the products is unchallenged

---

27   [9]    Indeed, in all of the cases cited by Plaintiff, the issue before the Court was the sufficiency of
the class allegations under *Rule 23* or the ascertainability of the class; the plaintiff's individual

28   standing to assert his claims was not at issue.  *See* Opp. at 17:12-20.

and the court does not address standing.[10]  But Plaintiff's suggestion that these inapposite cases permit him to recover for items he did not purchase based on advertising upon which he did not rely is unsupportable.  *See Ginns v. Savage*, 61 Cal. 2d 520, 524 n.2 (1964) ("[A]n opinion is not authority for a proposition not therein considered").

Plaintiff's Opposition concedes that in assessing standing, the court "consider[s] only whether at least one named plaintiff satisfies the standing requirements . . . ."  Opp. at 17, n.16 (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011).  But Wang is the only named plaintiff and he cannot satisfy the standing requirements for the Vertex 2 and non-120GB Agility 2 SSDs because he did not purchase them.  Nor can he show he was harmed by advertisements regarding Vertex 2 products and non-120GB Agility 2 SSDs because he could not have relied upon them in purchasing a completely different product.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009) (Under the FAL and UCL, plaintiffs must "plead and prove actual reliance" on the challenged conduct).

In yet another exercise in misdirection, Plaintiff cites cases regarding the standing of unnamed class members and Article III standing[11] that have no relevance to whether Wang individually has standing to seek relief for products from which he did not suffer any injury.  This analysis misses the point.  Wang does not have standing to seek relief for products that he did not purchase and advertisements upon which he did not rely; the irrelevant cases cited in Plaintiff's Opposition do nothing to remedy this critical shortcoming.

---

[10]    In *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 U.S. Dist. LEXIS 60608, at *9, 12 (N.D. Cal. June 7, 2011), plaintiff purchased the Shelled Walnut Products at issue; his purchase of other bag sizes was not at issue.  Similarly, in *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011), the defendant did not challenge plaintiff's standing to assert claims as to the different variations of notebooks at issue.  In *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010), plaintiff's standing was not challenged; defendant challenged plaintiff's typicality under Rule 23.  In *Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010), defendants did not challenge the plaintiffs' standing and the court did not address plaintiffs' failure to purchase every product for which relief was sought.  Standing of the class representative was not addressed in *Greenwood v. Compucredit Corp.*, No. 08-04878 CW, 2010 WL 4807095, at *3 (N.D. Cal. Nov. 19, 2010) either.

[11]    Unlike here, the *Zeisel* plaintiff had purchased the products at issue.  2011 U.S. Dist. LEXIS 60608 at *9, 12.  Also, the defendant's standing argument was based on the contention that plaintiff had no physical proof that he purchased the products, an assertion that has no bearing on the standing question before this Court. *Id.* at *7, 9.

**VI.    PLAINTIFF FAILS TO STATE AN UNJUST ENRICHMENT CLAIM.**

Even if a claim for unjust enrichment could be asserted as a stand-alone cause of action in California—which it cannot—Wang's unjust enrichment theory is derivative of his other claims, all of which fail.  The cases cited by Plaintiff for the proposition that stand-alone unjust enrichment claims should go forward because they are essentially restitution claims are inapposite.  Opp. at 20:16-23.  "[E]ven if a claim for unjust enrichment is characterized as a request for restitution, this too is a remedy, not a stand-alone cause of action."  *Adesokan v. U.S. Bank, N.A.*, No. 11-cv-01236-LJO-SKO, 2011 U.S. Dist. LEXIS 125591, at *23 (E.D. Cal. Oct. 31, 2011).  Where as here, a plaintiff's unjust enrichment claims duplicate other claims for relief, the Court should dismiss those claims with prejudice.  *See, e.g.*, *Shein v. Canon U.S.A., Inc.*, No. CV 08-07323 CAS (Ex), 2009 U.S. Dist. LEXIS 131519, at *15 (C.D. Cal. June 22, 2009).  Plaintiff's prayer for relief already seeks restitution, FAC, Relief Sought, ¶ c; an independent claim for unjust enrichment is thus duplicative and unnecessary.

**VII.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF.**

Without a likelihood of future injury, Plaintiff lacks standing to seek injunctive relief.  *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999).  This requires a showing that the plaintiff is "'realistically threatened by a *repetition* of the violation.'"  *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (citation omitted).  And "'[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.'"  *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 997 (N.D. Cal. 2007) (citing *Hodgers-Durgin*, 199 F.3d at 1045)[12] (dismissing UCL and CLRA-predicated injunctive relief claims because "any injury allegedly suffered . . . appear[ed] to lie solely in the past").  The Supreme Court in *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 646 (2009),[13] limited the ability of a plaintiff to seek injunctive relief, even to remedy a public wrong, unless "a low

---

[12]    Plaintiff claims (Opp. at 23 n.21) that OCZ's citation of *Hodgers* is "misleading."  But Judge Henderson does not agree with Plaintiff's myopic view of *stare decisis*.  *Stickrath*, 527 F. Supp. 2d at 997 (citing *Hodgers* in explaining why plaintiffs in a consumer class action *lacked standing* to pursue injunctive relief on behalf of a class, without any limitation as to state actors).

[13]    In requiring a damages threshold, the *Meyer* Court rejected *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1080-81 (1999), upon which *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F.2d 985, 995 (C.D. Cal. 2008)—cited by Plaintiff (Opp. at 22:3-7) for the proposition that injunctive relief is appropriate irrespective of a lack of any likelihood of future harm—relies. 45 Cal. 4th at 645.

