United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES WANG, | Case No.: C 11-1415 PSG |
| Plaintiff, | **ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; ORDER DENYING DEFENDANT'S MOTION TO STRIKE** |
| v. | |
| OCZ TECHNOLOGY GROUP, INC., | |
| Defendant. | |
| | **(Re: Docket Nos. 51, 52)** |

In this putative consumer class action, Plaintiff James Wang ("Wang") has filed a First Amended Complaint ("FAC") alleging deceptive advertising practices, unfair business practices, negligent misrepresentation, breach of warranty, unjust enrichment, and violations of California Consumers Legal Remedy Act ("CLRA") based on Defendant OCZ Technology Group, Inc.'s ("OCZ") marketing and sales of its Agility 2 and Vertex 2 solid state drive products. These are the same causes of action brought in Wang's initial complaint, which the court dismissed with leave to amend in its order dated October 14, 2011.[1] OCZ moves for a second time to dismiss and to strike certain allegations in the FAC. Wang opposes both motions. Having reviewed the parties' briefs and considered the arguments of counsel, Defendant's motion to dismiss is GRANTED-IN-PART, and Defendant's motion to strike is DENIED.

---

[1] *See* Docket No. 46 (Order Granting-In-Part and Denying-In-Part Mot. to Dismiss) ("October 14 Order").

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

# I. BACKGROUND

As set forth in greater detail in the court's October 14 Order, OCZ markets, distributes, and sells solid state drives ("SSDs") throughout California and the United States.[2] The sale of SSDs has become OCZ's central business focus.[3] The defining characteristics of SSDs upon which consumers base their purchase choices are storage capacity and performance.[4] Storage capacity especially plays a key role in defining product price, particularly when viewed on a "storage capacity per dollar" basis. SSD storage capacity frequently costs more than $4 per gigabyte.[5] Consumers pay this substantial price per gigabyte for SSD technology because of the performance capability of the drive based on its transfer rates.[6] Consumers are sensitive to the price per gigabyte as well as the capacity of the drive, which often dictates its usability.[7]

Before the relevant class period, estimated in the pleadings as beginning on January 1, 2011, OCZ marketed a predecessor line of Agility 2 and Vertex 2 SSDs.[8] OCZ advertised the storage capacity of these drives as 50GB, 60GB, 80GB, 90GB,100GB, 120GB, 160GB, or 180GB , respectively.[9] OCZ further advertised the performance specifications for each drive. For the Agility 2 product line, OCZ advertised the performance specifications as "Max Read: up to 285 MB/s; Max Write: up to 275 MB/s; Sustained Write: up to 250 MB/s; Random Write 4k (Aligned): 10,000 IOPS."[10] OCZ marketed these predecessor SSDs according to the standards established by

---

[2] The following facts, taken as true for purposes of this motion to dismiss, are drawn from the FAC.

[3] Docket No. 47 (FAC ¶ 12).

[4] *Id.* ¶ 22.

[5] *Id.* ¶ 24.

[6] *Id.* ¶ 31.

[7] *Id.* ¶ 26.

[8] FAC ¶¶ 3, 28.

[9] *Id.* ¶¶ 3, 44.

[10] *Id.* ¶¶ 38, 63.

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

the International Disk Drive Equipment and Materials Association (IDEMA), such that the advertised capacity of the drive was the capacity that was user accessible.[11] Sometime around January 1, 2011, OCZ made material alterations to the SSD components that reduced the type and quantity of flash memory and resulted in SSDs that were materially distinct from the predecessor models.[12] Specifically, the newer SSDs were slower and had less storage capacity.[13] OCZ continued to maintain the same marketing and advertising materials, including product packaging, notwithstanding the material differences in the new SSDs.[14] These marketing materials, product packaging, and even model number schemes prominently display the storage capacity of the SSDs and link to third-party reviews that reiterate the model numbers and storage capacity of the various SSDs.[15] By failing to disclose the material changes to the capacity and performance of the SSDs, OCZ advertising and marketing no longer complied with industry standard or its own prior practices.[16]

On February 27, 2011, Wang purchased a 120GB OCZ Agility 2 SSD for $209.99 plus $2.99 in shipping fees.[17] Plaintiff made his purchase through Newegg.com, an e-commerce website that is OCZ's largest retail partner.[18] Newegg.com – operated by Newegg, Inc., a corporation with its principal place of business in California – shipped Wang's SSD purchase from its warehouse in

---

[11] *Id.* ¶¶ 27, 44, 45. For example, a Vertex 2 drive that was advertised at 60GB had a raw capacity of 64GB, 4GB of which was reserved for use by the memory module and thus not available to the user. *Id.* ¶¶ 28, 52, 53.

[12] *Id.* ¶¶ 4, 5, 51, 54.

[13] *Id.* ¶¶ 5, 59.

[14] *Id.* ¶¶ 6, 56, 62.

[15] *Id.* ¶¶ 46, 47, 48, 49, 64.

[16] *Id.* ¶¶ 6, 29.

[17] *Id.* ¶ 34.

[18] *Id.* ¶ 35.

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

California.[19] Before his purchase, Wang reviewed a number of OCZ marketing materials, including:[20]

- the OCZ product page for the Agility 2 and Vertex 2 product lines, which included:

  - product name, *i.e.,* "120GB-OCZSSD2-2AGTE120G;"

  - performance specifications, *i.e.,* Max Read: up to 285 MB/s; Max Write: up to 275 MB/s; Sustained Write: up to 250MB/s; Random Write 4k (Aligned): 10,000 IOPS;

  - quotations posted by OCZ taken from third-party review websites; and

  - awards given to the Agility 2 and Vertex 2 products;[21]

- Newegg.com's webpage for the Agility 2 120GB SSD, which included pictures of the Agility 2 packaging, an "overview" taken from OCZ's website, and a "details" page that includes specifications taken from the product packaging;[22] and

- a review of the Agility 2 SSD from a third-party review website called "Anandtech" that described and pictured the hardware in the product and examined its performance.[23]

Wang relied upon the information presented by these marketing materials to make his purchase decision and was not aware that the capacity and performance figures of the drive that he purchased would be materially different from what he reviewed.[24] The 120GB SSD that Wang purchased had "IDEMA and user accessible capacity of 115GB" – not 120GB like the predecessor unit or as stated in the marketing materials that Wang reviewed. It also performed with slower read/write speeds.[25] Had Wang known of the changes from the predecessor to the new SSDs, and that the SSD he purchased did not conform to the materials he reviewed, he would not have purchased his 120GB Agility 2 SSD, or would not have paid the price that he did.[26] Wang suffered

---

[19] *Id.* ¶¶ 36, 37.