1   but nonetheless palpable threshold of damage" is met as to the plaintiff himself.[14]  Wang cannot meet this

2   "threshold" because he has not alleged any concrete harm that is threatened or imminent as to him due to

3   OCZ's allegedly misleading advertising.  Wang is already aware of the allegedly lower "user accessible"

4   capacity and slower specifications of the Products, and is aware of the Products' purported inferior

5   performance relative to the Predecessor Products.  And Wang has not alleged even a likelihood that he

6   would once again purchase the SSDs at issue from OCZ.  As such, the possibility of future harm to Wang

7   is speculative and insufficient to warrant injunctive relief.  Oct. 14, 2011 Order at 11:16-18; *see Deitz v.*

8   *Comcast Corp.*, No. C 06-6352 WHA, 2006 U.S. Dist. LEXIS 94333, at *9 (N.D. Cal. Dec. 21, 2006)

9   (because plaintiff "had not demonstrated there exists a definitive likelihood that *he* will once again

10  become a subscriber of defendants' cable services . . . plaintiff's claims of possible future injury are too

11  speculative and attenuated to warrant prospective relief").[15]

12  **VIII.   DISGORGEMENT IS NOT AN APPROPRIATE REMEDY.**

13       The remedy of nonrestitutionary disgorgement is not available under the UCL and FAL.  *Korea*

14  *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145 (2003); *see Cortez v. Purolator Air*

15  *Filtration Prods. Co.*, 23 Cal. 4th 163, 177 n.10 (2000) ("The restitutionary remedies of section 17203

16  and 17535, on which section 17203 is patterned, are identical and are construed in the same manner").

17  Acknowledging this rule, district courts throughout California have dismissed nonrestitutionary

18  disgorgement as a remedy in putative class actions.[16]

19  _____

20  [14]     Plaintiff inaccurately cites *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992 (N.D. Cal. 2000), for the proposition that using "misrepresentations as a strategy warrant[s] granting injunctive relief."  Opp. at 23:9-10.  But in *Sun*, "the unfair practices . . . [were alleged to] affect

21  [plaintiff] as a direct competitor."  87 F. Supp. 2d at 999.  The distinction is critical; unlike a competitor who will continue to suffer business losses due to its competitor's continued unfair

22  competition strategy, a consumer already aware of allegedly misleading material will not continue to be harmed or misled by the same material.

        In *Von Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010), standing

23  was not before the court.  Similarly, standing was not raised in any of the cases cited by Plaintiff for the proposition that his allegations of a likelihood of future harm are sufficient.  *See* Opp. at 23:16-25.

24

25  [15]     Contrary to Plaintiff's assertion, *see* Opp. at 23:3, *People v. Toomey*, 157 Cal. App. 3d 1 (1984), has not been overruled in connection with its injunctive relief holding; it was partially

26  disapproved in *Adams v. Murakami*, 54 Cal. 3d 105 (1991), on unrelated grounds.

27  [16]     *See e.g., Nelson v. Dollar Tree Stores, Inc.*, No. 2:11-CV-01334 JAM-CMK, 2011 U.S. Dist. LEXIS 90531, at *14 (E.D. Cal. Aug. 15, 2011); *Martinez v. Welk Group, Inc.*, No. 09-CV-2883-AJB (WMc), 2011 U.S. Dist. LEXIS 58718, at *10-11 (S.D. Cal. June 2, 2011); *Henderson v. J.M. Smucker*

28  *Co.*, CV 10-4524-GHK (VBKx), 2011 U.S. Dist. LEXIS 27953, at *9-10 (C.D. Cal. Mar. 17, 2011).

The distinction that Plaintiff attempts to draw between nonrestitutionary disgorgement in "representative actions" and "class actions" under *Kraus v. Trinity Mgmt. Svcs., Inc.*, 23 Cal. 4th 116 (2000), has been rejected by both California and district courts.  "*[N]onrestitutionary* disgorgement is *not* an available remedy in a UCL class action." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 460 (2005) (emphasis added).  In so holding, the *Madrid* court rejected the very argument advanced by Plaintiff, holding: "the use of the class action vehicle to litigate a UCL claim does not expand the substantive remedies available, and the availability of fluid recovery in a UCL class action . . . says nothing about availability of *non*restitutionary disgorgement."  The *Madrid* court distinguished *Corbett v. Superior Court*, 101 Cal. App. 4th 649 (2002), cited by Plaintiff, because it "said nothing about *non*restitutionary disgorgement," but was rather a case for restitutionary disgorgement.  130 Cal. App. 4th. at 461.  A similar argument was also rejected in *Chamberlan v. Ford Motor Co.*, No. C 03-2628 CW, 2003 U.S. Dist. LEXIS 27912, at *25 (N.D. Cal. Aug. 6, 2003) ("although a court may order disgorgement into a fluid recovery fund under the UCL for a class action, a plaintiff may recover money from this fund *only to the extent that recovery is restitutionary*, because restitution is the only monetary remedy available under the UCL.").

## CONCLUSION

For the foregoing reasons, and for the reasons discussed in OCZ's moving papers, the Court should dismiss the FAC in its entirety, with prejudice.

Dated:  March 6, 2012

MAYER BROWN LLP
NEIL M. SOLTMAN
MATTHEW H. MARMOLEJO
RUTH ZADIKANY


By:   s/ Ruth Zadikany
Ruth Zadikany
Attorneys for Defendant
OCZ TECHNOLOGY GROUP, INC.