[20] *Id.* ¶ 38.

[21] *See* FAC, Ex. 1.

[22] *See id.*, Ex. 3.

[23] *See id.*, Ex.4.

[24] *Id.* ¶¶ 39, 40, 75.

[25] *Id.* ¶¶ 41, 65, 76.

[26] *Id.* ¶¶ 8, 11, 42.

4

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

damages as a result of his purchase being different from and inferior to that which had been advertised.[27]

The marketing material maintained by OCZ created a "false impression" concerning the expected performance of the SSDs because they did not disclose the material changes to the products.[28] OCZ knew about and directed the changes to the SSDs.[29] It had on other occasions altered the advertised capacity to reflect changes that affected the user capacity.[30] After the changes to the predecessor SSDs, OCZ offered retailers a choice between carrying the predecessor or new SSDs, but did not alter the marketing scheme to reflect the different product versions.[31] OCZ has acknowledged that users cannot know which version they have purchased, other than by examining the accessible capacity, and as a result has offered a software tool for users to run in order to make this determination.[32]

Wang asserts six causes of action on behalf of himself and the proposed class of purchasers of Vertex 2 and Agility 2 SSDs of 180GB or less who received SSDs that used 25nm flash memory chips that had either lower than advertised user accessible capacity or lower than advertised performance.[33] These are: (1) deceptive advertising under the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (2) unfair business practices under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (3) negligent misrepresentation; (4) breach of express warranty in violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* and Cal. Comm. Code § 2313; (5) unjust enrichment;

---

[27] *Id.* ¶ 77.

[28] *Id.* ¶¶ 65, 66.

[29] *Id.* ¶ 67.

[30] *Id.* ¶ 69.

[31] *Id.* ¶ 70.

[32] *Id.* ¶ 72.

[33] *Id.* ¶ 78.

5

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

1   and (6) violation of the California Consumers Legal Remedy Act ("CLRA"), Cal. Civ. Code §

2   1750, *et seq.*

## II. LEGAL STANDARDS

**A.     Motion to Dismiss Pursuant to Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[34] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[35] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] Thus, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[37]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[38] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[39] However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[40]

---

[34] Fed. R. Civ. P. 8(a)(2).

[35] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[37] *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

[38] *See Metzler Inv. GMBH v. Corinthian Colls, Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).

[39] *See id.* at 1061.

[40] *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

**United States District Court**
For the Northern District of California

1    "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the

2    complaint could not be saved by amendment."[41]

3    **B.    Motion to Strike Pursuant to Rule 12(f)**

4              Under Fed. R. Civ. P. 12(f), a party may move to strike "any redundant, immaterial,

5    impertinent, or scandalous matter."[42] The essential function of a Rule 12(f) motion is "to avoid the

6    expenditure of time and money that must arise from litigating spurious issues by dispensing with

7    those issues prior to trial."[43] A motion to strike "should not be granted unless it is clear that the

8    matter to be stricken could have no possible bearing on the subject matter of the litigation."[44]

9                                    **III. DISCUSSION**

10   **A.    Motion to Strike**

11             OCZ moves to strike allegations in the FAC pertaining to advertising materials and

12   information contained on the third-party websites Newegg.com and Anandtech. OCZ argues that

13   FAC ¶¶ 38(c)-(i), 39, and Exs. 3-5 are immaterial and impertinent because they are not statements

14   made by OCZ, and Wang does not allege that OCZ exercised any control over their content. Those

15   allegations therefore cannot form the basis for liability for OCZ.[45]

16             Wang responds that OCZ's webpages "linked to etailers webpages, including

17   Newegg.com's, that included information about the subject drives that was created and controlled

18   by OCZ."[46] Wang further responds that OCZ's website excerpted from and linked to third-party

19   reviews, including those of Anandtech. Wang contends that the allegations based on his review of

20   third-party webpages and reviews are "independently relevant to the overall allegations" because

21   _____

     [41] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F. 3d 1048, 1052 (9th Cir. 2003).

22   [42] Fed. R. Civ. P. 12(f).

23   [43] *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v.

24   Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*,
     510 U.S. 517 (1994)).

25   [44] *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (citing *Naton v.

26   Bank of California*, 72 F.R.D. 550, 551 n.4 (N.D. Cal. 1976)).

27   [45] *See* Docket No. 51 at 3-4 (Def.'s Mot. To Strike).

28   [46] Docket No. 57 at 2 (Pl.'s Opp'n to Def.'s Mot. To Strike) (citing FAC ¶¶ 12, 38(g)).

                                    7

     Case No.: 11-01415 PSG
     **ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO
     DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    those sources drew directly from OCZ's unchanged statements and advertising for the SSDs.

2    Finally, Wang argues that the law of the case precludes striking allegations concerning third-party

3    reviews like Anandtech, because in its October 14 Order the court denied a similar motion to

4    strike.[47]

5            To the extent that Wang's allegations in FAC ¶¶ 38(c)-(i), 39, and Exs. 3-5 relate strictly to

6    the content displayed on Newegg.com and Anandtech's websites, the court again finds insufficient

7    grounds to strike them. While the court's previous ruling regarding third-party reviews was based

8    on whether allegations of OCZ's practice of quoting third-party reviews and testimonials should

9    have been stricken, the court's ruling also is applicable to the allegedly related content presented

10   here. To be sure, OCZ is not presently moving to strike allegations regarding the third-party

11   reviews maintained on OCZ's web pages – that which the court already ruled on – but is moving to

12   strike allegations regarding strictly third-party content displayed on third-party web pages. But

13   Wang has alleged that the content on Newegg.com's website "is a copy of a description provided

14   on OCZ's webpage" and includes photos and specifications from OCZ's product packaging that is

15   "controlled" by OCZ.[48] Without permitting Wang some discovery into the relationship between

16   OCZ's own marketing material and product information and that being displayed on what

17   presumably are independent, third-party websites, it is not yet clear that the representations on

18   those websites "ha[ve] no possible bearing on the subject matter of the litigation."[49] Construed in

19   the light most favorable to Wang, it is plausible that these allegations support Wang's claims for

20   relief based on OCZ's misrepresentations or omissions.

21   **B.    Motion to Dismiss**

22           **1.    Fraud-Based Claims – First, Second, Third, and Sixth Causes of Action**

23           Wang's fraud-based claims under the FAL, UCL, CLRA, and for negligent

24   misrepresentation rely on two theories: (a) false or misleading statements as demonstrated by

25   ───────────────

[47] *See* Docket No. 46 at 19.

26   [48] FAC ¶¶ 38(f), (g), 12.

27   [49] *See Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *Smith v.*
     *Levine Leichtman Capital Partners, Inc.*, 723 F. Supp. 2d 1205, 1212 (N.D. Cal. 2010).

28

8

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO**
**DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

United States District Court
For the Northern District of California

OCZ's continued use of the same marketing materials for outwardly identical but actually inferior products, and (b) failure to disclose material changes to the new SSDs even though those changes reduced the SSD storage capacity and performance capability. OCZ argues that the claims fail under both theories because Wang has not alleged an actionable false or misleading statement or established any duty of OCZ to disclose. The court reviews these claims in tandem because "the standard for deceptive practices under the 'fraudulent' prong of the UCL applies equally to misrepresentation-based claims under the CLRA and FAL."[50] Courts review the allegedly deceptive or misleading material in light of the reasonable consumer who is a member of the intended audience or target population.[51]

Wang's first cause of action arises under the FAL, which makes it unlawful to disseminate "untrue or misleading" information to promote the sale of a product or service.[52] A party may be liable under the FAL for even a true statement that is found to be misleading.[53] Under the fraudulent prong of Wang's UCL claim and second cause of action, Wang similarly must allege that members of the public are likely to be deceived by the representations.[54] As under the FAL, this includes statements "which may be accurate on some level, but will nevertheless tend to mislead or deceive."[55] Wang's third cause of action for negligent misrepresentation also requires a misrepresentation by "false representation, concealment or nondisclosure."[56] Finally, Wang's sixth cause of action arises under the CLRA, which prohibits "unfair methods of competition and unfair

---

[50] *O'Shea v. Epson Am., Inc.*, Case No. CV 09-8063 PSG (CWx), 2011 WL 3299936, at *4 (C.D. Cal. July 29, 2011) (citations omitted).

[51] *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009).

[52] Cal. Bus. & Prof. Code § 17500.

[53] *See Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998).

[54] *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1469 (Cal. Ct. App. 2009).

[55] *Klein v. Chevron U.S.A., Inc.* 202 Cal. App. 4th 1342, 1380 (2012).

[56] *Lopez v. GMAC Mortg.*, Case No. CVF 11-1795 LJO JLT, 2011 WL 6029875, at *14 (E.D. Cal. Dec. 5, 2011).

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

**United States District Court**
For the Northern District of California

or deceptive acts or practices" in "representing" or "advertising" goods.[57] Wang's allegations regarding OCZ's "untrue and misleading" advertising and marketing efforts thus underlie these four causes of action.

### a.   *False or Misleading Marketing Materials*

OCZ argues that Wang fails to state a claim for false, misleading, or deceptive marketing materials for several reasons. First, the materials and SSD product packaging at issue indicate that the SSDs may not perform to the exact or maximum specifications provided. With respect to performance, the FAC quotes OCZ's advertising and product packaging as providing for "up to" a stated transfer rate.[58] With respect to other performance indicators and storage capacity, Exhibits 1-2 of the FAC display OCZ's disclaimers advising consumers "may see a discrepancy between reported capacity and actual capacity" and that "[i]n the case of SSDs, some of the capacity is reserved for formatting and redundancy for wear leveling."[59] A separate page on the OCZ website references the IDEMA standard and explains that "[a]ctual IDEMA capacities may vary slightly."[60] OCZ also argues that the idea of "user accessible" capacity is nowhere to be found in OCZ's marketing materials – merely the product's reported capacity, as read in context with the accompanying disclaimers or explanations. Based on the absence of any positive representation for a certain "user accessible" capacity or performance speed, and particularly in light of the visible disclaimers and explanations, OCZ argues that a reasonable consumer is not likely to be deceived by OCZ's marketing materials or product information.

Wang responds that by representing the SSDs to be the equivalent of the predecessor products – which OCZ does not dispute was not the case – the marketing materials were misleading both as to the truth of the capacity and performance specifications represented, and because they were likely to confuse the reasonable consumer into believing that the SSDs were

---

[57] Cal. Civ. Code § 1770.

[58] *See, e.g.*, FAC ¶ 38, Exs. 1-2.

[59] *Id.*, Exs. 1-2.

[60] Docket No. 52 at 9 (Def.'s Mot. To Dismiss).

10

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

United States District Court
For the Northern District of California

identical to the predecessor products. Wang argues that to a reasonable consumer, "capacity" as advertised is the capacity available to the user, as is demonstrated by the industry standard of representing capacity inclusive of that which is lost to formatting. In the case of Wang's purchase, the advertised capacity of 120GB was false and misleading because the actual capacity was only 115GB.[61] Wang argues that the website disclaimers regarding "a discrepancy between reported capacity and actual capacity" and some capacity "reserved for formatting" are intended to explain minor discrepancies that may occur based on operating system and cannot explain away the "consistently and materially smaller capacity" than that which was advertised and expected based on the predecessor SSDs.[62] Wang also argues that the performance specifications were false and misleading as alleged, because the SSDs failed even to meet the "outer limit" or "up to" advertised speed, and because the marketing materials equated the performance to the predecessor products by using the same specifications and referring to the same third-party reviews and testimonials.

Taken as true and construed in the light most favorable to Wang, the allegations adequately state a claim based on false or misleading marketing and advertising. Based on OCZ's disclaimers, a reasonable consumer within the target population for SSDs might expect discrepancies between the advertised and actual capacity and performance characteristics of the SSDs. But this expectation must be understood in context of the advertising as a whole, which includes reviews and awards based on products that outwardly carry the same name, product number, and packaging, but nevertheless are inferior. For this reason, the use of "up to" or "maximum" language in OCZ's marketing material is insufficient to find, as a matter of law, that a reasonable consumer would not be misled or deceived.  OCZ relies on *Maloney v. Verizon Internet Servs., Inc.*, in which the court dismissed the plaintiff's UCL and CLRA claims because the "advertisement for internet speed 'up to 3 Mbps' was not likely to deceive a reasonable customer. The 'up to' language should have put any reasonable consumer on notice that his or her own speed

---

[61] *See* FAC ¶¶ 41, 54, 74.

[62] *See* Docket No. 59 at 6.

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

may not reach 3 Mbps."[63] But in this case, Wang's allegations are not based solely upon the stated performance and capacity specifications, but rather on those specifications in light of predecessor products that consistently measured better. Moreover, Wang alleges not insignificant discrepancies, but those reducing performance of the SSDs by an average of 25%[64] and capacity by an average of 5 GB.[65] OCZ also points to *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*,[66] in which the court held that advertisements marketing a high-definition television as "1080p" did not violate the UCL or constitute fraudulent concealment. But in *Johnson*, the court found at summary judgment that the information regarding the 1080p signal capabilities was made directly available to the consumer in the owner's manual, and that the defendant never represented that the television's particular input port at issue could support 1080p signal.[67]

   In *Freeman v. Time, Inc.*, the Ninth Circuit affirmed the district court's dismissal of claims under the UCL and CLRA based on the receipt of a mailer regarding a $1.7 million sweepstakes prize because a reasonable person would be put on notice that winning the sweepstakes was not guaranteed "simply by doing sufficient reading to comply with the instructions for entering the sweepstakes."[68] Here it is less clear that a reasonable consumer – even a sophisticated computer user – would be put on notice of the extent of the alleged discrepancy between the stated and actual SSD capacity and performance. This is particularly the case because the OCZ website links to third-party review and sales websites that continue to reflect the same information regarding performance and capacity that applied to the earlier drives.

---

[63] *See* Case No. ED CV 08-1885-SGL (AGRx), 2009 WL 8129871, at *5 (C.D. Cal. Oct. 4, 2009). OCZ cites several other decisions that are not based on a motion to dismiss

[64] *See* FAC ¶¶ 59, 62.

[65] *See id.* ¶ 54.

[66] 578 F. Supp. 2d 1229 (C.D. Cal. 2008).

[67] *See id.* at 1240-41. *Cf. Pfizr, Inc. v. Miles, Inc.*, 868 F. Supp. 437, 446 (D. Conn. 1994) (finding in the context of a preliminary injunction ruling that the advertised claim of "25% savings" was not misleading because the language also suggested that to be an "outer limit," *i.e.*, "Save up to $192 a year").

[68] 68 F.3d 285, 289-90 (9th Cir. 1995).

12

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    The court finds the allegations here to be more similar to those in *Klein v. Chevron U.S.A.,*

2    *Inc.*, in which the plaintiffs successfully alleged that the defendant's practice of selling motor fuel

3    in non-temperature adjusted "gallon" units, without disclosing the effects of thermal expansion,

4    misled plaintiffs into reasonably believing that they were receiving a standard quantity of fuel

5    based on the "gallon" label.[69] Wang pleads that the marketing and sale of the SSDs with the earlier

6    version packaging, marketing, and specifications misled him into reasonably believing that he was

7    receiving a superior product. OCZ seeks to distinguish *Klein* on the basis of OCZ's disclosures that

8    "[a]ctual IDEMA capacities may vary" and that "[r]ated speeds may vary." These disclaimers do

9    not, as a matter of law, lead the court to conclude otherwise, considering the totality of factors

10   alleged by Wang. These factors include (1) the replication of marketing materials between the

11   predecessor and new SSDs, including retaining quotes from and links to reviews and testimonials

12   based on an older iteration of the product; (2) that Wang's SSD measured a full 5GB lower than the

13   stated capacity; (3) that this reduction in capacity was consistent in the Agility2 and Vertex 2

14   SSDs; and (4) that the performance metrics similarly failed to meet the stated "up to" speeds. Even

15   read alongside OCZ's disclaimers, it is more than plausible that a reasonable consumer would

16   understand that the SSD product she is considering performs at least in a manner equivalent to that

17   of the products reviewed and advertised as being the same.

18                          ***b.    Duty to Disclose***

19   OCZ next argues that Wang fails to state a claim based on a theory of fraudulent omission

20   or concealment under the CLRA or for negligent misrepresentation because Wang does not and

21   cannot allege that OCZ had a duty to disclose information related to component parts or changes

22   made to the SSDs. OCZ argues that absent some representation regarding the components of the

23   SSDs, OCZ had no legal obligation to disclose alleged changes to those components.

24   Wang responds that OCZ made affirmative representations concerning the SSDs based on

25   capacity, performance, and in relation to the predecessor products through the use of the same

26   moniker, packaging, marketing material, and web links to reviews and awards. Because these

27

28   ---

[69] *See* 202 Cal. App. 4th at 1376-81.

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO
DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

United States District Court
For the Northern District of California

1    characteristics were material to the purchase decision, Wang argues that the omitted information

2    regarding changes to the products and reduced capacity and performance constituted material facts

3    that were contrary to its affirmative representations.

4         A duty to disclose exists if one of several circumstances exists: (1) the defendant is in a

5    fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material

6    facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the

7    plaintiff, or (4) the defendant makes partial representations but also suppresses some material

8    fact.[70] An omission is actionable under the CLRA if it is contrary to a representation actually made

9    by the defendant or was a fact the defendant had a duty to disclose.[71]

10        The fact that OCZ did not make affirmative representations regarding the internal

11   components of the SSDs is not dispositive because Wang alleges that OCZ made representations

12   regarding the overall capacity and performance of the products, which were compromised by the

13   subsequent changes that OCZ did not disclose. This presents a situation materially different from

14   those referenced by OCZ in *Sanders v. Apple* and *Tietsworth v. Sears, Roebuck & Co.* In *Sanders*,

15   the plaintiff alleged that the defendant advertised two iMac models to have the same quality

16   display even though one had an inferior display.[72] The court found that the plaintiff failed to

17   provide enough specificity regarding defendant's representations about the computer displays' or

18   how the plaintiff relied on those, and gave the plaintiff leave to amend.[73] Similarly in *Tietsworth*,

19   the court found the amended complaint failed to specify sufficiently under Fed. R. Civ P. 9(b) how

20   the manufacturer's representations about the product as a whole, for example relating to durability

21   and efficiency, gave rise to a duty to disclose information regarding the allegedly defective

22

23   _____

     [70] *See Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009) (citing *LiMandri v.*

24   *Judkins*, 52 Cal. App. 4th 326, 337 (1997)); *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal.
     App. 4th 824, 835 (Cal. Ct. App. 2006).

25   [71] *Daugherty*, 144 Cal. App. 4th at 835.

26   [72] *Sanders*, 672 F. Supp. 2d at 986.

27   [73] *See id.*

28

                                                14

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

United States District Court
For the Northern District of California

component part.[74] In another case cited by OCZ, *Bardin v. Daimler Chrysler Corp.*, the court affirmed the trial court's dismissal of the claim that the defendant failed in its duty to disclose the replacement of the industry-standard, cast-iron exhaust manifolds in its Jeep with less-durable and cheaper steel manifolds.[75] The *Bardin* court found that the failure to disclose, and the alleged result of deceiving the public, required an allegation that the public had some expectation or assumption about the materials used in the vehicle. Because plaintiffs failed to allege such an expectation, or even "facts showing [the defendant] had made any representation of any kind, much less any misrepresentation, regarding its vehicles," the court rejected the plaintiff's claim for fraudulent business practices under the UCL.[76]

Here, OCZ does not challenge the specificity of Wang's allegations under Fed. R. Civ P. 9(b). Moreover, Wang sets forth in detail allegations regarding OCZ's marketing materials,[77] which constitute an affirmative representation regarding the very characteristics of the SSDs that Wang challenges were the subject of undisclosed, material changes.[78] OCZ's argument that the purported failure to announce technical changes to the SSDs is unaccompanied by any contrary representation that would have required OCZ to disclose the physical differences in the component parts after the purported change ignores this distinction. It is sufficient for purposes of a motion to dismiss that the alleged duty to disclose or material omission stems not from the change in components alone, but the change in capacity and performance stemming from the alterations to the products.

### c.    *Application to the First, Second, Third, and Sixth Causes of Action*

Having found sufficient Wang's allegations of false or misleading statements and an unmet or incomplete duty to disclose, the court further concludes that Wang successfully states a claim for

---

[74] *See Tietsworth v. Sears, Roebuck & Co.*, Case No. 5:09-CV-00288 JF (HRL), 2009 WL 3320486, at *4 (N.D. Cal. Oct. 13, 2009).

[75] *See* 136 Cal. App. 4th 1255, 1261-63 (2006).

[76] *See id.* at 1274-75.

[77] *See* FAC ¶¶ 3, 11, 28, 33, 38, 43, 46-49, 50, 56, 62, 63, 64.

[78] *See id.* ¶¶ 6, 28, 43, 56, 66, 70, 71, 76.

15

1    violations of the FAL, CLRA, negligent misrepresentation, and under the fraudulent prong of the

2    UCL. Although this conclusion might reasonably relieve the need to provide any further alaysis of

3    Wang's UCL claim under the unfair and unlawful prongs, the court proceeds in the interest of

4    completeness.

5            Wang contends that he also states a claim under the unlawful and unfair business practice

6    prongs of the UCL. OCZ challenges the sufficiency of both. The court finds that because Wang

7    successfully states a claim for violations of the FAL and CLRA, Wang also states a claim for

8    unlawful business practices under the UCL. "By proscribing 'unlawful' acts or practices, Section

9    17200 'borrows' violations of other laws and treats them as unlawful practices independently

10   actionable."[79]

11           As for Wang's unfair business practice claim under the UCL, California courts are divided

12   as to the proper test for unfairness.[80] Under the historical balancing test, the plaintiff must establish

13   (1) a consumer injury that is "substantial;" (2) that the injury is not "outweighed by any

14   countervailing benefits to consumers or competition;" and (3) that the injury was one that

15   "consumers themselves could not reasonably have avoided."[81] Based on the California Supreme

16   Court's decision in *Cal-Tech Comms., Inc. v. Los Angeles Cellular Telephone Co.*, in which the

17   court rejected the balancing test in an unlawful competition case and required an allegation of

18   unfairness to be "tethered to some legislatively declared policy,"[82] some courts require this further

19   allegation.

20           OCZ argues that Wang's claim fails under the balancing test because no reasonable

21   consumer would have been deceived by OCZ's advertising, belying any claim of substantial harm.

22   The court accepts as true, for the purposes of the motion to dismiss, Wang's allegations of injury

---

[79] *In re Sony Grand Wega Litig.*, 758 F. Supp. 2d at 1091.

[80] *See Loranzo v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735-36 (9th Cir. 2007); *Bardin*, 136 Cal. App. 4th at 1260-61, 1265-67.

[81] *Ticconi v. Blue Shield of Cal.*, 160 Cal. App. 4th 528, 539 (2008); *Klein*, 202 Cal. App. 4th at 1376.

[82] *Cal-Tech Comm., Inc. v. Los Angeles Cellular Telephone Col.*, 20 Cal. 4th 163, 186 (1999).

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

**United States District Court**
For the Northern District of California

1   from the purchase of an inferior product, as well as the allegation that consumers are unable to

2   differentiate between the SSD versions or to know whether their SSD lacked in capacity and

3   performance until after the purchase. Whether the alleged injury is outweighed by "countervailing

4   benefits" is considered a factual issue that courts rarely decide at the pleading stage.[83] Under the

5   balancing test, Wang therefore states a claim for unfair business practices.

6          **2.      Breach of Express Warranty – Fourth Cause of Action**

7         Wang claims a breach of express warranty under both the California Commercial Code §

8   2313 and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.* To state a

9   claim for breach of express warranty under California law, the plaintiff must allege: (1) the seller

10   made a promise or affirmation of fact related to the goods sold; (2) the affirmation or promise was

11   part of the basis of the bargain; and (3) the seller breached the warranty.[84] No particular terms such

12   as "warrant" or "guarantee" are required to create an express warranty.[85] The affirmation of fact or

13   promise may be in the form of a "description of the goods which is made part of the basis of the

14   bargain"[86] which may be found in materials such as advertisements and brochures.[87]

15         OCZ argues that Wang fails to allege any express promise by OCZ because its statements

16   regarding the 120GB capacity of the Agility 2 SSD contain no promise or affirmation of fact

17   related to a "user accessible amount." OCZ also argues that statements regarding performance were

18   framed in terms of the outer limits of performance and did not promise performance identical to

19   that of previous product iterations. OCZ also points to the disclaimers and explanations regarding

---

20   [83] *See Klein*, 202 Cal. App. 4th at 1376 (finding that issues of consumer injury and countervailing

21   benefits to society must be "determined on a developed factual basis"). *But see Bardin*, 136 Cal. App. 4th at 1270-71 (noting the generally fact intensive nature of weighing unfairness "usually

22   precludes the court from sustaining" a motion to dismiss, but affirming dismissal where the complaint fails to allege any basis for unfairness under the prevailing definition).

23   [84] *See McDonnel Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997); *In re Sony

24   PS3 Other OS Litigation*, Case No. C 10-1811 RS, 2011 WL 6117892, at *4 (N.D. Cal. Dec. 8, 2011).

25   [85] *See* Cal. Comm. Code § 2313(2).

26   [86] *See id.* § 2313(1)(b).

27   [87] *See Keith v. Buchanan*, 173 Cal. App. 3d 13, 22 (1985).

28

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

discrepancies in capacity as countering any allegation that the product descriptions formed the basis of the bargain for Wang's purchase. Stated differently, "Wang received the basis of the bargain in purchasing his Agility 2 SSD" because the explanations on OCZ's website formed a part of the bargain.[88]

Wang responds that the FAC provides detailed allegations of OCZ's descriptions of the SSD capacity, performance specifications, and of the fact that the products did not conform to the affirmations. Because "affirmations of fact by the seller become part of the basis of the bargain unless good reason is shown to the contrary," all elements of the asserted claim have been met.[89]

As alleged in the FAC, all three factors of a claim for breach of express warranty are met. The FAC sets forth several examples of affirmations of fact on the part of OCZ and in terms of the capacity and performance features of the 120 GB Agility 2 and Vertex 2 SSDs. Viewed in the light most favorable to Wang, OCZ's disclaimers regarding discrepancies in capacity and "up to" certain data transfer speeds at most force a reasonable consumer to accept some deviation from the advertised amounts. Wang expressly alleges that these affirmations served as the basis of the bargain, based on his review of OCZ's online marketing materials and his decision to purchase the Agility 2 drive as a result.[90] Wang further alleges that OCZ breached its warranty by selling SSDs with 5 GB less capacity than promised and about 25% less performance capability. Although OCZ may prevail at a later stage of litigation in showing either that the warranty was not actually breached, or that a reasonable consumer would have understood OCZ's statements differently, for the purposes of a motion to dismiss, Wang's express warranty claim stands.

---

[88] Docket No. 52 at 15 (citing *Maloney*, 2009 WL 8129871 at *4).

[89] Docket No. 59 (citing *Keith*, 173 Cal. App. 3d at 21).

[90] *Cf. In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liability Litigation*, 754 F. Supp. 2d 1145, 1183 (C.D. Cal. 2010) (dismissing the express warranty claim because plaintiffs did not plead that they were exposed to the statements allegedly forming the basis for the express warranty).

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

### 3. Unjust Enrichment – Fifth Cause of Action

OCZ argues that Wang's unjust enrichment cause of action is duplicative of the restitutionary relief sought pursuant to Wang's UCL and FAL claims. Moreover, unjust enrichment cannot form a cause of action standing alone.[91] Wang responds that California courts are split as to whether unjust enrichment is an independent cause of action,[92] with many courts in this district finding that regardless of the label applied to the restitution claim, it need not be dismissed where it represents a valid theory of recovery.

Wang alleges unjust enrichment or a right to restitution based on OCZ's collection of profits based on its deceptive and unlawful conduct.[93] Many courts in this district that have reviewed the split in California court opinion have concluded it to be appropriate to retain the cause of action insofar as the plaintiff has established a basis to claim restitutionary relief, and as it is too early at the motion to dismiss stage to evaluate which claims underlying a right to restitution might prevail.[94] The court agrees with this line of reasoning. Even if the unjust enrichment cause of action ultimately proves to be duplicative, it would be inappropriate for the court at this time to preclude a claim for restitution before Wang can develop the factual basis for OCZ's purportedly unjust monetary gain.

### 4. Disgorgement

OCZ argues that Wang improperly seeks disgorgement as a remedy under the UCL and FAL. The parties dispute whether nonrestitutionary disgorgement is available as a remedy in the

---

[91] *See Johns v. Bayer Corp.*, Case No. 09-CV-1935 DMS(JMA), 2010 WL 476688, at *6 (S.D. Cal. Feb. 9, 2010) (citing *McBride v. Boughten*, 123 Cal. App. 4th 379, 387 (2004); *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1307 (S.D. Cal. 2009) (citing *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 794 (2003); *Lauriedale Associates, Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448, (1992)).

[92] *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. M 07-1827 SI, 2011 WL 4345435, at *3 (N.D. Cal. 2011).

[93] *See* FAC ¶¶ 112, 113.

[94] *See, e.g.*, *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345435 at *3-4; *Keilholtz v. Superior Fireplace Co.*, Case No. 08-00836 CW, 2009 WL 839076, at *5 (N.D. Cal. March 30, 2009); *Reyes v. Wells Fargo Bank, N.A.*, Case No. C-10-1667 JCS, 2011 WL 30759, at *17-18 (N.D. Cal. Jan. 3, 2011).

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

United States District Court
For the Northern District of California

context of a putative class action. OCZ contends that both California and district courts have rejected the attempt to "use the class action vehicle" as a manner of expanding the availability of recovery in the form of nonrestitutionary disgorgement.[95] Wang argues that the California Supreme Court has affirmed the permissibility of nonrestitutionary disgorgement in class actions as a remedy for unfair practices.[96]

Without reaching the merits of OCZ's argument, the court finds OCZ's request to dismiss the references to disgorgement in the FAC to be procedurally improper. Wang pleads disgorgement in the FAC as a form of relief, alongside Wang's claims for other types of relief under the UCL and FAL, not as a separate claim or cause of action.[97] What OCZ presents to be the "dismissal" of nonrestitutionary disgorgement as a remedy in the cases cited by OCZ actually takes the form of striking those portions of the complaint that seek an unavailable remedy.[98] OCZ has not moved to strike Wang's claims for disgorgement relief, and the court does not see fit to dismiss mere words or phrases that are plead together with otherwise sound causes of action.

### 5.    Standing

OCZ makes several arguments related to standing. First, OCZ argues that Wang lacks standing to assert claims based on products that he did not purchase and on advertising upon which he did not rely. OCZ also argues that Wang lacks standing to pursue any claims for injunctive relief.

---

[95] *See Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 460-62 (2005). *See also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145-48 (2003); *Chamberlan v. Ford Motor Co.*, Case No. C 03-2628 CW, 2003 WL 25751413, at *9 (N.D. Cal. Aug. 6, 2003); *Marshall v. Standard Ins. Co.*, 214 F. Supp. 2d 1062, 1073-74 (C.D. Cal. Sept. 30, 2008).

[96] *See Fletcher v. Security Pacific Nat'l Bank*, 23 Cal. 3d 442, 451 (1979); *In re Tobacco II Cases*, 46 Cal. 4th 298, 320, n.14 (2009).

[97] *See* FAC ¶¶ 91, 96, and at 24:26-28.

[98] *See Nelson v. Dollar Tree Stores, Inc.*, Case No. 2:11-CV-01334 JAM-CMK, 2011 WL 3568498, at *5 (E.D. Cal. Aug. 15, 2011); *Martinez v. Welk Group, Inc.*, Case No. 09-CV-2883-AJB (WMc), 2011 WL 2173764, at *3-4 (S.D. Cal. June 2, 2011); *Henderson v. J.M. Smucker Co.*, Case No. CV 10-4524-GHK (VBKx), 2011 WL 1050637, at *3 (C.D. Cal. Mar. 17, 2011); *Marshall v. Standard Ins. Co.*, 214 F. Supp. 2d 1062, 1074 (C.D. Cal. Sept. 30, 2008).

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

####### a.    *Standing Based on Products Not Purchased or Advertisements Not Viewed*

OCZ argues that under the UCL and FAL, a plaintiff must establish that he suffered an "injury in fact" and "lost money or property" as a result of the defendant's alleged conduct.[99] Courts have interpreted these provisions to impose an "actual reliance requirement" by which the plaintiff must allege having viewed and relied upon the false or misleading content.[100] Because Wang alleges having purchased only a 120GB Agility 2 SSD but seeks to establish claims based on the Vertex 2 line of products as well as other Agility 2 SSDs, OCZ argues that Wang cannot meet the standing requirement for injury and reliance with respect to those products.

Wang relies largely on the court's October 14 Order denying OCZ's motion to strike these same claims and argues that dismissal of allegations concerning class claims is inappropriate at this stage.[101] Wang argues that the question of a plaintiff's ability to assert class claims is appropriately addressed in a Rule 23 analysis; the only question at this stage is the plaintiff's standing as to his individual claims.[102]

In contrast to OCZ's earlier motion to strike, the present motion to dismiss claims for which Wang cannot allege standing finds support in recent district court cases beginning with *Johns v.*

---

[99] *See* Cal. Bus. & Prof. Code §§ 17204, 17535. *See also* Cal. Civ. Code § 1780(a) (similar requirement that plaintiff suffer damages under the CLRA).

[100] *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 948-49 (S.D. Cal. 2007); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005).

[101] The court previously addressed OCZ's motion to strike allegations about Vertex drives and Agility drive models that Wang did not purchase. OCZ argued that Wang does not allege he suffered injury, or experienced loss of money or value, in connection with products that he did not purchase. Wang responded that to strike class allegations at the pleading stage would constitute an improper application of Fed. R. Civ. P. 12(f), and that class representatives have been permitted to include product models that the representative did not purchase. *See* Docket No. 34 at 22-23 (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009); *Von Koenig v. Snapple Beverage Corp.*, Case No. 2:09-cv-00606, 2011 WL 43577, at *3 (E.D. Cal. Jan. 26, 2011); *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122 (W.D. Wash. 2010)). The court found that striking claims related to products not purchased was distinguishable from dismissing claims pursuant to a proper 12(b) motion. The court specifically noted that Wang's inclusion of products that did not purchase may challenged by a Rule 12(b) motion, or at the class certification or summary judgment stage, but were not properly stricken pursuant to Rule 12(f) because they were not clearly "redundant, immaterial, [or] impertinent."

[102] *See Zeisel v. Diamond Foods, Inc.*, Case No. C 10–01192 JSW, 2011 WL 2221113, at *5 (N.D. Cal. June 7, 2011).

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

1    *Bayer Corp.* in which the court held that a plaintiff "cannot expand the scope of his claims to

2    include a product he did not purchase or advertisements relating to a product he did not rely

3    upon."[103] The court in *Bayer Corp.* explained that the plaintiff had standing to proceed with claims

4    under the UCL and CLRA only with respect to the particular Men's Health vitamin product that he

5    purchased in reliance on Bayer's representations; claims relating to the Men's 50+ vitamin could

6    not be sustained.[104] This court noted in its October 14 Order that district courts in this Circuit have

7    followed the principle set forth in *Bayer Corp.*,[105] although other court decisions have drawn the

8    opposite conclusion.[106]

9         The court is persuaded that *Bayer Corp.* is properly applied here and further that, under its

10   reasoning, Wang should not be permitted to pursue its claims as to products he did not purchase.

11   Wang conflates the issue of the plaintiff's individual standing, and the court's ability to assess the

12   plaintiff's ability to represent the class claims at a later date, with the question of plaintiff's

13   standing to challenge the scope of products even that are the subject of his own claims. Here, Wang

14   alleges that he reviewed advertising for the Agility 2 and Vertex 2 120 GB SSDs, and ultimately

15   purchased and sustained injury by purchasing the 120 GB Agility 2. Nowhere in the FAC does

16   _____

     [103] Case No. 09-CV-1935 DMS(JMA), 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010).

17   [104] *Id.*

18   [105] *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, Case No. C 10-1044 JSW, 2011 WL 159380, at

19   *3 (N.D. Cal. Jan. 10, 2011) (holding that plaintiff has standing to bring UCL and CLRA claims
     for the Drumstick ice cream products purchased, but dismissing plaintiff's claims for the Dibs ice

20   cream product, which plaintiff never alleged he purchased or suffered a loss); *Mlejnecky v.
     Olympus Imaging Am., Inc.*, Case No. 2-10-cv-2630, 2011 WL 1497096, at *4 (E.D. Cal. April 19,

21   2011) (dismissing plaintiff's claims relating to a camera model that has the "same underlying
     defects" and used the same advertisements as the model she purchased, but for which she did not

22   allege any economic injury); *Dysthe v. Basic Research LLC*, Case No. CV 09-8013 AG (SSx),
     2011 WL 5868307, at *4-5 (C.D. Cal. June 13, 2011) (dismissing CLRA, UCL, and warranty

23   claims on summary judgment because plaintiff failed to allege that she had purchased and suffered
     harm from the particular weight-loss product at issue, and rejecting plaintiff's argument that the

24   failure to plead was not dispositive because the products were "nearly identical").

25   [106] *See Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1134 (W.D. Wash. 2010) (upholding claims by
     named plaintiffs for computer models that they had not purchased, because they were "subject to the

26   same core factual allegations and causes of action"); *Hewlett-Packard v. Superior Ct.*, 167 Cal.
     App. 4th 87, 89-91 (2008) (upholding class certification for UCL, CLRA, express warranty and

27   unjust enrichment claims relating to display failures in several models, even though the named
     plaintiff only purchased one of those models).

28

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO
DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

**United States District Court**
For the Northern District of California

Wang allege that he relied upon advertising for or suffered an injury in fact as a result of the other SSDs. Without having reviewed or relied upon representations regarding the other SSDs, or purchased and discovered them to be inferior from those advertised, Wang clearly lacks standing to assert claims as to those products.[107]

### b. Standing for Injunctive Relief

As in its earlier motion to dismiss, OCZ argues that Wang does not have standing to sue for injunctive relief because he has not demonstrated a likelihood of future injury. The court previously found that Wang failed to establish any likelihood of future injury because any loss of value to Wang's Agility 2 SSD has already occurred, and Wang is in no danger of twice paying an inflated price for the allegedly inferior SSD product(s). The court also rejected Wang's argument of a likelihood of future harm based on the competitive advantage gained by OCZ from its alleged misrepresentations.[108] The court acknowledged, however, that Wang might sustain a claim for injunctive relief with respect to a claim under the CLRA.

OCZ argues that the ability of a plaintiff to seek injunctive relief to remedy a public wrong is limited to a low threshold of damage – as the court noted in its October 14 Order. Indeed, in *Meyer*, the California Supreme Court affirmed that "a low but nonetheless palpable threshold of damage" must be plead by a plaintiff seeking injunctive relief under the CLRA.[109] Wang responds that under the UCL and CLRA, the California Supreme Court has clarified that "the availability of

---

[107] *See Kwikset Corp. v. Superior Court of Orange County*, 51 Cal. 4th 310, 317 (2011) (confirming that plaintiffs have standing under the UCL and FAL if they "can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise"). *See also Mlejnecky*, 2011 WL 1497096 at *4 (finding the reasoning in *Johns v. Bayer Corp.* to be more persuasive in light of *Kwikset*).

[108] *See* Docket No. 46 (citing *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 997 (N.D. Cal. 2007) (finding former subscribers to a satellite telephone service failed to allege a likelihood of future harm); *Deitz v. Comcast Corp.*, Case No. C 06-6352 WHA, 2006 WL 3782902, at *3 (N.D. Cal. Dec. 21, 2006) (finding claims of "possible future injury" to be too speculative and attenuated unless former cable service subscriber could demonstrate "a definitive likelihood that he [would] once again become a subscriber of defendants' cable services)).

[109] *Meyer*, 45 Cal. 4th at 646.

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

1   an injunction depends on standing to sue," not on eligibility for restitution or some showing of a

2   likelihood of reoccurrence.[110]

3        While there is little doubt that California law requires a threshold showing of damage for a

4   claim for injunctive relief, the court reads the present complaint as alleging economic injury

5   sufficient to meet that threshold.

6                                    **IV. CONCLUSION**

7        OCZ's motion to dismiss is GRANTED-IN-PART and DENIED-IN-PART with leave to

8   amend. Any further amended complaint shall be due no later than June 28, 2012. OCZ's motion to

9   strike is DENIED.

10  **IT IS SO ORDERED.**

11  Dated: June 6, 2012

12

13  PAUL S. GREWAL
    United States Magistrate Judge

United States District Court
For the Northern District of California

---

[110] *See Kwikset Corp.*, 51 Cal. 4th at 337; *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 644-46 (2009).

Case No.: 11-01415 PSG
**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS; ORDER DENYING DEFENDANT'S MOTION TO STRIKE**